1

2

Michael A. Caddell (SBN 249469)
Cynthia B. Chapman (SBN 164471)
Amy E. Tabor (SBN 297660)
CADDELL & CHAPMAN
P.O. Box 1311
Monterey, CA 93942
Tel.: (713) 751-0400
Fax: (713) 751-0906
E-mail: mac@caddellchapman.com

Arthur H. Bryant (SBN 208365)
Bailey & Glasser, LLP
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
Fax: (510) 436-0291
E-mail: abryant@baileyglasser.com

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION**

9

10

11

12

13

14

15

16

17

18

19

20

TAYLOR ANDERS, HENNESSEY EVANS, ABBIGAYLE ROBERTS, MEGAN WALAITIS, and TARA WEIR, individually and on behalf of all those similarly situated

        *Plaintiffs*,

   *v.*

CALIFORNIA STATE UNIVERSITY, FRESNO; TERRENCE TUMEY, in his official capacity as Director of Athletics at California State University, Fresno; JOSEPH CASTRO, in his official capacity as former President of California State University, Fresno; and DR. SAÚL JIMÉNEZ-SANDOVAL, in his official capacity as Interim President of California State University, Fresno

        *Defendants*.

Case No. [Case No.]

**COMPLAINT**

CLASS ACTION

21

22

23

24

25

26

27

28

## INTRODUCTION

1.    Plaintiffs, a group of female student-athletes at Fresno State, bring this class action lawsuit against Fresno State, its Director of Athletics, its Former President, and its Interim President (together "Defendants") for discriminating against female student-athletes and potential student-athletes at Fresno State on the basis of their sex in violation of Title IX of the Education Amendments of 1972 ("Title IX"), by depriving them of equal opportunities

to participate, athletic financial aid, and treatment; announcing the varsity women's lacrosse team would be eliminated at the end of the 2020-21 academic year; and treating the women's lacrosse team far worse than other varsity intercollegiate athletic teams since they made that announcement.

2.      On October 16, 2020, Fresno State announced it was eliminating its women's lacrosse team (and its men's tennis and wrestling teams), effective at the conclusion of this academic year (*i.e.*, the women's lacrosse team will compete this spring, but will not return for competition in the 2021-2022 academic year).

3.      The decision to eliminate the women's lacrosse team was entirely consistent with Fresno State's history of sex discrimination in its intercollegiate athletic program, but it came as a surprise to the women on the team and their coaches.[1]

4.      Fresno State's actions have caused harm to Plaintiffs, and to those similarly situated, and constitute intentional, prohibited discrimination based on sex in violation of Title IX and its implementing regulation at 34 C.F.R. Part 106, which applies to universities—like Fresno State—that receive federal funding.

5.      Title IX requires educational institutions receiving federal funds to provide (a) equal opportunities to participate, (b) equal athletic financial aid, and (c) equal treatment in

---

[1] Fresno State has a long history of sex discrimination in its intercollegiate athletic program, including millions of dollars in jury verdicts against it, large settlements with women charging sex discrimination and retaliation in violation of Title IX, and repeated investigations over nearly twenty-five years by the U.S. Department of Education's Office for Civil Rights. The last investigation led to monitoring by OCR and a 2009 Voluntary Resolution Agreement, in which Fresno State agreed to complete forty-five remediation action steps to come into Title IX compliance. It ended in 2016, when Fresno State completed the steps it agreed to take in 2009. OCR stressed it was closing the case "based on the specific requirements of the 2009 agreement" and its action was "not an evaluation of the university's current compliance with Title IX.",

athletics without regard to sex. Fresno State receives substantial federal funding, but it has failed to provide the required equality to females in its intercollegiate athletic program.

6.      Specifically, Fresno State has failed to satisfy any of the following measures of compliance with Title IX's mandate to provide equal opportunities to participate to its female student-athletes:

- It has failed to provide female student-athletes with athletic opportunities at a rate that is "substantially proportionate" to their undergraduate full-time enrollment rate;

- It has failed to demonstrate a "history and continuing practice of program expansion responsive to the interests and abilities of the sex that has been historically underrepresented" (*i.e.*, females); and

- It has failed to show that the interests and abilities of the historically underrepresented sex have been fully and effectively accommodated.

7.      The elimination of the women's lacrosse team continued and exacerbated Fresno State's failure to satisfy these requirements and violated Title IX.

8.      On December 3, 2020, Plaintiffs' counsel sent Defendants a letter raising concerns about the elimination of the women's lacrosse team, explaining why the elimination of the team violates Title IX's dictates, and requesting a dialogue about the continuation of the lacrosse program and voluntary Title IX compliance.

9.      Over the next month, Defendants delayed responding several times and ultimately informed Plaintiffs' counsel that they believed Fresno State was complying with Title IX, so there was no need to talk or meet.

10.     Since Defendants announced the elimination of the women's lacrosse team in October, Fresno State has treated the team and its members (including Plaintiffs) far worse than other intercollegiate athletic varsity teams and their members.

11.     For example, Fresno State excluded the women's lacrosse team from athletic facilities and its locker room. The team members were not even allowed to enter the locker room to retrieve their personal belongings.

12.     In the wake of COVID, the team was never provided a promised return-to-play plan that would have allowed it to practice and train during the fall off-season, although such plans were provided to other teams. Instead, it was left waiting for months, until just a few weeks ago when the team's season began.

13.     Unlike other varsity teams at Fresno State, the women's lacrosse team is being forced to use outdated gear, is not being provided proper practice jerseys or gear that designate the team's sport, was limited in its participation at media day, and was not issued cold weather gear until after the season had begun.

14.     Sadly, the women's lacrosse team is not entirely surprised by this treatment. In general, Fresno State has consistently failed to provide the women's lacrosse team (and other varsity teams) with the support provided to men's teams. As just one example, women's lacrosse did not have a designated field for off-season practice. Instead, it shared a field with the women's soccer team that doubled as the "tailgating parking lot" during fall football games. On Mondays, before the women's lacrosse team could begin practice, it had to clean the field, which was often covered with bottle caps, glass, food, and other trash.

