**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAYLOR ANDERS, HENNESSEY EVANS, ABBIGAYLE ROBERTS, MEGAN WALAITIS, TARA WEIR, and COURTNEY WALBURGER, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>CALIFORNIA STATE UNIVERSITY, FRESNO, and BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY,<br><br>Defendants. | CASE: 1:21-cv-179-AWI-BAM<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION**<br><br>(Doc. No. 39) |

On February 12, 2021, Plaintiffs brought a preliminary injunction motion that involved two claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"): an effective accommodation claim and an equal treatment claim. Doc. No. 2. On April 21, 2021, the Court granted the motion as to the equal treatment claim and denied the motion as to the effective accommodation claim. Doc. No. 35. In the instant motion, Plaintiffs seek reconsideration of the Court's order with respect to the effective accommodation claim pursuant to Federal Rule of Civil Procedure 60(b). Doc. No. 39-1. Specifically, Plaintiffs contend the Court erred in failing to consider analysis involving participation counts compiled by Fresno State's expert, Timothy

O'Brien, for the 2020-21 academic year, see id. at 9-12,[1] and in crediting Fresno State's participation projections for the 2021-22 academic year. Id. at 12-17. For the reasons that follow, the motion will be denied.

## LEGAL FRAMEWORK

Under Rule 60(b) of the Federal Rules of Civil Procedure, a party can obtain relief from judgment or an order on various grounds. Fed. R. Civ. P. 60(b). As a general matter, a motion for reconsideration "should not be used to ask the court to rethink what the court ha[s] already thought through—rightly or wrongly," U.S. v. Rezzonico, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998) (internal quotation marks and citation omitted), and "[a] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (quoting 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir.1999)).

## DISCUSSION[2]

### I.    The 2020-21 Counts

The first issue on this motion for reconsideration is Plaintiffs' contention that the Court failed to address their argument that "Fresno State's 2020-21 Title IX counts … prove that the decision to eliminate the women's lacrosse team (and the men's tennis and wrestling teams) … will create a female participation gap of twenty-seven" and therefore violates Title IX. Doc. No. 39-1 at 1:22-27.  Plaintiffs allocate a mere four sentences to argument regarding the 2020-21 counts in their preliminary injunction briefing. See Doc. No. 24 at 20:8-15. Further, they state in said briefing that "the Title IX counts for 2019-20 … represent the only data that Fresno State purports to view as final and verified" and that the 2020-21 counts are "much less plausibl[e]" than the 2019-20 counts, id. at 17:14-24, while suggesting that the 2020-21 counts might not be usable at all. Id. at 20:8-9. It is therefore difficult for the Court not to view Plaintiffs' assertion on

---

[1] Unless otherwise noted, page citations to documents filed with the Court electronically are to the page numbers in the CM/ECF stamp at the top of each page.

[2] This order assumes familiarity with the law, facts and terms in the Court's April 21, 2021 order on Plaintiffs' preliminary injunction motion. See Doc. No. 35.

this motion that the 2020-21 counts are "undisputed" and the "best evidence in the record" of Fresno State's effective accommodation violation, see Doc. 39-1 at 1:23-24, 2:4-8, as new argument, in some respects. See Marlyn Nutraceuticals, 571 F.3d at 880 ("A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (citation and internal quotation marks omitted)). In any event, the argument lacks merit for the following reasons.

First, O'Brien states that his 2020-21 count was conducted before the end of the 2020-21 academic year (and certain sports seasons)—which is a deviation from Title IX protocols as described by the parties—and that his analysis was complicated by a number of factors, including the fact that "enrollments fluctuated significantly, practice and competitions were postponed or suspended in many sports, eligibility waivers were granted, and personal preferences [affected by the COVID-19 pandemic] were exercised at all levels." Doc. No. 19-7 at 37. Plaintiffs assert that there is "no potential" for O'Brien's counts to "mislead" because "O'Brien expressly smoothed out the pandemic's effects by counting opt-outs as participants." Doc. No. 49 at 6:12-22. O'Brien, however, never claims to have completely eliminated all the pandemic-related distortions referenced in his report. In fact, he states that because 2020-21 was an "extraordinary" year, his Title IX analysis was "challenging" and required "flexibility." Doc. No. 19-7 at 37, 38. Further, it appears that his handling of opt-outs and such was based on his own judgment, not on Title IX counting protocols. For example, O'Brien states:

> Because of the unique aspect of [the 2020-21] academic year in light of the Pandemic, and so as not to significantly distort the analysis, I included all male and female student-athletes who appeared on the squad lists, but ultimately opted out of competition [in the 2020-21 academic year] due to Covid-19, and thus indicated their intent to return to participate in their respective sport at the University. In contrast, I did not include any individuals who quit their teams or chose to withdraw from the University.

