# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR ANDERS, HENNESSEY EVANS, ABBIGAYLE ROBERTS, MEGAN WALAITIS, TARA WEIR, and COURTNEY WALBURGER, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>CALIFORNIA STATE UNIVERSITY, FRESNO and BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY,<br><br>Defendants. | CASE: 1:21-cv-00179-AWI-BAM<br><br>**ORDER GRANTING MOTION TO DISMISS COUNT II OF THE SECOND AMENDED COMPLAINT**<br><br>(Doc. No. 60) |

Defendant Board of Trustees of California State University (the "Board")[1] moves to dismiss Count II of Plaintiffs' Second Amended Complaint ("SAC"), Doc. No. 59, for lack of standing and failure to state a claim, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Doc. No. 60. The motion has been fully briefed and deemed suitable for decision without oral argument pursuant to Local Rule 230(g). For the reasons that follow, the motion will be granted.

---

[1] The Board states that it is the proper defendant in this case as the "State of California acting in its higher education capacity" and that, as such, naming California State University, Fresno ("Fresno State") as a defendant is improper. Doc. No. 60 at 1:25-2:2. The Court does not decide that question here but for the sake of simplicity, will refer to the moving party as the "Board" and use "Fresno State" in discussing the alleged facts giving rise to this case and the cause of action in question here.

[2] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

**BACKGROUND**

The background for this case is addressed in detail in other orders. See Doc. Nos. 35, 57 & 58. In brief, Fresno State announced in October 2020 that it would stop sponsoring women's lacrosse, men's wrestling and men's tennis in the 2021-22 academic year. Plaintiffs, who were members of Fresno State's women's lacrosse team at the time, filed this putative class action on February 12, 2021, alleging an effective accommodation claim, an equal treatment claim and a financial aid claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). See Doc. No. 1. They also brought a motion for a preliminary injunction barring Fresno State from eliminating women's lacrosse and requiring Fresno State to treat women's lacrosse as well as other varsity teams while this action was pending. See Doc. No. 2. The Court did not bar Fresno State from eliminating women's lacrosse but did order Fresno State to give women's lacrosse equal treatment through the conclusion of the 2020-21 season. See Doc. No. 35.

Plaintiffs filed a First Amended Complaint ("FAC") on May 3, 2021, Doc. No. 36, whereupon the Board brought a motion to dismiss. Doc. No. 42. The Court denied the motion to dismiss as to the effective accommodation and equal treatment claims but granted it, with leave to amend, as to the financial aid claim. Doc. No. 57.

Plaintiffs filed a Second Amended Complaint ("SAC") on August 12, 2021. Doc. No. 59. On August 26, 2021, the Board filed the instant motion, seeking dismissal of Plaintiffs' financial aid claim ("Count II") for failure to state a claim on which relief can be granted, under Rule 12(b)(6), and for lack of standing, under Rule 12(b)(1). Doc. No. 60.

**LEGAL FRAMEWORK**

**A.    Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a cause of action may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121−22 (9th Cir. 2008). To survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a complaint must include a

2

"short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Compliance with this rule ensures that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Under this standard, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. at 663.

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015); Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008). But the Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

Although leave to amend should be given freely, a district court may dismiss without leave where amendment would be futile. Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011) (citing Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir.1990) (per curiam)). When a district court has already granted a plaintiff leave to amend, its discretion as to further amendment is "particularly broad." Chodos v. W. Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002) (quoting Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 879 (9th Cir.1999)) (internal quotation marks omitted).

**B.     Federal Rule of Civil Procedure 12(b)(1)**

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180–81 (2000)). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Id. (citing Simmonds v. Credit Suisse Sec. (USA) LLC, 638 F.3d 1072, 1087 n.6 (9th Cir.2011)).

## ANALYSIS

**A.     Applicable Law[3]**

Title IX states in pertinent part as follows: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …." 20 U.S.C. § 1681(a).

At the direction of Congress, the Department of Health, Education and Welfare (the predecessor of today's Department of Education ("DOE")) issued regulations for Title IX that took effect in 1975.[4] See 34 C.F.R. §106.1. As applied to intercollegiate athletics, Title IX regulations provide for a "triumvirate of compliance-related claims": (1) "financial aid"—or

---

[3] A more comprehensive discussion of the law applicable to Title IX claims in connection with athletics, including the deference accorded to regulations and regulatory guidance, is set forth in the Court's April 21, 2021 order on Plaintiffs' preliminary injunction motion and in the Court's July 22, 2021 order on the Board's motion to dismiss the FAC. See Doc. Nos. 35, 57.