15.     For the past several years, the women's lacrosse team has struggled with the lack of a proper coaching staff. The head coach position was left unposted and unfilled for many months, something that did not happen with the men's teams.

16.     These are just a few examples of the many ways that men's teams at Fresno State are provided with more resources and are treated better than the women's teams.

17.     By this lawsuit, Plaintiffs seek to end the current second-class treatment of Fresno State's women's lacrosse team, preserve Fresno State's women's lacrosse team going forward, and block Fresno State's latest efforts to discriminate against females in its intercollegiate athletic program.

18.     Plaintiffs also seek to end the historic and ongoing discrimination against female student-athletes and potential student-athletes at Fresno State, create lasting gender equity in Fresno State's intercollegiate athletic program, and ensure Fresno State's future compliance with Title IX.

## **JURISDICTION AND VENUE**

19.     This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., and the regulations and policies promulgated pursuant to that law.

20.     This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

21.     Declaratory and other relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which is necessary and appropriate to determine the parties' respective rights and duties.

22.     Venue is proper in the United States District Court for the Eastern District of California, Fresno Division, pursuant to 28 U.S.C. § 1391(b) because Fresno State is in Fresno,

California, which is within this Court's jurisdiction, and all the Defendants reside in California. In addition, the events giving rise to the Complaint occurred in Fresno, California, which is within this Court's jurisdiction.

## **THE PARTIES**

### *Plaintiff Taylor Anders*

23.     Taylor Anders is a sophomore at Fresno State majoring in business marketing and a member of the Fresno State women's lacrosse team. She is expected to graduate in 2023 and has four years of remaining athletic eligibility.

24.     Ms. Anders grew up in Portland, Oregon, and started playing lacrosse in seventh grade. Athletic pursuits have been an important part of Ms. Anders's life—teaching her discipline, a strong work ethic, and teamwork.

25.     Playing lacrosse at the highest level was integral to Ms. Anders's decision to attend Fresno State. Ms. Anders loved the team and, because of her hard work, was awarded an athletic scholarship to attend.

26.     Ms. Anders was led to Fresno State by promises of how well Fresno State treated its athletes. Regrettably, Ms. Anders' experience does not align with those recruiting promises. Instead, she and her teammates on the women's lacrosse team have been treated as "sub-par" to the male athletes at Fresno State.

27.     Fresno State's elimination of the women's lacrosse team has caused Ms. Anders much anxiety and uncertainty. She chose Fresno State based on the promise that she would be valued as a student-athlete and be able to fulfill her dream of playing Division I lacrosse for four years.

28.     Now, Ms. Anders faces an impossible choice—leave the community she loves to play lacrosse elsewhere or stay at Fresno State and never play college lacrosse again. Unless she elects to transfer, Fresno State's decision to eliminate women's lacrosse will effectively end her career as a college athlete after just one season of play.

### Plaintiff Hennessey Evans

29.     Hennessey Evans is a sophomore at Fresno State majoring in criminology and a member of the Fresno State women's lacrosse team. She is expected to graduate in 2023.

30.     Ms. Evans is from Rancho Santa Margarita, California, and started playing lacrosse in first grade. She has dedicated her life to lacrosse and has always wanted to be a Division I athlete.

31.     Ms. Evans was a four-year starter in high school, the team captain, and a high school All-American.

32.     Ms. Evans worked hard to accomplish her goals and earned a full athletic scholarship to Fresno State. Unsurprisingly, Ms. Evans excelled on the field during her freshman year at Fresno State, appearing in all eight games, scoring four goals, and being named Rookie of the Week four times.

33.     Ms. Evans has not been able to transfer to a Division I lacrosse program. So, by eliminating the team, Fresno State has taken away her opportunity to finish her collegiate career as a Division I athlete.

34.     Fresno State's decision also impacts Ms. Evans' professional future, as many employers and graduate schools look favorably upon student-athletes because of the rigor and dedication it takes to play at the highest level.

*Plaintiff Abbigayle Roberts*

35.     Abbigayle Roberts is a senior at Fresno State, majoring in psychology and a member of the women's lacrosse team. She has two years of remaining athletic eligibility.

36.     Ms. Roberts is originally from Memphis, Tennessee, and has played lacrosse since she was in seventh grade.

37.     Ms. Roberts excelled at lacrosse in high school, breaking records and receiving recognition in her conference.

38.     While playing for a club team in the summer of her sophomore year, Ms. Roberts was recruited by the coach at Fresno State.

39.     Ms. Roberts committed to play lacrosse at Fresno State that year in response to Fresno State's recruiting efforts. Fresno State appeared to have everything Ms. Roberts was looking for in a college—lacrosse, a large student body, and strong traditions.

40.     Ms. Roberts has been an integral part of the lacrosse team at Fresno State since first stepping on campus. She was named an "All-Conference" player and, along with other members of her team, achieved the "All-Academic" distinction for her outstanding grade point average. Ms. Roberts, along with the rest of her teammates, embody the definition of student-athletes.

41.     Ms. Roberts is deeply saddened and disappointed that the lacrosse team was cut. She and her teammates have strived to build an award-winning team to represent Fresno State with pride on and off the field.

42.     Fresno State's decision to eliminate the lacrosse team has harmed Ms. Roberts. Like her teammates, she is left with an impossible choice—transfer to another school to complete her athletic eligibility or remain at Fresno State without a lacrosse team.

43.     Moreover, fighting for basic rights as a female student-athlete at age twenty-two takes a significant emotional toll, especially while enduring a global pandemic, trying to maintain good grades, and completing the academic pre-requisites to be admitted into her graduate program of choice.

### Plaintiff Megan Walaitis

44.     Megan Walaitis is a senior at Fresno State majoring in sociology and is a member of the women's lacrosse team. She has two years of remaining athletic eligibility.