Doc. No. 19-7 at 37. In addition to showing that O'Brien did not fully account for the effects of the pandemic, these statements appear to indicate that O'Brien's counts where lower than true Title IX counts would have been in a normal year because at least some "quits" and "withdraws" presumably would have participated in athletics but for the pandemic. Further, while O'Brien purports to have adjusted existing squad lists for COVID-related opt-outs, quits and withdraws,

3

the Court sees nothing in his report indicating that he accounted, in any fashion, for a COVID-related reduction in newcomer walk-ons. The Court therefore cannot agree with Plaintiffs' contention that the 2020-21 counts are "undisputed" "Title IX counts" that constitute the "best evidence in the record" of Fresno State's Title IX compliance. See Doc. No. 39-1 at 1-2. The Court finds in its order on the motion to dismiss the First Amended Complaint that O'Brien's 2020-21 counts are sufficient to support an inference as to a lack of Title IX compliance for pleading purposes under Rule 8 of the Federal Rules of Civil Procedure, but they cannot properly be characterized as "Title IX counts" or said to "prove" anything.

Second, the Court cannot ignore the nature of O'Brien's substantial proportionality findings. O'Brien's analysis shows a female participation gap of 27 and a 2.16% disparity between female undergraduate enrollment and female athletic participation. Doc. No. 19-7 at 40. As noted in the Court's preliminary injunction order, numerous district courts have found that a percentage disparity in the 1%-3% range shows substantial proportionality, Doc. No. 35 at 8:8-24, and in fact, the Fourth Circuit Court of Appeals affirmed dismissal of a Title IX complaint based on a finding that a 2% disparity does not show a lack of substantial proportionality. See Equity In Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 110 (4th Cir. 2011). The participation gap, for its part, appears to be larger than the average size of women's teams at Fresno State in 2020-21, Doc. No. 19-7 at 40, and larger than the women's lacrosse team after several players transferred to other schools, but it is nonetheless slightly smaller than the women's lacrosse team before the decision to eliminate the women's lacrosse team was announced. See Doc. No. 36 ¶ 30. In the Court's view, these borderline findings do not show that Plaintiffs are likely to prevail on their effective accommodation claim—or raise serious questions as to the merits of such claim—given the apparent lack of precision in O'Brien's 2020-21 counts.[3]

The Court's finding, at the threshold, that the 2020-21 counts do not show Plaintiffs are

---

[3] A plaintiff seeking a preliminary injunction must establish that he or she is likely to succeed on the merits, that he or she is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his or her favor, and that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Angelotti Chiropractic v. Baker, 791 F.3d 1075, 1081 (9th Cir. 2015).

likely to prevail on their effective accommodation claim ends the inquiry, see Doe #1 v. Trump, 984 F.3d 848, 870 (9th Cir. 2020), but even allowing for the possibility that the 2020-21 counts could be construed to meet the lower standard and raise serious questions as to the merits of Plaintiffs' effective accommodation claim, the other preliminary injunction factors do not tip sharply enough in Plaintiffs' favor to warrant a preliminary injunction. Angelotti, 791 F.3d at 1081 ("Serious questions going to the merits and hardship balance that tips sharply towards [plaintiffs] can [also] support issuance of a[ ] [preliminary] injunction, so long as there is a likelihood of irreparable injury and the injunction is in the public interest." (citation and internal quotation marks omitted)).

Plaintiffs argue that allowing Fresno State to eliminate women's lacrosse will cause irreparable harm by preventing them from playing lacrosse at the collegiate level and depriving them of myriad benefits provided by fleeting participation in collegiate athletics. Doc. No. 2-1 at 18:23-20:20. They further argue that the public interest is served by "upholding Title IX's salutary goals" and that such considerations outweigh Fresno State's interest in "financial autonomy." Id. at 20:23-22:11. Title IX, however, does not provide a right to participate in collegiate athletics. See Gonyo v. Drake Univ., 837 F. Supp. 989, 994 (S.D. Iowa 1993); see also, Equity in Athletics, Inc. v. Dep't of Educ., 504 F. Supp. 2d 88, 100 (W.D. Va. 2007), aff'd sub nom. Equity in Athletics, Inc. v. U.S. Dep't of Educ., 291 F. App'x 517 (4th Cir. 2008). Thus, as to harm, the issue is not whether Plaintiffs have been deprived of a right to play lacrosse, but whether they have been subjected, in somewhat less injurious fashion, to a barrier to participation in athletics through a lack of proportionate opportunity. See Pederson v. Louisiana State Univ., 213 F.3d 858, 871 (5th Cir. 2000) (finding Title IX "injury" resulted from "the imposed barrier—the absence of a varsity team for a position on which a female student should be allowed to try out").