[4] After Title IX was passed, the Department of Health, Education, and Welfare was divided into the Department of Health and Human Services and the DOE. The DOE, acting through its Office for Civil Rights ("OCR"), is the agency now charged with administering Title IX. See Roberts v. Colorado State Bd. of Agric., 998 F.2d 824, 828 n.3 (10th Cir. 1993).

4

"scholarship"—claims, see 34 C.F.R. § 106.37(c); (2) "effective-accommodation" claims, see 34 C.F.R. § 106.41(c)(1); and (3) "equal-treatment" claims, see 34 C.F.R. § 106.41(c)(2)–(10). See Biediger v. Quinnipiac Univ., 928 F. Supp. 2d 414, 436 (D. Conn. 2013). Each of these is "a separate and distinct type of claim, to be analyzed separately." Beasley v. Alabama State Univ., 966 F. Supp. 1117, 1122 (M.D. Ala. 1997) (citations omitted).

As to financial aid in general, 34 C.F.R. § 106.37(a) provides that recipients of federal funding such as Fresno State shall not:

> (1) On the basis of sex, provide different amount or types of such assistance, limit eligibility for such assistance which is of any particular type or source, apply different criteria, or otherwise discriminate;
>
> (2) Through solicitation, listing, approval, provision of facilities or other services, assist any foundation, trust, agency, organization, or person which provides assistance to any of such recipient's students in a manner which discriminates on the basis of sex; or
>
> (3) Apply any rule or assist in application of any rule concerning eligibility for such assistance which treats persons of one sex differently from persons of the other sex with regard to marital or parental status.

34 C.F.R. § 106.37(a).

As to financial aid relating to athletics, 34 C.F.R § 106.37(c)(1) provides as follows:

> To the extent that a recipient [of federal funding] awards athletic scholarships or grants-in-aid, it must provide reasonable opportunities for such awards for members of each sex in proportion to the number of students of each sex participating in interscholastic or intercollegiate athletics.

Guidance regarding compliance with 34 C.F.R. § 106.37(c)(1) (which parallels 45 C.F.R. § 86.37(c)) is set forth in *A Policy Interpretation; Title IX and Intercollegiate Athletics*, OCR, Dep't of Edu., 44 Fed. Reg. 71,413 (Dec. 11, 1979) ("1979 Policy Interpretation"), which states, in pertinent part, as follows:

> The [DOE] will examine compliance … primarily by means of a financial comparison to determine whether proportionately equal amounts of financial assistance (scholarship aid) are available to men's and women's athletic programs. The [DOE] will measure compliance with this standard by dividing the amounts of aid available for the members of each sex by the numbers of male or female participants in the athletic program and comparing the results. Institutions may be found in compliance if this comparison results in substantially equal amounts or if a resulting disparity can be explained by adjustments to take into account legitimate, nondiscriminatory factors.

44 Fed. Reg. 71,413, 71,415.

Thus, "[t]he Policy Interpretation measures compliance by, in effect, comparing the per capita amount of financial aid awarded to male student-athletes with that for female student-athletes." Portz v. St. Cloud State Univ., 2018 WL 3579109, at *4 (D. Minn. July 25, 2018). In examining financial aid claims, "[p]articipants who participate on more than one team are to be *counted only once*."[5] Id. at *3-*5 (emphasis added) (citing *Title IX Athletics Investigator's Manual*, OCR, Dep't of Edu. (1990) ("Investigator's Manual")),[6]

---

[5] Plaintiffs do not address counting methodology for financial aid claims (as opposed to effective accommodation claims) in their briefing, but the SAC alleges that "[u]nder 34 C.F.R. § 106.37, an equal allocation means that Fresno State must provide its female athletes with athletic financial assistance in the same proportion that it allocates athletic participation opportunities to female athletes at Fresno State." Doc. No. 59 ¶ 268. Plaintiffs cite no authority to support the proposition that financial aid is to be provided in proportion to "participation opportunities"—as opposed to the number of student-athletes of each gender—and the Court has found no authority of consequence to that effect in its own review of relevant case law, regulations and regulatory guidance.