45.     Ms. Walaitis has been involved with the lacrosse team at Fresno State since its inception during her childhood. Her father was employed by Fresno State and her parents were among the first of the team's boosters. As a child, Ms. Walaitis was the "ball girl" for the lacrosse team.

46.     Ms. Walaitis was recruited for the Fresno State team during her sophomore year of high school. She was attracted to the familiarity Fresno State provided. But the deciding factor was the team's close-knit and supportive atmosphere. It was a dream come true for Ms. Walaitis, the former "ball girl," to mature into a Fresno State lacrosse player, proudly wearing her own Bulldog uniform.

47.     Ms. Walaitis was awarded a full scholarship to Fresno State and has excelled on the lacrosse team. She was named the Mountain Pacific Sports Federation Rookie of the Week and was third on the team for goals scored. During her sophomore year, the team was honored as an All-Academic Team in its conference for having an exceptional combined grade point average.

48.     Fresno State's decision to eliminate her team has harmed Ms. Walaitis. It undermined all the hard work and dedication she put into excelling as an athlete throughout her

career at Fresno State and forces her to choose between staying at Fresno State and transferring to play elsewhere.

49.     Fresno State's decision has been a heavy burden on Ms. Walaitis, who is deeply saddened by the prospect of never playing lacrosse at Fresno State again.

### *Plaintiff Tara Weir*

50.     Tara Weir is a freshman at Fresno State majoring in Pre-Veterinary Medicine at Fresno State and is a member of the women's lacrosse team. She has three years of remaining athletic eligibility.

51.     Ms. Weir, originally from Pennsylvania, has been playing lacrosse since she was in fifth grade. She worked hard and excelled at lacrosse in high school to position herself for a spot on a NCAA Division I lacrosse team.

52.     Ms. Weir chose Fresno State over other universities because she fell in love with the school and the team and had the expectation that she would be able to play four years of Division I lacrosse. She was also drawn to the Pre-Veterinary Medicine major Fresno State offered.

53.     Before Ms. Weir even had a chance to step foot on the field, Fresno State announced it was eliminating the women's lacrosse program beginning in 2021-2022. The prospect of having to choose between transferring to a new school where she would have to start all over again or never playing lacrosse again is devastating to Ms. Weir.

### *Defendants*

54.     Defendant Fresno State is a constituent institution of The California State University System.

55.     Defendant Fresno State is a recipient of federal funds and is required to comply with Title IX and all implementing regulations.

56.     Defendant Fresno State holds itself out as a university committed to providing top-quality intercollegiate sports programs. The university uses this distinction as part of its efforts to recruit top student-athletes and coaching staff.

57.     Under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and the regulations adopted pursuant to 34 C.F.R. Part 106, Defendant Fresno State must provide equality of opportunity for women and men in every program it offers, including equal opportunities for male and female athletes in intercollegiate sports programs.

58.     Defendant Terrence "Terry" Tumey has been the Athletic Director at Fresno State since August 2018.

59.     Defendant Tumey is an employee and agent of Defendant Fresno State who reported directly to and was always under the direct supervision and control of Defendant Joseph Castro and Defendant Dr. Saúl Jiménez-Sandoval.

60.     In his role as Athletic Director, Defendant Tumey has been and is responsible for ensuring all Fresno State's athletic policies and practices comply with Title IX.

61.     Defendant Tumey is aware of the Title IX requirements, which prohibit discrimination on the basis of sex.

62.     Defendant Joseph Castro is the Former President at Fresno State and is now the Chancellor of California State University and a member of the Board of Governors of the California State University System.

63.     Defendant Castro, until his resignation in January 2021, was Fresno State's highest-ranking employee and provided final administrative approval for all decisions made by Defendant Tumey.

64.     As the Former President of Fresno State, Defendant Castro is aware of requirements under Title IX, which prohibits discrimination on the basis of sex.

65.     Dr. Saul Jiménez-Sandoval is the Interim President at Fresno State, effective January 4, 2021.

66.     Dr. Jimenez-Sandoval is the highest-ranking employee at Defendant Fresno State and provides final administrative approval for all decisions made by Defendant Tumey.

67.     As Interim President, Defendant Jimenez-Sandoval is aware of requirements under Title IX, which prohibits discrimination on the basis of sex.

## FACTUAL ALLEGATIONS

### Elimination of the Women's Lacrosse Team

68.     On the morning of October 16, 2020, the team was notified by e-mail of a mandatory Zoom call with Defendant Tumey to occur on the same day. On the Zoom call, which lasted only ten minutes, Defendant Tumey announced the elimination of the women's lacrosse team effective 2021-22 and took a few questions before closing. The decision had clearly been made well in advance of the call, but no one on the coaching staff or team was given any prior indication that the lacrosse team would be cut.

69.     That same day, President Castro announced the cut publicly.

70.     Defendants' intentional concealment of their decision to terminate the lacrosse team deprived Plaintiffs of any effective opportunity to try to preserve their team prior to Defendants' public announcement.

71.     By keeping their plan a secret, Defendants also denied Plaintiffs any opportunity to plan for, protect themselves against, or mitigate the sudden and devastating impacts that the

decision to terminate the women's lacrosse team would have on Plaintiffs' lives, sports careers, and futures.

72.     The impact of Fresno State's decision has been immediate and detrimental to the student-athletes and to the coaches and staff members who are responsible for ensuring that female student-athletes are provided with athletic opportunities equivalent to male student-athletes at Fresno State.

73.     The elimination of the women's lacrosse team was not only surprising and devastating to the athletes on those teams, but it was also a clear violation of federal law.

74.     Title IX says that, unless conditions not present at Fresno State are met, schools are giving men and women equal opportunities to participate when "intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments." 44 Fed. Reg. 71418 (Jan. 16, 1996).