Further, the Ninth Circuit and other courts have found that Title IX allows for eliminating teams based on gender to achieve compliance, Neal v. Bd. of Trustees of California State Universities, 198 F.3d 763, 767 (9th Cir. 1999) (stating that it would be "imprudent to argue" that Title IX bars "all gender-conscious remedies"); see also, Cohen v. Brown Univ., 991 F.2d 888, 898 n.15 (1st Cir. 1993), and regulatory guidance promulgated by the Department of Education

5

1  expressly recognizes the interest of educational institutions in managing their own affairs. See
2  1996 Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (Jan. 16,
3  1996) ("1996 Clarification") (acknowledging "the flexibility to which [educational institutions]
4  are entitled when deciding how best to comply with the law"); Letter from Norma V. Cantú,
5  Assistant Sec'y of for Civil Rights, Office for Civil Rights, U.S. Dep't of Educ., to Colleagues
6  (Jan. 16, 1996) ("... Title IX provides institutions with flexibility and choice regarding how they
7  will provide nondiscriminatory participation opportunities.") (both documents available at
8  https://www2.ed.gov/about/offices/list/ocr/docs/clarific.html); see also, Equity in Athletics, 504 F.
9  Supp. 2d at 101 ("While academic freedom, of course, does not immunize defendants from civil
10 liability, including injunctive relief, for any violations of the law, courts should be very cautious
11 about overriding, even temporarily, a school's decisions as to its athletic offerings, especially
12 absent a showing that plaintiffs are likely to ultimately prevail." (citation and internal punctuation
13 omitted)).
14       The record shows that, whatever their effect is ultimately proven to be, the elimination of
15 women's lacrosse, men's tennis and men's wrestling were undertaken to achieve Title IX
16 compliance and address the financial impact of the COVID-19 pandemic. See, e.g. Doc. No. 19-4
17 ¶¶ 5-8. The balance of harms, therefore, does not tip sharply in Plaintiffs' favor, as required to
18 justify a preliminary injunction based merely on serious questions as to the merits of Plaintiffs'
19 effective accommodation claim. See Gonyo, 837 F. Supp. at 994 (finding that balance of harms
20 did not weigh in favor of issuing preliminary injunction reinstating wrestling team because
21 fielding a wrestling team could be "accomplished only at a considerable budgetary and
22 administrative cost" to the defendant educational institution and "an institution of higher education
23 [] is entitled to exercise, as a matter of academic freedom, its own judgment as to how to apportion
24 its resources and what its academic and athletic offerings will be").
25       For the foregoing reasons, the Court finds that a preliminary injunction is not warranted
26 based on the 2020-21 counts.
27 **II.     Fresno State's 2021-22 Projections**
28       Plaintiffs next contend that the Court erred in crediting Fresno State's projections as to

2021-22 participation opportunities by assuming an increase in female undergraduate enrollment would necessarily result in an increase in female participation opportunities and "[w]ithout addressing any of the shortcomings and inconsistencies in Defendants' 2021-22 athletic participation 'projections' raised by Plaintiffs." Doc. No. 39-1 at 12:25-13:9. According to Plaintiffs, the 2021-22 projections are defective and unreliable because they: (i) are not supported by evidence from coaches; (ii) significantly exceed past levels of female participation in athletics at Fresno State; (iii) may have been recycled from a 2019-20 plan that "never came to fruition"; (iv) contradict Fresno State's pre-litigation claim that there would not be "any substantial change" from 2019-20 going forward as to participation in uncut sports; (v) contradict Fresno State's claim that 30 women's Title IX participation opportunities were affected by the elimination of women's lacrosse; and (vi) do not track the NCAA averages and 2019-20 Title IX data on which they were purportedly based. Id. at 15:18-16:20. Further, Plaintiffs contend that Fresno State does not enforce planned roster sizes. Id.

According to Plaintiffs, these "shortcomings and inconsistencies" show "that Plaintiffs have met the most important preliminary injunction factor: proving a likelihood of success on the merits." Doc. No. 17:1-3. These factors, however, merely undercut Fresno State's 2021-22 projections. See Doc. No. 24 at 20:16-35:22. They do not, in any combination, constitute an affirmative showing on Plaintiffs' part as to how many female participation opportunities Fresno State will offer in the 2021-22 academic year or, for that matter, an affirmative showing that the number of participation opportunities provided will fail to satisfy the substantial proportionality requirement in Prong One of the Three-Part Test. The Court previously found that Plaintiffs failed to carry their burden of proof for a preliminary injunction with either their analysis of Fresno State's Title IX 2019-20 counts or their analysis of data compiled for purposes of the Equity in Athletics Disclosure Act ("EADA"). See Doc. No. 35. In deciding this motion for reconsideration, the Court has further found that Plaintiffs failed to satisfy their burden of proof with O'Brien's 2020-21 counts. Given Plaintiffs failure to carry their burden, Fresno State is not required to making any showing as to 2021-22 female participation opportunities at this stage in the proceeding and, whatever their faults may be, Fresno State's 2021-22 projections are essentially