[6] Although the Investigator's Manual does not have the "force of law," courts see it as an "important guide[] … in unraveling the requirements" of Title IX regulations, worthy of "considerable weight." See Cohen v. Brown Univ., 809 F. Supp. 978, 988 (D.R.I. 1992), aff'd, 991 F.2d 888 (1st Cir. 1993); see also Portz, 2018 WL 3579109 at *4 ("The [Investigator's Manual] is an internal guidance manual that instructs agency officials on how to apply the Title IX regulations and, therefore, the interpretations contained therein are entitled to deference under [*Auer v. Robbins*, 519 U.S. 452, 461 (1997)] unless the circumstances suggest otherwise."). The Court notes that a court in the Eastern District of California has recognized, with approval, that "[c]ourts have followed the Office for Civil Rights instructions to its Title IX investigators" in assessing Title IX claims, Brust v. Regents of Univ. of Cal., 2007 WL 4365521, at *3 (E.D. Cal. Dec. 12, 2007), and that it appears Plaintiffs' expert, Donna Lopiano, assisted in the development of the Investigator's Manual, see Mansourian v. Bd. of Regents of Univ. of California at Davis, 816 F. Supp. 2d 869, 886 (E.D. Cal. 2011), and has made use of the Investigator's Manual in Title IX litigation. See Ollier v. Sweetwater Union High Sch. Dist., 858 F. Supp. 2d 1093, 1099 (S.D. Cal. 2012), enforced, 2014 WL 1028431 (S.D. Cal. Mar. 17, 2014), vacated, 2020 WL 4336169 (S.D. Cal. July 28, 2020), and aff'd, 768 F.3d 843 (9th Cir. 2014); see also Doc. No. 2-9 at 89 (citing the "OCR's 1990 Title IX Athletics Investigator's Manual" as a source considered in the formation of opinions set forth in the expert report prepared by Lopiano for this case).

Moreover, the Court sees no record of any court rejecting the counting methodology in the Investigator's Manual for financial aid claims and finds the counting methodology in the Investigator's Manual to be credible in that it does not conflict with the 1979 Policy Interpretation (which is somewhat oblique) and neatly tracks the language in 34 C.F.R § 106.37(c)(1), which calls for providing financial aid "in proportion to *the number of students of each sex* [emphasis added] participating in interscholastic or intercollegiate athletics." See Biediger, 928 F. Supp. 2d at 447 (stating that the Investigator's Manual is " 'entitled to respect' to the extent that it has 'the power to persuade' " (quoted source omitted)). At least with respect to counting, therefore, the Court agrees with the court in *Beasley v. Alabama State University*, 3 F. Supp. 2d 1325 (M.D. Ala. 1998) that "the Investigator's Manual sets forth the analysis that should be used to determine whether an educational institution offers proportionately equal amounts of scholarship aid to men's and women's athletic programs." Id. at 1335; see also Gonyo v. Drake Univ., 879 F. Supp. 1000, 1002, 1004 (S.D. Iowa 1995) (comparing the percentage of student-athletes who were male to the percentage of athletic scholarships that were awarded to male athletes in examining alleged financial aid disparities under 34 C.F.R. § 106.37(c)(1)); see also *Dear Colleague Letter: Bowling Green State University*, OCR, U.S. Dep't of Edu. (July 23, 1998), https://www2.ed.gov/about/offices/list/ocr/docs/bowlgrn.html ("[I]f men account for 60% of a school's intercollegiate athletes, the [1979] Policy Interpretation presumes that—absent legitimate nondiscriminatory factors that may cause a disparity—the men's athletic program will receive approximately 60% of the entire annual scholarship budget and the women's athletic program will receive approximately 40% of those funds.").

https://eric.ed.gov/?id=ED400763, at 21); see also Investigator's Manual at 151 ("*count athletes only once*, even if they participate on more than one team" in determining "the number of male and female participants and the percentage of male and female participants in [an] athletics program" in connection with financial aid claims (emphasis added)). 34 C.F.R. § 106.37(c)(1) does not require universities to achieve "exact proportionality" or to grant "the same number of scholarships to men and women," and "[t]here is a strong, rebuttable presumption that the institution is in compliance if the unexplained disparity in the athletic-based financial aid for either sex is 1% or less." Portz, 2018 WL 3579109, at *2 (citation omitted).