75.     As interpreted by the U.S. Department of Education's Office for Civil Rights ("OCR"), this means that, if a university has a full-time undergraduate population that is 60% female and 40% male, the school's varsity athletic program should ideally be 60% female and 40% male. Minor differences from true proportionality will not matter, because, among other things, enrollment numbers and team sizes will reasonably vary from year to year. The key question is whether the number of opportunities required to fill the gap would "be sufficient to sustain a viable team, i.e., a team for which there is a sufficient number of interested and able students and enough available competition to sustain an intercollegiate team." Office of Civil Rights, U.S. DOE, *Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test* at 3 (Jan. 15, 1996) ("1996 OCR Clarification"). If the gap is not that big, then the numbers are "substantially proportionate." If the gap is bigger than that, then the numbers are not "substantially

proportionate."

76.     At Fresno State, as is discussed below, the intercollegiate level participation opportunities for male and female students have not been provided in numbers substantially proportionate to their respective enrollments for years—and still will not be substantially proportionate after the women's lacrosse team is eliminated (along with the men's tennis and wrestling teams). The gap will "be sufficient to sustain a viable team, i.e., a team for which there is a sufficient number of interested and able students and enough available competition to sustain an intercollegiate team" -- the women's lacrosse team.

77.     Thus, the elimination of the women's lacrosse team violates Title IX.

78.     In addition to this most recent and obvious violation of Title IX, Defendants have historically discriminated and continue to discriminate against women student-athletes and potential student-athletes at Fresno State on the basis of their sex by depriving them of equal opportunities to participate in Fresno State's intercollegiate athletic program, providing them with unequal and inferior athletic financial aid; and treating the women in Fresno State's intercollegiate athletic program unequally as compared to men in Fresno State's intercollegiate athletic program.

**Fresno State's History of Title IX Violations**

79.     Fresno State is no stranger to Title IX violations. Indeed, starting in 1992, Fresno State was under investigation by OCR for violating Title IX. In April 1994, OCR sent Fresno State a Letter of Finding concluding that Fresno State was out of compliance with Title IX in eleven of thirteen areas. Fresno State then entered into a Corrective Action Plan with OCR, requiring annual reports for all areas of non-compliance. In October 2001, OCR closed its file on that investigation.

80.     In November 2002, Associate Athletic Director Diane Milutinovich filed a complaint against Fresno State with OCR for discrimination and retaliation in violation of Title IX.

In April 2004, OCR informed Fresno State that three Title IX complaints had been filed against it. In the resulting investigation, OCR again found Fresno State in violation of Title IX in eleven of thirteen areas of treatment.

81.  To resolve those complaints, in August 2009, Fresno State entered into a Voluntary Resolution Agreement with OCR that required the university to conduct a self-assessment under Title IX and to develop and implement a remedial plan to address any Title IX concerns.

82.  Ultimately, Fresno State was required to take forty-five remedial actions. In 2016, seven years later, OCR found that Fresno State had completed those forty-five remedial steps and ended its monitoring of the Voluntary Resolution Agreement.

83.  In its 2016 letter closing the file, OCR noted that "OCR's action is based on the specific requirements of the 2009 agreement and not an evaluation of the university's current compliance with Title IX."

84.  During the nearly twenty-five years that Fresno State was under investigation and being monitored for Title IX compliance by OCR, gender discrimination at Fresno State was such a serious problem that a stunning number of women in the athletic department had to file lawsuits against the school, which garnered major publicity and enormous verdicts and settlements.

85.  Associate Athletic Director Diane Milutinovich—who had filed complaints with OCR in 2002—sued Fresno State regarding its Title IX violations in October 2004, alleging that she was retaliated against for advancing gender equity. Fresno State settled with Ms. Milutinovich in 2007 for $3.5 million.

86.  Women's volleyball coach Lindy Vivas sued Fresno State for retaliating against her for advocating gender equity and won a $5.85 million jury verdict in July 2007. The verdict was later reduced to $4.52 million.

87.     Women's basketball coach Stacy Johnson-Klein made a similar claim and won a $19.1 million jury verdict in December 2007. The verdict was later reduced to $6.6 million and ultimately settled out of court.

88.     In addition, Fresno State paid significant sums to settle claims brought by other women, including softball coach Margie Wright in 2008 and track coach Ramona Pagel in 2009.

89.     As the facts above demonstrate, Fresno State has a long history of non-compliance with Title IX. True to form, Fresno State's decision to eliminate the women's lacrosse team was in flagrant violation of Title IX.

**Title IX's Requirements**

90.     Fresno State is a member of the NCAA and the women's lacrosse team participates in the Mountain Pacific Sports Federation ("MPSF"). Fresno State participates in Division I athletics, the highest level of intercollegiate competition. Fresno State offers athletic financial assistance (i.e., athletic scholarships) to members of its varsity athletic teams.

91.     At the beginning of the 2019-2020 academic year, Fresno State sponsored men's baseball, basketball, track, football, golf, tennis, and wrestling. During the same period, Fresno State sponsored women's basketball, track, equestrian, golf, lacrosse, soccer, softball, swimming and diving, tennis, and water polo. Each of these sports is segregated based on sex.

92.     Because Fresno State receives federal financial assistance, its athletic program is subject to Title IX and Fresno State must comply with Title IX's requirements. 20 U.S.C. § 1687.

93.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

94.     Applying Title IX to intercollegiate athletics, OCR has adopted regulations requiring educational institutions receiving federal funds to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c).

95.     The United States Department of Education ("DOE") later adopted these regulations and codified them at 34 C.F.R. Part 106 (collectively, the "Regulations"). These regulations are enforced by OCR.

96.     In 1979, OCR issued a policy interpretation of Title IX and the Regulations as applied to intercollegiate athletics at 44 Fed. Reg. at 71418 (the "OCR Policy Interpretation").

97.     The OCR Policy Interpretation sets forth three areas of compliance under Title IX as it relates to college sports: (1) effective accommodation of student interests and abilities; (2) equal athletic financial assistance; and (3) equal treatment and benefits for athletic teams.

98.     Violation of the requirements of Title IX constitutes intentional sex discrimination.

99.     Fresno State fails all three areas of compliance as set forth by the OCR Policy Interpretation and, accordingly, this lawsuit seeks to remedy the Defendants' intentional sex discrimination in all three areas.