7

1 irrelevant to the disposition of Plaintiffs' preliminary injunction motion. See Lofton v. Verizon
2 Wireless (VAW) LLC, 2014 WL 2041828, at *1 (N.D. Cal. Mar. 14, 2014), aff'd, 586 F. App'x
3 420 (9th Cir. 2014) ("The burden of establishing entitlement to the extraordinary relief of a
4 preliminary injunction lays squarely upon the party seeking the injunction—here, Plaintiff."
5 (citations omitted)); Env't Council of Sacramento v. Slater, 184 F. Supp. 2d 1016, 1027 (E.D. Cal.
6 2000) ("the moving party carries the burden of proof on each element" of the Ninth Circuit tests
7 for a preliminary injunction (citing Los Angeles Memorial Coliseum Comm'n v. National Football
8 League, 634 F.2d 1197, 1203 (9th Cir.1980)).

9      The one possible exception to the foregoing is Plaintiffs' contention that 2019-20
10 participation counts for uncut sports should have been used in Fresno State's 2021-22 projections.
11 See Doc. No. 24 at 28:10-13 ("The most reliable and conservative way to 'project' participation
12 counts for 2021-22 would be to use the 'actual' Title IX data from 2019-20 for the uncut sports
13 directly, and not speculate about how that data might change.") If that contention had been
14 adequately substantiated, the Court may have been able to find a sufficient showing of a Title IX
15 violation by testing participation counts at 2019-20 levels against Fresno State's 2021-22
16 enrollment projections. As set forth in the preliminary injunction order, however, the Court finds
17 that holding participation flat at 2019-20 levels, as Plaintiffs urge, fails to account for the fact that
18 female enrollment in 2021-22 is projected to exceed female enrollment in 2019-20 by nearly 400,
19 with a slight drop in male enrollment. See Doc. No. 35 at 29:17-30:7.

20      Plaintiffs argue that it is improper to assume an increase in female undergraduate
21 enrollment will result in an increase in female athletic participation because female participation
22 only increased by 4 in non-cut sports between 2019-20 and 2020-21, despite a sizeable increase in
23 the female undergraduate population between those two academic years. Doc. No. 39-1 at 13:1-9.
24 Plaintiffs also note that no further increase in the female undergraduate population is projected
25 from 2020-21 to 2021-22. Id. at 14:1-2. The fact that female participation increased in 2020-21
26 despite the COVID-19 pandemic, however, obviously does not validate Plaintiffs' contention that
27 participation rates should be held flat and that 2019-20 counts should be used in Fresno State's
28 2021-22 projections.

1        Plaintiffs also argue that the Court should have projected a decrease in male participation

2 opportunities in 2021-22 because male enrollment is projected to be lower in 2021-22 than it was

3 in 2019-20 and "[t]here is no reasonable basis to conclude that female, but not male, participation

4 opportunities will move in response to changes in enrollment." Doc. No. 39-1 at 14:17-15:2.

5 Holding male participation opportunities constant despite a decline in enrollment, however, is

6 conservative from Plaintiffs' point of view, in that it can only increase the projected female

7 participation gap. Moreover, the projected change in male enrollment is quite small in comparison

8 to the projected change in female enrollment.

9        Finally, Plaintiffs are correct that Fresno State's projected female participation gap for

10 2021-22 is 17, not eight. See Doc. No. 39-1 at 14 n.6. Neither side, however, contends that a

11 female participation gap of 17 shows a lack of substantial proportionality, and the Court sees no

12 basis elsewhere for such a finding. Thus, the difference between 17 and eight is irrelevant for

13 purposes of the preliminary injunction motion.

14        For the foregoing reasons, neither Fresno State's 2021-22 projections nor Plaintiffs'

15 critique of those projections show that Plaintiffs are likely to prevail on their effective

16 accommodation claim or raise serious questions going to the merits of that claim. To the extent the

17 projections could be read to meet the lower standard and raise serious questions as to the merits of

18 Plaintiffs' effective accommodation claim, the Court finds for the reasons set forth above that a

19 preliminary injunction is not warranted because the balance of harms does not tip sharply in

20 Plaintiffs' favor. See Angelotti, 791 F.3d at 1081.

21                                  **CONCLUSION**

22        For the foregoing reasons, Plaintiffs' motion for reconsideration will be denied with

23 prejudice.

24 //

25 //

26 //

27 //

28 //

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for reconsideration (Doc. No. 39) is DENIED WITH PREJUDICE.

IT IS SO ORDERED.

Dated:  July 22, 2021

_____
SENIOR DISTRICT JUDGE