**B.     Parties' Arguments**

The Board argues that Plaintiffs have failed to state a financial aid claim because data reported under the Equity in Athletics Disclosure Act ("EADA") cannot properly be used "to evaluate the number of athletic participants and assess Fresno State's allocation of athletic aid" due to discrepancies in the way "participants" are counted under Title IX and the EADA. Doc. No. 61 at 14:7-13.[7] Further, they argue that Plaintiffs fail to set forth allegations supporting an inference that alleged disparities between female financial aid and male financial aid are due to discrimination (as opposed to neutral factors like the higher cost of out-of-state tuition), id. at 15:3-11, and that "alleged disparities [in] financial awards that may have existed prior to February 12, 2019" are irrelevant because they fall outside the applicable two-year statute of limitations. Id. at 15:12-19. Finally, the Board argues that the injury required for Article III standing is lacking because none of the Plaintiffs has shown that the size of her financial aid award was affected by Fresno State's supposed Title IX violations with respect to financial aid. Id., Part III.B.1.

Plaintiffs argue that they have the injury required for standing because they have all "suffered the psychological harm associated with being the targets of Fresno State's discriminatory conduct and participating in an athletics program that actively discriminates against them." Doc. No. 68 at 10:1-21. Further, they argue that two Plaintiffs in particular—Taylor Anders and Abbigayle Roberts—have suffered "additional concrete injuries-in-fact" because

---

[7] Page citations to records on the Court's electronic docket are to the page number in the CM/ECF stamp at the top of each page.

7

neither "has ever received a full scholarship" and they "received fewer dollars of financial assistance than they should and would have received if Fresno State complied with Title IX." Id. at 10:21-11:5. In addition, Plaintiffs contend they have stated a financial aid claim because the SAC alleges that male student-athletes received 3.5% more financial aid than they were entitled to receive in 2018-19 and 1.9% more financial aid than they were entitled to receive in 2019-20. Id. at 17:23-18:6. Finally, Plaintiffs contend they have shown an "unbroken pattern of awarding female student-athletes a disproportionately low amount of financial assistance" from 2003-04 through 2018-19 that precludes an inference that alleged financial aid disparities were due to non-discriminatory factors. Id. at 18:8-11, 20:21-21:8.

**C.  Discussion**

The Court will first address whether Plaintiffs have alleged facts showing a Title IX financial aid violation and turn to other issues raised in the Parties' briefing to the extent necessary.

*1. Allegations Regarding 2018-19*

Plaintiffs allege that "[i]n 2018-19, Fresno State's athletics program was 44.2% male and 55.8% female (*i.e.*, 323 females and 256 males based on EADA data …)." Doc. No. 59 ¶ 173. Further, Plaintiffs allege (again based on EADA data ) that Fresno State "awarded a total of $8,110,310 in financial aid to participants of its athletics program" in 2018-19, with $3,871,409 going to "participants on men's teams" and $4,238,901 going to "participants on women's teams," such that "[o]n average … a male participant in Fresno State's athletics program was awarded $15,122.69" and "[o]n average … a female participant in Fresno State's athletics program was awarded $13,123.53 in financial aid in 2018-19." Id. ¶¶ 173-178. According to Plaintiffs, this shows that "a female participant in Fresno State's athletics program was awarded … almost $2,000 *less* than her male counterpart" in 2018-19, id. ¶ 178 (emphasis original), in addition to showing that "female participants" received "3.5% *less*" in financial aid than they "were entitled to receive based on their representation in the athletics program" because "55.8% of the program was female, and yet female participants received only 52.3% of financial aid offered." Id. ¶ 180 (emphasis original).