**Fresno State does not accommodate female athletes' interests and abilities.**

100.    The OCR Policy Interpretation established three different ways to measure whether Fresno State effectively accommodates female athletes' interests and abilities. One of the following three parts must be satisfied for Fresno State to be in compliance:

> (1)     Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or

> (2)     Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program

expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

(3)    Where the members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

44 Federal Register 71,413 at 71,418 (1979) (the "three-part test").

101.    Every federal court of appeals that has considered the three-part test's validity—including the Ninth Circuit—has upheld it. *See, e.g.*, *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 961 (9th Cir. 2010); *Equity in Athletics v. Dep't of Educ.*, 504 F. Supp. 88, 102-05 (W.D. Va. 2007), *aff'd* 291 2008 WL 4104235 (4th Cir. 2008); *see also McCormick v. School Dist. Mamaroneck*, 370 F.3d 273, 288 (2d Cir. 2004); *Chalenor v. Univ. of N.D.*, 292 F.3d 1042, 1046-47 (8th Cir. 2002).

102.    Fresno State cannot comply with any part of the three-part test. Accordingly, it does not accommodate female student-athletes' interests and abilities.

103.    First, Fresno State does not provide "intercollegiate level participation opportunities for male and female students in numbers substantially proportionate to their respective enrollments."

104.    For example, the most recent publicly available data, Equity in Disclosure Act ("EADA") data from 2018-2019, shows Fresno State had an undergraduate female population of 59.54%, but females had only 55.79% of the athletic opportunities. As is discussed below, EADA data tends to overstate female participation and does not provide accurate participation counts for Title IX. But even this data shows Fresno State was violating part one of the three-part test. Indeed, according to that data, Fresno State has been out of compliance in this area since at least 2014.

105.    In addition, Fresno State has inaccurately and historically inflated several women's team rosters. And even Fresno State's simultaneous elimination of the men's wrestling and tennis teams will not bring Fresno State into compliance with the Title IX proportional participation requirement.

106.    Fresno State has relied on its EADA numbers to claim it is complying with Title IX under part one of the three-part test. That claim is unjustified.

107.    EADA reporting does not follow Title IX's counting requirements and systematically allows for the overcounting of female athletes and underreporting of the female participation gap. As an example, EADA data counts male practice players who practice with women's teams as female athletes. Obviously, opportunities afforded to male practice players cannot create equal opportunities for female student-athletes. Title IX does not permit this type of counting.

108.    Fresno State does not meet the second part of the three-part test either.  It cannot show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex.

109.    The elimination of the women's lacrosse team, without more, precludes Fresno State from satisfying part two of the three-part test. In addition, Fresno State dropped women's swimming from 2004 to 2008. While Fresno State added women's golf in 2003, women's swimming (back) and lacrosse in 2008, and women's water polo in 2017, it cannot demonstrate a history and continuing practice of expanding opportunities for the underrepresented sex.

110.    Finally, Fresno State cannot satisfy the third part of the three-part test: that the interests and abilities of the female athletes are fully and effectively accommodated by the present program. Again, the elimination of the women's lacrosse team alone prevents Fresno State from

doing so. *See Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 294 (D. Conn. 2009) ("There is no question that, if Quinnipiac fails to meet prong one of Title IX compliance, it will be out of compliance with Title IX. That is because, by eliminating a women's team while there is sufficient interest to field one, the University will have failed to demonstrate that it is committed to expanding opportunities for the underrepresented gender—women—or that it has fully and effectively accommodated the interests and abilities of that underrepresented gender.").

**Fresno State does not provide equal athletic financial assistance.**

111.    Compliance in equal athletic financial assistance is assessed pursuant to 34 C.F.R. §106.37 (c), which provides:

> To the extent that a recipient awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.

112.    In each of the last sixteen years, women student-athletes at Fresno State have not been provided scholarship dollars in proportion to their participation in Fresno State athletics. From 2003-04 through 2018-19, they received over $5.3 million less in athletic financial aid and male student-athletes were provided over $5.3 million more in athletic financial aid than they should have received if Fresno State had provided them with athletic financial aid "in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics."

113.    In fact, the female student-athletes at Fresno State were entitled to even *more* athletic financial aid than that under Title IX, because they were being deprived of equal opportunities to participate.

114.    If female student-athletes at Fresno State had been given opportunities to participate "substantially proportionate" to their undergraduate enrollment (i.e., if Fresno State had complied with part one of the three-part test) and, as Title IX requires, athletic financial aid was provided "in

proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics," female student-athletes at Fresno State  would have received over $6.1 million more in athletic financial aid over those years than they did.

**Fresno State does not provide equal athletic benefits to female athletes.**

115.    Compliance in equal athletic benefits is assessed under the factors set forth in 34 C.F.R. 106.41(c) and requires Fresno State to provide "equal athletic opportunity for members of both sexes." 34 C.F.R. 106.41(c)

116.    The Regulations identify ten non-exclusive areas in which Fresno State must provide equal athletic opportunity. These areas include:

- Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;

- The provision of equipment and supplies;

- Scheduling of games and practice time;

- Travel and per diem allowance;

- Opportunity to receive coaching and academic tutoring;

- Assignment and compensation of coaches and tutors;

- Provision of locker rooms, practice and competitive facilities;

- Provision of medical and training services;

- Provision of housing and dining facilities and services; and

- Publicity.

34 C.F.R. § 106.41(c).

117.    Schools are also assessed in this category based on the support provided for recruiting and other support services for athletes. 44 Federal Register 71,413 at 71,415-71,417 (1979).