8

The flaw in this analysis is that it is based on the EADA "participant count" for males and the EADA "participant count" for females—which count a given student-athlete as a "participant" in each sport in which he or she participates—and not on straight counts (without redundancy) of male student-athletes and female student-athletes. In other words, it improperly applies the counting methodology applicable to Plaintiffs' effective accommodation claims to Plaintiffs' financial aid claims. See Doc.No. 35 at 7:17-20; compare *Clarification of Intercollegiate Athletics Policy Guidance: The Three–Part Test*, OCR, Dep't of Edu. (Jan. 16, 1996) ("1996 Clarification"), http://www.ed.gov/about/offices/list/ocr/docs/clarific.html (stating that ""an athlete who participates in more than one sport will be counted as a participant in each sport in which he or she participates" when "determin[ing] the number of participation opportunities afforded to male and female athletes" in connection with effective accommodation claims) to Investigator's Manual, https://eric.ed.gov/?id=ED400763, at 21, 151 (stating that "[p]articipants who participate on more than one team are to be counted only once" in assessing financial aid claims).

Plaintiffs make an unopposed request for the Court to take judicial notice of Fresno State's EADA reports, see Doc. No. 68 at 19:1-8, and the Court will do so. See Fed. R. Civ. Pro. 201(b)(2); Cross Culture Christian Ctr. v. Newsom, 445 F. Supp. 3d 758, 764–65 (E.D. Cal. 2020) (stating that "a court may take judicial notice of . . . matters of public record, including government documents available from reliable sources on the internet" (internal quotation marks and citations omitted)); California River Watch v. City of Vacaville, 2017 WL 3840265, at *2 n.1 (E.D. Cal. Sept. 1, 2017) (*sua sponte* judicial notice of list of unregulated contaminants on government website).

The table below summarizes relevant data from Fresno State's 2018-19 EADA report, available at https://ope.ed.gov/athletics/#/customdata/:

| YEAR | MALE FINANCIAL AID | PARTICIPATION COUNT (MALE) | UNDUPLICATED COUNT (MALE) | FEMALE FINANCIAL AID | PARTICIPATION COUNT (FEMALE) | UNDUPLICATED COUNT (FEMALE) |
|---|---|---|---|---|---|---|
| **2018-19** | $3,871,409 | 256 | 244 | $4,238,901 | 323 | 263 |

As reflected in the EADA spreadsheets provided online by the DOE, "Participation Count" sums the number of participants on each team offered by Fresno State in 2018-19 such that student-athletes who participate in more than one sport are counted more than once. The "Unduplicated Count," by contrast, eliminates that redundancy and purports to show the number of male student-athletes and the number of female student-athletes at Fresno State in 2018-19, regardless of the number of sports in which they participated.

Using the Unduplicated Count shows that females accounted for 51.9% of Fresno State's student-athletes and received 52.3% of athletics-based financial aid in 2018-19. Males, on the other hand, accounted for 48.1% of Fresno State's student-athletes and received 47.7% of athletics-based financial aid in 2018-19. Moreover, the 2018-19 EADA report shows that Fresno State disbursed $4,238,901 in athletic financial aid across 263 female student-athletes for an average award of $16,117.49, and that Fresno State disbursed $3,871,409 in athletic financial aid across 244 male student-athletes for an average award of $15,866.43.

In sum, when applied in a manner consistent with the Investigator's Manual (as recognized by courts), EADA data shows that the female share of athletics-based financial aid exceeded the female share of Fresno State's student-athlete population—and that the average financial aid award for female student-athletes exceeded the average financial aid award for male student-athletes—in 2018-19.

*2. Allegations Regarding 2019-20*

Plaintiffs allege that in 2019-20, "Fresno State's athletics program was 44% male and 56% female (i.e., according to Fresno State's Title IX counts, there were 246 male and 313 female participants …)," Doc. No. 59 ¶ 183; "participants on men's teams at Fresno State were awarded $3,635,062 in financial aid," id. ¶ 185; and "participants on women's teams at Fresno State were awarded $4,276,956 in financial aid." Id. ¶ 187. According to Plaintiffs, this shows that on average

10

male participants received $14,776,67 in financial aid, id. ¶ 186; female participants received $13,664.40 in financial aid, id. ¶ 188; and thus "a female participant in Fresno State's athletics program was awarded … over $1,100 *less* than her male counterpart" in 2019-20. Id. (emphasis original). Further, Plaintiffs allege that, in 2019-20, "female participants in Fresno State's athletics program received 1.9% *less*" in financial aid than they "were entitled to receive based on their representation in the athletics program" because "56% of the program was female, and yet female participants received only 54.1% of financial aid offered. Id. ¶ 190 (emphasis original).