118.    Upon information and belief, Fresno State does not offer equal athletic opportunities overall or in any of the areas set forth in the regulations. The following are just some examples of the inequality female student-athletes at Fresno State face:

- They are provided inferior equipment and supplies, as compared to male athletes and their teams;

- They are given much less flexibility in terms of whom they can schedule for competition and how far they can travel for competition, as compared to male athletes and their teams;

- They are provided inferior means of travel, including not having access to the same charter bus services, as compared to male athletes and their teams;

- They are provided fewer coaches and support personnel, as compared to male athletes and their teams;

- They have fewer coaches who are offered multi-year contracts than the male athletes and their teams;

- They are provided less academic support, as compared to male athletes and their teams;

- They are provided inferior locker rooms, as compared to male athletes and their teams;

- They are provided inferior practice space, as compared to male athletes and their teams;

- They are provided inferior gym space, as compared to male athletes and their teams;

- They are provided less publicity and public recognition, as compared to male athletes and their teams; and

- They are provided less formal recognition for achievements, as compared to male athletes and their teams.

**Current Treatment of Women's Lacrosse**

119.    In addition to Fresno State's on-going Title IX violations, the university is currently treating the women' lacrosse team far worse than the other varsity teams, almost as if it has already been eliminated.

120.    Lacrosse is a spring sport and would normally have off-season practices and training in the fall. Due to COVID, Fresno State promised to issue a "return-to-play" plan to the lacrosse team, as it did for other sports. Lacrosse never received a return-to-play plan and, as a result, unlike other teams, did not have off-season training.

121.    The women's lacrosse team players were kicked out of their locker room, did not receive uniforms until the season had already begun, and are being forced to use old, outdated equipment, including safety goggles.

122.    When members of other varsity teams had to quarantine for fourteen days due to COVID exposure, they were provided housing and three meals a day delivered to them.

123.    When the women's lacrosse team had to quarantine due to COVID exposure, they were not provided housing and were told to order food at their own cost.  The only food provided them were some snacks that were beyond their expiration date.

124.    On media day, when the teams have photos and videos taken that are used to promote the team and its members in social media and on the website, other teams were allowed

to bring everyone on the team. The women's lacrosse team was permitted only to have four of its seven seniors there and no other players.

## **INJUNCTIVE RELIEF**

125.    Plaintiffs are entitled to injunctive relief that requires Defendants to (a) treat the women's lacrosse team and its members at least as well as other varsity teams and their members during the 2020-21 academic year, (b) preserve the women's lacrosse team into the 2021-22 academic year and beyond, and (c) provide female student-athletes and potential student-athletes in Fresno State's intercollegiate athletic program with equal opportunities to participate, athletic financial aid, and treatment, as Title IX requires.

126.    Failure to grant the requested injunctive relief will mean that the women's lacrosse team members will continue to receive second-class treatment during the rest of this academic year, in violation of Title IX and the Defendants' statements that the team was a varsity team this year.

127.    Additionally, failure to grant the requested injunctive relief will cause irreparable harm to the Plaintiffs by allowing Defendants' discrimination against them to persist and by forever denying them an equal opportunity to participate in varsity intercollegiate athletics at Fresno State.

128.    If Defendants are not restrained from eliminating women's varsity lacrosse, Plaintiffs will never again have the opportunity to participate in this valuable educational experience at Fresno State—one that provides academic, physical, psychological, social, and even economic benefits.

129.    There is no adequate remedy at law for this harm.

130.    If the Court were to act quickly, the athletes on the women's lacrosse team would be treated as they should be this academic year and would be able to prepare for and participate in competition during the 2021-22 academic year.

131.     Similarly, the coaches and staff would be able to work with the athletes during this academic year and prepare for the full 2021-22 season, including by recruiting, budgeting, scheduling competition for the season, and ensuring proper facilities are available.

132.     As more time passes, it becomes increasingly difficult—if not impossible—for the teams and athletes to train and prepare adequately for the next season.

133.     The continuing, irreparable harm caused by Defendants' discriminatory actions far outweighs any possible harm that granting the injunctive relief might cause Defendants.

134.     Preliminarily enjoining Defendants' elimination of the varsity women's lacrosse team would merely ensure continuation of the status quo during this litigation, because these athletes have limited (if any) opportunities to pursue their interests and abilities elsewhere.

135.     Defendants will suffer no harm by continuing the women's varsity lacrosse team, other than the monetary cost of the teams Fresno State has already borne for many years.

136.     The lifelong harm caused to Plaintiffs by Defendants' discrimination is irreparable and can never be adequately compensated with money. This harm far outweighs any monetary cost incurred by Defendants to continue the women's lacrosse team or to add athletic opportunities for women.

137.     Importantly, Defendants could choose to allocate Fresno State's budget and athletic opportunities more equitably merely by shifting Fresno State's longstanding favoritism toward men to a more equal allocation between men and women.

138.     Meanwhile, Defendants will gain public relations and enrollment advantages by coming into compliance with Title IX and by offering more opportunities for Fresno State's female students.

139.     The injunctive relief that Plaintiffs request will promote the public interest by increasing educational opportunities for female students, end sex discrimination against female student-athletes and potential student-athletes in Fresno State's intercollegiate athletic program, and requiring Fresno State and the Defendants to comply with federal law.

140.     Congress decided that ending such discrimination is in the public interest when it enacted Title IX. It has reaffirmed that public interest over the past forty-two years by defeating every attempt to weaken Title IX. Equal opportunity for all students—male and female—is at the core of this case, is at the core of American values, and is clearly in the public interest.

## CLASS ALLEGATIONS

141.     Plaintiffs bring this action on behalf of themselves and a class of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).

142.     Plaintiffs seek to represent a class of all present and future women students and potential students at Fresno State who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics at Fresno State.

143.     Each of the named Plaintiffs is a member of the proposed class and has been or will be injured by Defendants' sex discrimination in Fresno State's varsity athletic program. The announced elimination of Fresno State's women's varsity lacrosse team exacerbates the discrimination by eliminating female athletic participation opportunities at Fresno State.

144.     The proposed class meets the "numerosity" requirement of Federal Rule of Civil Procedure 23(a)(1) because there are over 250 female student-athletes at Fresno State and joinder of them all is impracticable.