Relevant data from Fresno State's EADA report for 2019-20 (available at https://ope.ed.gov/athletics/#/customdata/) is set forth in the following table:

| YEAR | MALE FINANCIAL AID | PARTICIPATION COUNT (MALE) | UNDUPLICATED COUNT (MALE) | FEMALE FINANCIAL AID | PARTICIPATION COUNT (FEMALE) | UNDUPLICATED COUNT (FEMALE) |
|---|---|---|---|---|---|---|
| **2019-20** | $3,635,062 | 251 | 242 | $4,276,956 | 332 | 274 |

Using the Unduplicated Counts, females accounted for 53.1% of Fresno State's student-athlete population and received 54.1% of athletics-based financial aid in 2019-20, with an average financial aid award of $15,609.33. Males, for their part, accounted for 46.9% of Fresno State's student-athlete population and received 45.9% of athletic financial aid disbursed by Fresno State, with an average financial aid award of $15,020.92. Thus, as in 2018-19, EADA data shows that the female share of athletics-based financial aid exceeded the female share of Fresno State's student-athlete population and that the average financial aid award for females exceeded the average financial aid award for males in 2019-20.

One wrinkle here is that instead of using EADA Participation Counts (as they did in their 2018-19 analysis), Plaintiffs rely on what they refer to as "Title IX counts" from the table below, as filed by Fresno State in opposition to Plaintiffs' preliminary injunction motion. Doc. No. 19-2 at 19. Again, however, Plaintiffs improperly use counts summing the number of participants on each team (counting multi-sport athletes more than once), instead of using unduplicated counts that eliminate redundancy. As set forth below, the unduplicated count for males in 2019-20 was 237 and the unduplicated count for females in 2019-20 was 256. Using those figures shows that

11

females accounted for 51.9% of the student-athlete population but 54.1% of athletic financial aid in 2019-20, with an average financial aid award of $16,706.86, while males accounted for 48.1% the student-athlete population but 45.9% of athletic financial aid in 2019-20, with an average financial aid award $15,377.81.

**2019-2020 Roster Worksheet**

| MEN'S ROSTER NUMBERS | | |
|---|---|---|
| Sport | Planned RM # | Actual RM # |
| Baseball | 35 | 36 |
| M. Basketball | 15 | 17 |
| M. Cross Country | 11 | 8 |
| Football | 110 | 113 |
| M. Golf | 9 | 8 |
| M. Tennis | 10 | 9 |
| M. Track Outdoor | 26 | 23 |
| Wrestling | 32 | 32 |
| MTOTAL | 248 | 246 |
| UNDUPLICATED | 236 | 237 |

| WOMEN'S ROSTER NUMBERS | | |
|---|---|---|
| Sport | Planned RM # | Actual RM # |
| W. Basketball | 15 | 14 |
| W. Cross Country | 19 | 15 |
| Equestrian | 38 | 37 |
| W. Golf | 10 | 8 |
| W. Lacrosse | 32 | 30 |
| W. Soccer | 27 | 28 |
| Softball | 24 | 24 |
| W. Swim/Dive | 30 | 29 |
| W. Tennis | 9 | 8 |
| W. Track Indoor | 42 | 42 |
| W. Track Outdoor | 42 | 42 |
| W. Volleyball | 16 | 15 |
| Water Polo | 25 | 21 |
| WTOTAL | 329 | 313 |
| UNDUPLICATED | 268 | 256 |
| TOTAL | | 559 |
| UNDUP TOTAL | | 493 |

Doc. No. 19-2 at 19.

In sum, when applied correctly, the counts furnished by Fresno State in opposition to Plaintiffs' preliminary injunction motion also show that the female share of athletics-based financial aid exceeded the female share of the student-athlete population and that the average financial aid award for female student-athletes exceeded the average financial aid award for male student-athletes in 2019-20.