145.    The proposed class also meets those requirements because joinder of all class members and all persons harmed by Defendants' ongoing sex discrimination in Fresno State's varsity intercollegiate athletic program is not just impracticable, but impossible.

146.    The proposed class is known to exist, but the members of the class will change during this litigation because of the nature of college enrollment and athletic participation. Students at Fresno State generally aim to graduate four years after they matriculate. Athletes are eligible to participate in their sport for only four years, according to the rules of the NCAA. Accordingly, the members of the class harmed by Defendants' discrimination will change as each outgoing class of students graduates and another incoming class of students enrolls at Fresno State.

147.    Not all members of the plaintiff class are currently identifiable because the class includes prospective and future students who will enroll at Fresno State during this litigation or who will be deterred from enrolling at Fresno State because of Defendants' failure to provide athletic participation opportunities for female student-athletes, including the sports in which they want to participate.

148.    Not all members of the plaintiff class are currently identifiable because the class includes not only lacrosse players, but also all present, prospective, and future female students who want to participate in other varsity intercollegiate sports that are not offered at Defendant Fresno State.

149.    Plaintiffs are not aware of Defendant Fresno State having surveyed its present or prospective student body to assess athletic interests and abilities.

150.    Moreover, because Fresno State recruits high school students and transfer students from around the world, Fresno State could increase and thus realize athletic participation

opportunities for female students by starting virtually any new women's varsity sports team and then recruiting women to enroll and participate.

151.    It is unknown how many present, prospective, or future female student-athletes would enroll at Defendant Fresno State or would participate in athletics at the university if it stopped discriminating against women. The hundreds of additional student-athletes who might apply, be recruited, or participate in Fresno State's varsity intercollegiate athletic program if Defendants added the necessary athletic opportunities to provide equal opportunities for women are too numerous to make joinder practicable.

152.    Joinder is impracticable because the class includes members whose identities are not currently known. There are present female students at Fresno State whose names are currently unknown, but who would participate in varsity athletics at Fresno State if Defendants did not intentionally discriminate in the operation of its athletic program or if Defendants offered the sports or events in which they want to participate.

153.    There are also present female student-athletes at Fresno State who do not receive an equitable allocation of athletic financial assistance or the benefits provided to male varsity athletes.

154.    Joinder is impracticable because the class includes unknown and unidentifiable prospective and future students who will enroll at Fresno State during this litigation or who will be deterred from enrolling at Fresno State because of the sex discrimination in the school's varsity intercollegiate athletic program.

155.    Plaintiffs satisfy the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2) because they share questions of law and fact in common with the proposed class, particularly whether Defendants are violating Title IX by failing to provide female student-athletes

with equal opportunities to participate in varsity intercollegiate athletics, equal athletic financial aid, and equal treatment.

156.    Because Title IX requires comparison of the sex-segregated men's and women's athletic programs, the Title IX issues in this action are inherently class-based.

157.    Plaintiffs satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed class. They all have been denied, are continuing to be denied, or will be denied equal opportunities to participate in varsity intercollegiate athletics, equal athletic financial aid, and equal treatment at Fresno State because of Defendants' ongoing sex discrimination.

158.    Plaintiffs want the Court to prohibit Defendants from eliminating women's varsity intercollegiate athletic opportunities at Fresno State and to require Defendants to preserve the women's lacrosse team and comply with Title IX.

159.    Plaintiffs are members of the proposed class and will fairly and adequately represent the interests of the class pursuant to Federal Rules of Civil Procedure 23(a)(4). They intend to prosecute this action vigorously to secure fair and adequate injunctive relief for the entire class and have retained counsel with significant experience and success prosecuting Title IX class actions against universities.

160.    Plaintiffs satisfy the requirement that class certification would be superior to other methods available for the fair and efficient adjudication of the controversy required by Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class—denying female student-athletes at Fresno State equal opportunity to participate in varsity intercollegiate athletics, including, but not limited to, women's

varsity lacrosse; equal athletic financial aid; and equal treatment—thereby making final declaratory and injunctive relief appropriate with respect to the class as a whole.

161.     Undersigned counsel have devoted substantial time to identifying and investigating the potential claims in this action, have developed detailed knowledge of the facts and the applicable law, and have sufficient resources to commit to representing this putative class as interim counsel under Federal Rule of Civil Procedure 23(g)(3) until such time as this Court determines whether to certify the action as a class action.

## COUNT I

## Title IX

**(Unequal Allocation of Athletic Participation Opportunities)**
**(By the Plaintiffs and Plaintiff Class)**

162.     Plaintiffs re-allege and incorporate by reference paragraphs 1-161.

163.     The Plaintiffs bring this claim as a class action as set forth in the Class Allegations.

164.     Defendants determine the number of athletic participation opportunities that Fresno State will provide to male and female students by choosing which sports it will offer to each sex and deciding how many athletes Fresno State will allow to participate on each sports team.

165.     Defendants fail to provide female students an equal opportunity to participate in varsity intercollegiate athletics in violation of Title IX and 34 C.F.R A §106.41(c)(1).

166.     Defendants fail to comply with each part of the three-part test, described above, to demonstrate compliance with the requirements of Title IX.

167.     Defendants do not provide female students with varsity intercollegiate athletic participation opportunities in a number substantially proportionate to female undergraduate enrollment.

168.   Defendants eliminated a fully rostered varsity team that had female participants with the interest and ability to play.

169.   Defendants cannot show a history or continuing progress of program expansion for women. Instead, by eliminating women's lacrosse, the Defendants are further out of compliance.

170.   Plaintiffs have the interest and ability to participate in women's varsity lacrosse. High school students (the source of Defendants' incoming, prospective, and future students) also have the interest and ability to participate in lacrosse. Competition exists in lacrosse because it is a major NCAA sport and Fresno State has offered the sport for many years—as have other schools in the NCAA.

171.   Defendants will continue and exacerbate their existing pattern and practice of sex discrimination in the allocation of athletic participation opportunities at Fresno State if they are not restrained from eliminating female athletic participation opportunities at Fresno State in women's varsity lacrosse.