    *3. Allegations for the Period from 2003-04 through 2018-19*

In addition to making allegations specific to 2018-19 and 2019-20, Plaintiffs allege that "[f]rom 2003-04 through 2018-19, [female student-athletes] received over $5.3 million less in

12

athletic financial aid and male student-athletes were provided over $5.3 million more in athletic financial aid than they should have received." Doc. No. 59 ¶ 171. Further, Plaintiffs allege that "the annual shortfall in financial aid to female participants [] averaged 7.6%" from 2003-04 through 2019-20 and that "[i]n that same span, the shortfall in financial aid to female participants has never been smaller than the 1.9% gap that occurred in 2019-20." Id. ¶ 192.

The Board contends that alleged disparities in financial aid awards that may have existed prior to February 12, 2019 are irrelevant because financial aid claims are subject to a two-year statute of limitations and that Plaintiffs cannot base a financial aid claim on a "cumulative shortfall" over a multi-year period going back to 2003-04 because it may be that disparities accounting for the alleged shortfall occurred in years that fall outside the two-year statute of limitations window. Doc. No. 61 at 15:12-19. Plaintiffs, for their part, acknowledge that "allegations about conduct prior to the 2018-19 academic year do not give rise to standalone claims" but argue that they support a reasonable inference that Fresno State acted with discriminatory intent in more recent years. Doc. No. 68 at 11:16-12:2. Further, they argue that "claims for prospective injunctive relief do not implicate the statute of limitations." Id. at 11:19-21.

Plaintiffs cannot state a claim based on cumulative shortfalls since 2003-04 for two reasons. First, the Court sees no reason why Plaintiffs' analyses for other years in this period would not have the same counting flaw as the analyses for 2018-19 and 2019-20. Indeed, Plaintiffs state that calculations from the period from 2003-04 through 2017-18 are also "based on [] EADA information." Doc. No. 68 at 19, n.3.  Second, in light of the analyses above for 2018-19 and 2019-20 (the two most recent years for which allegations are made), the Court agrees with the Board that any financial aid disparity evidenced by Plaintiffs' allegations must have occurred prior to 2018-19 and, thus, more than two years before this action was filed. Plaintiffs concede that claims for retrospective relief cannot be based on allegations that pre-date 2018-19 and have not even attempted to show how they could prevail on a claim for injunctive relief absent creditable allegations of current (or at least recent) wrongdoing. See Coleman v. Wilson, 912 F. Supp. 1282, 1311 (E.D. Cal. 1995) ("in order to obtain a permanent injunction plaintiffs must actually succeed

on the merits of their claims") (citing Sierra Club v. Penfold, 857 F.2d 1307, 1318 (9th Cir.1988)).

**CONCLUSION**

When correctly applied, the data in the sources cited by Plaintiffs do not show that the female share of athletics-based financial aid was less than the female share of the student-athlete population at Fresno State in 2018-19 or in 2019-20—the two most recent years for which allegations are made. See Seven Arts, 733 F.3d at 1254 (the Court is "not required to accept as true allegations that contradict … matters properly subject to judicial notice"). Moreover, allegations regarding the cumulative financial aid imbalance since 2003-04 cannot be credited because they are evidently marred by the same counting defect as Plaintiffs' allegations with respect to 2018-19 and 2019-20 and, in any event, they cannot reasonably be interpreted to show a female financial aid deficit within two years of the February 12, 2021 filing of this action. Plaintiffs concede that this bars Title IX claims for retrospective relief and have made no effort to show how a claim for injunctive relief could properly be predicated on allegations that are several years old. Thus, the Court finds that Plaintiffs have failed to state a financial aid claim under Title IX.

This is the third opportunity Plaintiffs have had to plead a financial aid claim, and in light of the findings set forth above, it appears further amendment would be futile. See Cervantes, 656 F.3d at 1041; Chodos, 292 F.3d at 1003. The Court will therefore dismiss Count II of the SAC for unequal allocation of financial assistance with prejudice. See Doc. No. 59 ¶¶ 264-271. As such, it is unnecessary to address the other arguments set forth in the Parties' briefing.

//
//
//
//
//
//
//
//

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 60) is GRANTED and Count II of the Second Amended Complaint (Doc. No. 59) for unequal allocation of financial assistance is DISMISSED WITH PREJUDICE;

2. Defendants are ORDERED to file an ANSWER to the Second Amended Complaint within 21 days of the date of electronic service of this order; and

3. This case is referred back to the Magistrate Judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   October 29, 2021

SENIOR  DISTRICT  JUDGE