172.   Plaintiffs seek a declaration that Defendants engaged in discrimination on the basis of sex by failing to offer female students an equal opportunity to participate in intercollegiate athletics at Fresno State.

173.   Plaintiffs seek expedited preliminary and permanent injunctive relief requiring Defendants to stop discriminating in the operation of Fresno State's intercollegiate athletics program, to treat the women's lacrosse team at least as well as other varsity teams this academic year, and to continue the women's lacrosse team at Fresno State in the 2021-22 academic year and beyond.

174.    As a result of Defendants' discriminatory actions, Plaintiffs have been denied and/or imminently will be denied their civil right to receive equal opportunities to participate in varsity intercollegiate athletics free of sex discrimination.

175.    They have been denied the educational, economic, physical, psychological, and social benefits of athletic participation.

176.    If Defendants are not restrained from eliminating the Fresno State women's lacrosse team, these athletes will forever lose the opportunity to participate in intercollegiate sports at Fresno State—an opportunity that lasts only four years, but provides a lifetime of educational, economic, physical, psychological, and social benefits.

## COUNT II

### Title IX

### (Unequal Allocation of Athletic Financial Assistance)
### (By the Plaintiffs and Plaintiff Class)

177.    Plaintiffs reallege and incorporate by reference paragraphs 1-161.

178.    The Plaintiffs bring this claim as a class action as set forth under the Class Allegations.

179.    Fresno State provides athletic financial assistance to some of its varsity athletes.

180.    Under Title IX, Fresno State must provide its female students with an equal allocation of any athletic financial assistance.

181.    Under 34 C.F.R. § 106.37, an equal allocation means that Fresno State must provide its female athletes with athletic financial assistance in the same proportion that it allocates athletic participation opportunities to female athletes at Fresno State.

182.    Defendants do not provide female student-athletes at Fresno State with an equal allocation of athletic financial assistance. This failure constitutes sex discrimination in violation of Title IX and 34 C.F.R. § 106.37.

183.    Defendants have not sufficiently increased the amount of athletic financial assistance Fresno State provides to female athletes to match the number of participation opportunities Fresno State should be providing to female athletes at Fresno State under Title IX.

184.    Plaintiffs are harmed by Defendants' failure to provide Fresno State's female students with an equal allocation of athletic financial assistance. Such harm includes lost educational opportunities, financial assistance, and lost quality in participation opportunities, in addition to the harm of being subjected to sex discrimination. Accordingly, they are entitled to the relief requested herein.

**COUNT III**

**Title IX**

**(Unequal Allocation of Athletic Treatment and Benefits)**
**(By the Plaintiffs and Plaintiff Class)**

185.    Plaintiffs reallege and incorporate by reference paragraphs 1-161.

186.    The Plaintiffs bring this claim as a class action as set forth under the Class Allegations.

187.    Defendants provide Fresno State's varsity student-athletes with certain benefits, including but not limited to, equipment, supplies, uniforms, locker rooms, scheduling for competitions, transportation and accommodations for travel, per diem for travel, coaching, tutoring and academic support services, practice and competition facilities, medical and training services, weight training and conditioning services, housing and dining services, sports information and publicity services, recruiting, video support, and other services.

188.    Under Title IX and 34 C.F.R. § 106.41(c), Defendants must allocate these benefits at Fresno State equally between male athletes and female athletes. On a program-wide basis, Fresno State must provide female athletes with benefits that are comparable to those that it provides to male athletes.

189.    Defendants do not provide female student-athletes at Fresno State with an equal allocation of these benefits. This failure constitutes sex discrimination in violation of Title IX.

190.    Plaintiffs are harmed by Defendants' failure to provide Fresno State's female student-athletes with an equal allocation of benefits and resources. Such harm includes lost educational opportunities, lost competitive advantage, and lower quality participation opportunities, in addition to the harm of being subjected to sex discrimination. Accordingly, Plaintiffs are entitled to the relief requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Certify this case as a class action on behalf of all present and future female students and potential students at Fresno State who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics at Fresno State; appoint Plaintiffs as class representatives; and appoint Plaintiffs' counsel as class counsel;

B.    Enter an order declaring that Defendants have engaged in a past and continuing pattern and practice of discrimination against female students on the basis of sex in the operation of Fresno State's varsity intercollegiate athletics program, in violation of Title IX and the regulations promulgated thereunder;

C.    Issue preliminary and permanent injunctions barring Defendants from discriminating against female students on the basis of sex in Fresno State's varsity intercollegiate

athletics program, prohibiting Defendants from eliminating Fresno State's women's lacrosse team (or any other women's varsity intercollegiate athletic opportunities at Fresno State) unless and until Fresno State is and will be in compliance with Title IX, and requiring Defendants to treat the women's lacrosse team and its members at least as well as other varsity teams and team members at Fresno State this academic year;

D.     Maintain jurisdiction over this action to monitor Defendants' compliance with this Court's orders;

E.     Award Plaintiffs their reasonable attorneys' fees and expenses; and

F.     Order such other and further relief as the Court deems appropriate.

Dated: February 12, 2021.

Respectfully submitted,

/s/ Michael A. Caddell
Michael A. Caddell (SBN 249469)
Cynthia B. Chapman (SBN 164471)
Amy E. Tabor (SBN 297660)
Caddell & Chapman
628 East 9th St.
Houston, TX 77007-1722
Tel.: (713) 751-0400
Fax: (713) 751-0906
E-mail: mac@caddellchapman.com
E-mail:  cbc@caddellchapman.com
E-mail:  aet@caddellchapman.com


Arthur H. Bryant (SBN 208365)
Bailey & Glasser, LLP
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
Fax: (510) 436-0291
E-mail: abryant@baileyglasser.com

Cary Joshi (*Pro Hac admission application forthcoming*)
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel: 202.463.2101
Fax: 202.463.2103
E-mail: cjoshi@baileyglasser.com

*ATTORNEYS FOR PLAINTIFFS*