**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

TAYLOR ANDERS, et al.,

       Plaintiffs,

   v.

CALIFORNIA STATE UNIVERSITY, FRESNO, et al.,

       Defendants.

Case No. 1:21-cv-00179-AWI-BAM

**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

(Doc. No. 88)

    Plaintiffs Taylor Anders, Hennessey Evans, Abbigayle Roberts, Megan Walaitis, Tara Weir and Courtney Walburger (together, "Plaintiffs") bring a motion for class certification under Rules[1] 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Doc. No. 88. The motion has been fully briefed and deemed suitable for decision without oral argument under Local Rule 230(g). Doc. No. 92. Having thoroughly reviewed the parties' briefing and other relevant portions of the record, the Court will deny the motion without prejudice.

## **BACKGROUND**

    In the 2020-21 academic year, Defendant California State University, Fresno ("Fresno State") sponsored eight varsity sports for men and 13 varsity sports for women. Doc. No. 19 at 8:14-18;[2] Doc. No. 19-2 at 19. Each of these sports is segregated by sex. Doc. No. 19-2 at 19. On October 16, 2020, Fresno State announced it would stop offering men's wrestling, men's tennis

---

[1] Unless otherwise indicated, "Rule" refers to the Federal Rules of Civil Procedure.
[2] Page citations to documents on the Court's electronic docket are to the page number in the CM/ECF stamp at the top of each page.

and women's lacrosse at the end of the current 2020-21 academic year. Doc. No. 2-1 at 6:13-18.

On February 12, 2021, Anders, Evans, Roberts, Walaitis and Weir filed this class action (as members of Fresno State's women's varsity lacrosse team) against Fresno State and certain Fresno State administrators (collectively, "Defendants") alleging that Defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX") and implementing regulations by failing to provide female students an equal opportunity to participate in varsity athletics (the "effective accommodation" claim); failing to provide female athletes with an equal allocation of financial aid (the "financial aid" claim); and failing to provide female athletes with benefits comparable to those provided to male athletes (the "equal treatment" claim). Doc. No. 1. On February 12, 2021, Plaintiffs also filed a motion seeking a preliminary injunction barring Fresno State from cutting women's lacrosse—or any other women's team—and requiring Fresno State "to treat the women's lacrosse team and its members fairly" during the pendency of this litigation. Doc. No. 2-1 at 6:5-9. The Court granted the motion as to equal treatment of the women's lacrosse team but did not bar elimination of the women's lacrosse team. Doc. No. 35.

On May 3, 2021, a First Amended Complaint ("FAC") was filed, adding Walburger as a sixth Plaintiff. See Doc. No. 36 & 41. On May 15, 2021, Defendants filed a motion to dismiss the FAC in its entirety—including the effective accommodation claim, the financial aid claim, and the equal treatment claim. Doc. No. 42. The motion was granted, with leave to amend, as to the financial aid claim and denied as to the effective accommodation claim and the equal treatment claim. Doc. No. 57 at 30.

Plaintiffs filed a Second Amended Complaint ("SAC") on August 12, 2021 seeking to state a financial aid claim, Doc. No. 59, and on October 29, 2021, the Court granted, with prejudice, Defendants' motion to dismiss the financial aid claim on a finding that, properly construed, data cited by the Plaintiffs showed that female student-athletes received a disproportionate share of athletic scholarships at Fresno State. Doc. Nos. 60 & 73.

Defendants answered the SAC on November 19, 2021, Doc. No. 74, and on February 25, 2022, Plaintiffs brought the instant motion for class certification. Doc. No. 88.

//

2

**PLAINTIFFS' MOTION**

In this motion, Plaintiffs seek certification under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil procedure of a class defined as follows:

> All present and future women students and potential students at Fresno State who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics there.

Doc. No. 88 at 2:15-20. Further, they seek appointment of two Plaintiffs—Anders and Walburger—as class representatives and appointment of Bailey & Glasser, LLP as class counsel. Id. at 2:8-12.

Plaintiffs argue, in the main, that class certification is warranted because the sex discrimination alleged in this action is "inherently class-based" and that "the proposed class representatives will fairly, adequately, and vigorously represent the interests of the class." See Doc. No. 88-1 at 22:17-20, 25:22-24. Defendants argue that the proposed class is overbroad and that none of the four prerequisites for class certification under Rule 23(a) have been satisfied. See Doc. No. 90.

**LEGAL STANDARD**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)) (internal quotation marks omitted). In a class action, one or more class members may "litigate on behalf of many absent class members, and those class members are bound by the outcome of the representative's litigation." 1 Newberg on Class Actions § 1:1 (5th ed.) (citing Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 363 (1921)).

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which sets forth a two-part framework for deciding whether a class may be certified for representative litigation. See Kanawi v. Bechtel Corp., 254 F.R.D. 102, 107 (N.D. Cal. 2008).

First, Rule 23(a) asks whether a proposed class action satisfies each of the following four requirements: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative

1   parties are typical of the claims or defenses of the class; and (4) the representative parties will

2   fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

3        Assuming all four of the Rule 23(a) prerequisites are satisfied, the second step of the

4   analysis addresses whether the proposed class satisfies the requirements of Rule 23(b)(1), Rule

5   23(b)(2), or Rule 23(b)(3). See Kanawi, 254 F.R.D. at 107. Here, Plaintiff seeks certification

6   under Rule 23(b)(2), which allows for a class action to be maintained where "the party opposing

7   the class has acted or refused to act on grounds that apply generally to the class, so that final

8   injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

9   Fed.R.Civ.P. 23(b)(2).

10       A court must conduct a "rigorous analysis" to determine whether all applicable

11  requirements of Rule 23(a) and Rule 23(b) have been satisfied. General Telephone Co. of

12  Southwest v. Falcon, 457 U.S. 147, 161 (1982). The merits of the class members' substantive

13  claims are generally irrelevant to this analysis, Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–

14  78 (1974), but courts are "at liberty to consider evidence which goes to the requirements of Rule

15  23 even though the evidence may also relate to the underlying merits of the case." Hanon v.

16  Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992) (citation and internal quotation marks

17  omitted). A court takes "the substantive allegations of the complaint as true," Blackie v. Barrack,

18  524 F.2d 891, 901 n.17 (9th Cir. 1975), and a court is not limited to considering only admissible

19  evidence in deciding a motion for class certification. Sali v. Corona Reg'l Med. Ctr., 909 F.3d

20  996, 1005-06 (9th Cir. 2018), cert. dismissed, 139 S. Ct. 1651 (2019).

21       Courts apply a preponderance of the evidence standard in deciding motions for class

22  certification, Martin v. Sysco Corporation, 325 F.R.D. 343, 354 (E.D. Cal. 2018) (citations

23  omitted), and the proponent of class treatment bears the burden of affirmatively demonstrating that

24  class certification is warranted. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011); see

25  also, Kanawi, 254 F.R.D. at 107 ("The party seeking certification must provide facts sufficient to

26  satisfy the requirements of Rule 23(a) and (b)." (citing Doninger v. Pac. Northwest Bell, Inc., 564

27  F.2d 1304, 1308–09 (9th Cir. 1977)).

28       If a court decides to certify a class, the court must issue a certification order defining "the

4

1  class and the class claims, issues, or defenses, and must appoint class counsel" under Rule 23(g) of

2  the Federal Rules of Civil Procedure. Fed.R.Civ.P. 23(c)(1)(A)-(B).

3                                          **DISCUSSION**

4  **A.     Scope of the Proposed Class**

5         When "a class is defined so broadly as to include a great number of members who for

6  some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class

7  is defined too broadly to permit certification." Olean Wholesale Grocery Coop., Inc. v. Bumble

8  Bee Foods LLC, 31 F.4th 651, 669 (9th Cir. 2022) (quoted source and internal quotation marks

9  omitted). The Court will therefore begin by reviewing the scope of the proposed class. See Portz v.

10  St. Cloud State Univ., 297 F. Supp. 3d 929, 942 (D. Minn. 2018) ("The Court must first decide

11  whether Plaintiffs' proposed class definition is acceptable."); see also, Bryant v. Colgate Univ.,

12  1996 WL 328446, at *6 (N.D.N.Y. June 11, 1996) (assessing proper scope of class in light of

13  allegations in the complaint prior to conducting point-by-point Rule 23 analysis); Lundquist v.

14  Security Pacific Automotive Financial Services Corp., 993 F.2d 11, 14 (2d Cir. 1993) (stating that

15  courts are "not bound by the class definition proposed in the complaint" (quoting Robidoux v.

16  Celani, 987 F.2d 931, 937 (2d Cir. 1993)).

17         Defendants argue that the "proposed class definition sweeps far too broadly" because: (i) it

18  "includes no requirement that a class member have experienced any actual harm from Fresno

19  State's athletic policies or practices"; and (ii) " 'potential' 'future' students who 'are deterred

20  from' enrolling at Fresno State and participating in intercollegiate athletics there" are not

21  "reasonably ascertainable." Doc. No. 89 at 12:15-14:4. Plaintiffs argue that "[c]ourts have

22  routinely recognized the class-based nature of Title IX claims and have certified classes almost

23  identical to the proposed class here, including classes that consist of present, prospective, future,

24  and deterred female students." Doc. No. 90 at 3:7-10. Further, they argue that Defendants'

25  approach to defining the class would result in an improper "fail safe" class "defined to include

26  only those individuals who were injured by the allegedly unlawful conduct." Id. at 4:2-18.

27         Reviewing relevant case law, the Court finds three Title IX decisions to be particularly

28  instructive as to threshold determinations regarding the proper scope of a class under facts similar

to those in this case: *Biediger v. Quinnipiac Univ.*, Case No. 3:09cv621 (SRU), 2010 WL 2017773 (D. Conn. May 20, 2010); *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929 (D. Minn. 2018); and *Bryant v. Colgate Univ.*, Case No. No. 93-CV-1029, 1996 WL 328446 (N.D.N.Y. June 11, 1996). The Court will briefly summarize relevant aspects of each decision and then discuss their applicability here.

In *Biediger*, the named plaintiffs were members of the Quinnipiac University ("Quinnipiac") women's volleyball team who were enrolled at Quinnipiac at the time the action was brought. Biediger, 2010 WL 2017773 at *5. They moved under Rule 23(b)(2) to certify a class defined as follows:

> … [A]ll present, prospective, and future female students … harmed by and want to end [Quinnipiac's] sex discrimination in: (1) the allocation of athletic participation opportunities; (2) the allocation of athletic financial assistance; and (3) the allocation of benefits provided to varsity athletes ….

Biediger, 2010 WL 2017773 at *2. In addition, they sought relief on behalf of "females … deterred from enrolling at [Quinnipiac] because of the sex discrimination in its athletic program, including its failure to offer the varsity sports in which they want to participate …." Id.

Quinnipiac argued, *inter alia*, that the class was not ascertainable due to the inclusion of future and prospective students. Id. The court found that the "mere inclusion of future students does not cause a class to be unascertainable" and that given the proposed definition of the class (which was limited to female students who were "harmed by" Quinnipiac's sex discrimination) any "future female students" in the class would necessarily face the "imminent threat of injury" required for standing. Biediger, 2010 WL 2017773 at *3. The court, however, rejected the proposition that the class properly included females who were deterred from enrolling at Quinnipiac due to alleged sex discrimination in athletics, in part because standing was questionable and in part because, as enrolled students, the class representatives had not suffered the same injury as females who were not enrolled at Quinnipiac. Id. at *5.

In *Portz*, members of St. Cloud State University's ("SCSU") varsity women's tennis and Nordic skiing teams moved for certification of a class defined as:

> All present and future St. Cloud State University female students who participate, seek to participate, or have been deterred from participating in intercollegiate

6

1   athletics at St. Cloud State University.

2   _Portz_, 297 F. Supp. 3d at 942. The court found—as the _Biediger_ court had—that the inclusion of

3   future students in the class was not improper, id. at 943, but that the class was overbroad because

4   it included student-athletes who had been "effectively accommodated by SCSU's athletic

5   programming." Id. at 942. Thus, the court redefined the class as follows:

>   All present, prospective, and future female students at St. Cloud State University
>   who _are harmed by_ and want to end St. Cloud State University's sex discrimination
>   in: (1) the allocation of athletic participation opportunities; (2) the allocation of
>   athletic financial assistance; and (3) the allocation of benefits provided to varsity
>   athletes.

9   Id. at 943 (emphasis added).

10          Finally, in _Bryant_, ten members of the women's club ice hockey team at Colgate

11  University ("Colgate") sought to certify a class defined as:

>   … [A]ll present and future Colgate University women students and potential
>   students who participate, seek to participate, and/or are deterred from participating
>   in Colgate's intercollegiate athletics program.

14  _Bryant_, 1996 WL 328446 at *1. The court found that that "the proposed class [was] not an

15  appropriate class for certification" because it improperly included student athletes "whose interests

16  and abilities [were] satisfied by Colgate's [existing] slate of women's varsity teams." Id. at *6.

17  Based on this finding, the court redefined the class as "all present and future female students of

18  Colgate University who are interested in and able to play varsity ice hockey, but are unable to do

19  because it is not a women's varsity sport." Id.

20          Plaintiffs argue that the class definition in _Portz_ is improper because it creates a "fail safe"

21  class "defined to include only those individuals who were injured by the allegedly unlawful

22  conduct." Doc. No. 90 at 4:8-12 (quoting Olean, 31 F.4th at 669). The Court takes Plaintiffs' point

23  with respect to the "are harmed by" language, but _Portz_—as well as _Biediger_ and _Bryant_—

24  nonetheless underscore that "a class must be defined in such a way that anyone within it would

25  have standing." Gonzales v. Comcast Corp., 2012 WL 10621, at *7 (E.D. Cal. Jan. 3, 2012), report

26  and recommendation adopted, 2012 WL 217708 (E.D. Cal. Jan. 23, 2012) (collecting cases).[3]

27  _____

28  [3] .See, e.g., Dukes, 564 U.S. at 365 (acknowledging the need to exclude putative class members seeking injunctive
    relief who were no longer employed by Wal–Mart because those absent class members "lack[ed] standing to seek

As noted above, Plaintiffs allege two claims: (i) an effective accommodation claim; and (ii) an unequal treatment claim. " … [T]o establish standing under a Title IX effective accommodation claim, a party need [] demonstrate that she is 'able and ready' to compete for a position on the unfielded team." Pederson v. Louisiana State Univ., 213 F.3d 858, 871 (5th Cir. 2000); see also Beal v. Midlothian Indep. Sch. Dist. 070908 of Ellis Cnty., 2002 WL 1033085, at *3 (N.D. Tex. May 21, 2002) (finding plaintiffs lacked standing for an effective accommodation claim under Title IX because, *inter alia*, they failed to allege that they were "able and ready" to participate in an athletic opportunity that was not offered by the defendant academic institution). And to have standing for an unequal treatment claim, a plaintiff must show that they experienced unequal treatment while participating in athletics or, perhaps, that they "able and ready" to pursue participation in athletics at the defendant institution but were deterred from doing so "because of perceived unequal treatment of female [] athletes." See Pederson, 213 F.3d 872 (allowing for the possibility that "a female student who was deterred from competing for a spot on an existing varsity team because of perceived unequal treatment of female varsity athletes" may have standing for an equal treatment claim under Title IX).[4]

The Court reviewed the decisions Plaintiffs cite in opposition to Defendants' contention that the proposed class is overbroad, including *Cohen v. Brown University*, 991 F.2d 888 (1st Cir. 1993), *Favia v. Indiana University of Pennsylvania*, 7 F.3d 332 (3rd Cir. 1993), and *Haffer v. Temple University*, 678 F. Supp. 517 (E.D. Pa. 1987). See Doc. No. 90 at 3:6-18. The classes in

---

injunctive or declaratory relief against [Wal–Mart's current] employment practices."); Amchem Prods., Inc., v. Windsor, 521 U.S. 591, 612–13 (1997) (instructing district courts to be "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints."); Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir.2006) ("[N]o class may be certified that contains members lacking Article III standing."); Burdick v. Union Sec. Ins. Co., 2009 WL 4798873, at *4 (C.D. Cal., Dec. 9, 2009) ("absent class members lacking justiciable claims under Article III should be excised from the case").

[4] The parties have not briefed the question of whether mere deterrence can provide standing for an equal treatment claim. The Court allows for that possibility for purposes of this motion, subject to revisiting the issue (and potentially re-scoping the equal treatment class) as the case progresses. See Fed.R.Civ.P. 23(c)(1)(C) ("An order that giants or denies class certification may be altered or amended before final judgment."); see also Wang v. Chinese Daily News, Inc., 737 F.3d 538, 546 (9th Cir. 2013) ("Rule 23 provides district courts with broad authority at various stages in the litigation to revisit class certification determinations and to redefine or decertify classes as appropriate."); Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001) ("Where appropriate, the district court may redefine the class ... may excise portions of a plaintiffs class allegations, and may even decertify the class.").

1    *Favia* and *Haffer*, however, are limited to enrolled students (whether current or future) who were

2    deterred not from enrolling at the educational institutions in question, but from participating in

3    intercollegiate athletics after they had enrolled. See *Favia*, 7 F.3d at 335–36 (class of "all present

4    and future women students at [Indiana University of Pennsylvania] who participate, seek to

5    participate, or are deterred from participating in intercollegiate athletics at the University");

6    *Haffer*, 678 F. Supp. at 521 (class of "all current women students at Temple University who

7    participate, or who are or have been deterred from participating because of sex discrimination in

8    Temple's intercollegiate athletic program."). Thus, the Court does not read either of these cases to

9    justify including mere "potential" students in the class at issue here.

10          *Cohen*, for its part, differs from *Favia* and *Haffer*—and appears to favor Plaintiffs'

11   proposed class definition—in that it allows for inclusion of "potential students," defining the class

12   as "all present and future Brown University women students and potential students who

13   participate, seek to participate, and/or are deterred from participating in intercollegiate athletics

14   funded by Brown." See *Cohen*, 991 F.2d at 893. The decision cited by Plaintiffs, however, does

15   not explain why it was deemed proper to include "potential students" in the class. In the Court's

16   view, the amorphous "potential students" category not only fails to account for the "able and

17   ready" standing requirement for Title IX claims, but also fails to satisfy baseline Article III

18   standing requirements in that it comprises persons whose connections with a given academic

19   institution are too "conjectural or hypothetical" to allow a finding of concrete harm (whether

20   actual or imminent) due to alleged sex discrimination by a defendant institution. See Lujan v.

21   Defenders of Wildlife, 504 U.S. 555, 560 (1992) (for an injury to satisfy Article III, it "must be

22   concrete and particularized and actual or imminent, not conjectural or hypothetical"), see also

23   South Carolina v. United States, 912 F.3d 720, 731 (4th Cir. 2019) (finding plaintiff lacked Article

24   III standing where claims for injunctive relief "rest[ed] upon a highly attenuated chain of

25   possibilities" (quoted source and internal quotation marks omitted).

26          Further, the Court finds that the term "intercollegiate" in Plaintiffs' proposed class

27   definition is ambiguous in that it could conceivably refer to club as well as varsity athletics. The

28   Court notes that the class allegations in the Complaint refer to "varsity intercollegiate" athletics,

see Doc. No. 59 ¶¶ 1, 232, 235, 238, 242, 247, 252, 254, as does the prayer for relief. Id. at 45:21-46:8. Further, the proposed class representatives (and the other named Plaintiffs) are former members of a varsity team, and the Court sees no basis to infer that the allegations in the Complaint extend to club sports or that class representatives have standing to bring claims on behalf of participants in club sports. See id. ¶ 247 ("… Defendants have acted or refused to act on grounds generally applicable to the class—denying female student-athletes at Fresno State equal opportunity to participate in varsity intercollegiate athletics, including, but not limited to, women's varsity lacrosse …."). The class, therefore, must be limited to "varsity intercollegiate athletics."

Finally, the Court sees no single class that can encompass both the effective accommodation claim and the equal treatment claim without running afoul of standing requirements. See Denney, 443 F.3d at 264 ("[N]o class may be certified that contains members lacking Article III standing.") The Court therefore finds that each claim requires its own class definition. As to the equal treatment claim, the Court will define the class as current and future female Fresno State students who: (i) participate or have participated in women's varsity intercollegiate athletics at Fresno State; and / or (ii) are able and ready to participate in women's varsity intercollegiate athletics at Fresno State but have been deterred from doing so by the treatment received by female varsity intercollegiate student-athletes at Fresno State. And as to the effective accommodation claim, the Court will define the class as current and future female Fresno State students who: (i) have lost membership on a women's varsity intercollegiate athletics team at Fresno State; (ii) have sought but not achieved membership on a women's varsity intercollegiate athletics team at Fresno State; and / or (iii) are able and ready to seek membership on a women's varsity intercollegiate athletics team at Fresno State but have not done so due to a perceived lack of opportunity.

**B.    Rule 23(a) Factors**

The Court will now address the four Rule 23(a) factors as to each of the classes identified above. See Fed.R.Civ.P. 23(a).

**1.    Numerosity**

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members

1   is impracticable." Fed.R.Civ.P. 23(a)(1). "The standard does not require that joinder be

2   impossible, only that joinder would result in litigation hardship or inconvenience." Brust v.

3   Regents of the Univ. of California, 2008 WL 11512299, at *4 (E.D. Cal. Oct. 24, 2008) (citations

4   omitted). There is no strict numerical test for determining when a class is so numerous that joinder

5   is impracticable, In re Beer Distribution Antitrust Litigation, 188 F.R.D. 557, 561 (N.D. Cal.

6   1999), but generally speaking, 40 or so individuals in a proposed class is sufficient to satisfy the

7   numerosity requirement. See, e.g., Ries v. Ariz. Beverages USA LLC, 287 F.R.D. 523, 536 (N.D.

8   Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general

9   matter, a class greater than forty often satisfies the requirement, while one less than twenty-one

10  does not." (citing Californians for Disability Rights, Inc. v. Cal. Dep't of Transp., 249 F.R.D. 334,

11  346 (N.D.Cal.2008)). Further, "where declaratory or injunctive relief is sought, the numerosity

12  requirement may be relaxed 'so that even speculative or conclusory allegations regarding

13  numerosity are sufficient to permit class certification.' " Brust, 2008 WL 11512299 at *4 (quoting

14  5 Moore's Federal Practice § 23.22[3][b] (3d Ed. Supp. 2008) and citing Goodnight v. Shalala,

15  837 F. Supp. 1564, 1582 (D. Utah 1994)); see also A. B. v. Hawaii State Dep't of Educ., 30 F.4th

16  828, 837 (9th Cir. 2022) (the "practical value" of joinder is diminished where "the class seeks only

17  prospective injunctive and declaratory relief").

18      Plaintiffs assert that "Fresno State has over 250 women participating in its intercollegiate

19  athletic program annually—some different and some the same each year" and that "class size is

20  even larger when all prospective, future, and deterred female students are considered." Doc. No.

21  88-1 at 17:20-27. Further, Plaintiffs contend that joinder is impracticable because the identities of

22  many class members are not known, id. at 18:5-18, due to the "inherently fluid nature" of the class

23  (which changes with quits, transfers, graduation, new enrollment and such). Id. at 19:11-16.

24  Defendants argue that Plaintiffs have failed to meet their burden to show numerosity because they

25  improperly rely on "vague and conclusory generalizations about the size of the proposed class"

26  Doc. No. 89 at 14:11-20, 15:10-12, and that Plaintiffs fail to "come forward with statistics and

27  surveys regarding high school athletic participation and interest, surveys of current university

28  students regarding athletic interest, and data regarding athletic participation." Id. 14:25-27.

The class definitions set forth above do not allow for "potential students," but they include future female students, as well as female students currently enrolled at Fresno State, for purposes of both the effective accommodation claim and the equal treatment claim. As to the equal treatment claim, Plaintiffs show that there are more than 250 female student-athletes participating in varsity intercollegiate athletics at Fresno State in any given year, all of whom could be subjected to some form of unequal treatment in violation of Title IX. See Doc. No. 88-2. And as to the effective accommodation claim, it appears that Fresno State has approximately 10,000 to 11,000 female students enrolled at any given time, see Doc. No. 2-1 at 16:3-16, and that 70 or so positions on women's varsity intercollegiate teams are filled each year. See Doc. No. at 88-1 at 19:11-27. Even assuming a high percentage of aspiring student-athletes are accommodated by Fresno State's athletic program, it is hard to imagine that joinder of "able and ready" female students who encounter actionable barriers to participation in varsity intercollegiate athletics each year would be practicable. Indeed, as Plaintiffs point out, the discontinued lacrosse team alone could account for a large percentage of the class members required to satisfy Rule 23(a)(1). See Doc. No. 90 at 6:10-13 (stating that the lacrosse team carried 22 roster spots). The Court therefore finds that the numerosity requirement is satisfied as to both the equal treatment claim and the effective accommodation claim.

### 2. Commonality

Rule 23(a)(2) provides that a class action can be maintained only where "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). A common issue is one where "the same evidence will suffice for each member to make a prima facie showing," Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1048 (2016) (citation omitted); see also In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006) (a common issue is one that is "susceptible to generalized, class-wide proof"), whereas an individual issue is one where "members of a proposed class will need to present evidence that varies from member to member." Tyson Foods, 136 S. Ct. at 1045 (citation and internal quotation marks omitted).

A single common question of fact or law can suffice to satisfy Rule 23(a)(2), see Dukes, 564 U.S. at 359, but the party seeking class certification must show that determination of that

question will resolve an issue "central to the validity" of the claims of all members of a putative

class "in one stroke." Id. at 350, 359; see also Wang, 737 F.3d at 544 (remanding for the district

court to "determine whether the claims of the proposed class depend upon a common contention ...

of such a nature that it is capable of classwide resolution"). At bottom, "[w]hat matters to class

certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity

of a class-wide proceeding to generate common *answers* apt to drive the resolution of the

litigation." Dukes, 564 U.S. at 350 (citation and internal quotation marks omitted, emphasis

original).

Plaintiffs contend that "the claims of all proposed class members include the same legal

questions: whether Fresno State engages in sex discrimination and violates Titles IX in (1) the

allocation of athletic participation opportunities, and (2) the allocation of benefits to varsity

athletes." Doc. No. 88-1 at 22:13-18. Further, Plaintiffs contend that the claims involve common

questions of fact, including, for example, the number of athletic participation opportunities

available to male and female students and differences in the benefits received by male student-

athletes and female student-athletes (with respect to equipment, coaching, facilities and such) at

Fresno State. Id. at 22:22-23:9.

Defendants, for their part, argue that such questions cannot be resolved on a class-wide

basis because coaches "set[] roster sizes" and make "individualized, sport-specific decisions about

allocation of resources" based on their respective "preferences." Doc. No. 89 at 16:25-17:3. The

operating model of the athletic department, however, is irrelevant. Even assuming, as Defendants

claim, that substantially all relevant decision-making is made by coaches at the team level,

participation opportunities and resource allocation at Fresno State must square with Title IX in the

aggregate. See Anders v. California State Univ., Fresno, 2021 WL 3115867, at *3 (E.D. Cal. July

22, 2021) (Ishii, J.) (stating 34 C.F.R. § 106.41(c)(1) requires "equal opportunity in athletics" and

that 34 C.F.R. § 106.41(c)(2)-(10) collectively require "equivalence in the availability, quality and

kinds of other athletic benefits and opportunities provided male and female athletes" (quoting

Mansourian v. Regents of Univ. of California, 602 F.3d 957, 964 (9th Cir. 2010) (internal

quotation marks omitted)). Resolution of threshold questions as to the allocation of benefits and

opportunities between male student-athletes and female student-athletes at the athletic department level are of general applicability to the class because they go directly to determining whether there has been a Title IX violation with respect to effective accommodation, equal treatment or both. The commonality requirement is therefore satisfied as to the effective accommodation claim and as to the equal treatment claim. See Brust, 2008 WL 11512299 at *5.

### 3.    Typicality

Under Rule 23(a)(3), class certification is proper only where "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon, 976 F.2d at 508 (citation omitted). Similarly, "typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct." 1 Newberg on Class Actions § 3:29 (5th ed.) (citations omitted).

The Ninth Circuit's test of typicality is (1) "whether other members have the same or similar injury"; (2) "whether the action is based on conduct which is not unique to the named plaintiffs"; and (3) "whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover North America, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotation marks omitted). The representative plaintiff's claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members," Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998), such that the claims of the putative class are "fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 156 (internal quotation marks omitted).

Plaintiffs argue that they "and all members of the proposed class are subject to or soon will be subjected to and harmed by the same systemic, ongoing sex-discrimination in Fresno State's athletic department," and that all members of the proposed class, including Plaintiffs themselves, have claims "based upon the same legal theories and the same actions of the Defendants," in that "[a]ll want to participate in varsity intercollegiate athletics and receive the same [] benefits that the

1   men's teams already receive." Doc. No. 88 at 24:19-25:4.

2          Defendants argue that the proposed class representatives—Anders and Walburger—are

3   differentiated from the rest of the class because they are "former members of Fresno State's now-

4   discontinued lacrosse team, seeking reinstatement of that team." Doc. No. 89 at 17:12-14. Further,

5   Defendants contend that Anders is differentiated in that she does not attribute the mistreatment of

6   the women's lacrosse team to sex discrimination, and that Walburger is differentiated because her

7   goal is to maintain her scholarship and she does not purport to have experienced unequal treatment

8   herself. Id. at 89 at 17:14-24. Finally, Defendants argue that Anders and Walburger lack standing

9   because, with the termination of lacrosse, they are no longer varsity student-athletes at Fresno

10  State and that the other named Plaintiffs lack standing because they are no longer enrolled at

11  Fresno State. Id. at 17:25-18:8.

12         In other words, Defendants make two arguments: a differentiation argument and a standing

13  argument. As to the differentiation argument, the record shows that Anders and Walburger assert

14  that they have been discriminated against with respect to both participation opportunities and

15  benefits, which puts them squarely in alignment with class members who have effective

16  accommodation and equal treatment claims. See Doc. Nos. 88-3 & 88-4. Further, Anders and

17  Walburger can show not only that they participated in varsity intercollegiate athletics and lost

18  membership on a varsity intercollegiate team, but also that they are able and ready to participate in

19  varsity intercollegiate athletics at Fresno State should the opportunity to do so arise. One wrinkle

20  is that it does not appear that either Anders or Walburger can necessarily show that they have been

21  deterred from pursuing participation due to unequal treatment of female varsity student-athletes

22  with respect to benefits. Even assuming that is the case, however, they have suffered the same

23  alleged injury as deterred students (a discriminatory barrier to participation in varsity

24  intercollegiate athletics) due to the same alleged course of conduct (discriminatory imbalance in

25  resource allocation) on the part of Fresno State.[5] See Wolin, 617 F.3d at 1175. Finally,

26  Defendants' arguments as to the proposed class representatives' reasons for participating in this

27  _____

28  [5] Again, the Court allows for the possibility that deterrence can provide a basis for an equal treatment claim but does not decide that question here.

15

1   litigation go not to typicality but to adequacy, which is addressed below. Thus, the Court finds that

2   the claims of the proposed class representatives are "reasonably co-extensive with those of absent

3   class members" with respect to each of the claims in this case. Hanlon, 150 F.3d at 1020.

4         As to standing, Defendants rely on decisions in *Pederson v. Louisiana State University* and

5   *Boucher v. Syracuse University.* See Doc. No. 89 at 18:18-25. In *Pederson*, members of the

6   women's club soccer team at Louisiana State University ("LSU") brought claims involving

7   alleged Title IX violations at the varsity level. Pederson, 213 F.3d at 870. The court addressed

8   standing for effective accommodation claims and equal treatment claims separately. As to

9   effective accommodation claims, the court held "that to establish standing under a Title IX

10  effective accommodation claim, a party need only demonstrate that she is 'able and ready' to

11  compete for a position on the unfielded team," id. at 871, and implicitly recognized, through its

12  analysis of mootness, that former student-athletes who have lost their team due to an alleged Title

13  IX violation have standing to seek injunctive relief if they remain eligible for participation in

14  athletics at the defendant institution. See id. at 874. As to equal treatment claims, the court found a

15  lack of standing because no named plaintiff had been a member of varsity (as opposed to club)

16  team at LSU (and the named plaintiffs apparently did not advance the theory that class members

17  had been deterred from pursuing varsity athletics due to the treatment received by female athletes).

18  See id., 213 F.3d at 872 n.13. *Boucher*, for its part, did not address standing for effective

19  accommodation claims but found, as the *Pederson* court did, that club athletes lacked standing for

20  a claim based on the treatment of varsity athletes because, as non-varsity athletes, they had not

21  suffered the requisite injury-in-fact. See Boucher v. Syracuse Univ., 164 F.3d 113, 116, 120 (2d

22  Cir. 1999) ("Boucher I").

23        In short, *Pederson* indicates that a plaintiff has standing for injunctive relief on an effective

24  accommodation claim if that plaintiff remains eligible to participate in the relevant tier of athletics

25  at the defendant institution, and both *Pederson* and *Boucher* found lack of standing for equal

26  treatment claims because the plaintiffs had never been varsity athletes (not because they no longer

27  were varsity athletes). Here, Anders and Walburger once played at the varsity level and therefore

28  were subject to unequal treatment as alleged in the SAC. Moreover, they both remain eligible to

1   participate in varsity intercollegiate athletics at Fresno State. <u>See</u> Doc. No. 88-3 at 3 (Anders is

2   enrolled at Fresno State and had three years of eligibility remaining when the lacrosse team was

3   eliminated); Doc. No. 88-4 at 3 (Walburger is currently enrolled at Fresno State and has two years

4   of eligibility remaining). Defendants' arguments as to standing are, therefore, without merit and

5   the Court finds that the typicality requirement is satisfied.[6]

6           **4.      Adequacy**

7           Rule 23(a)(4) states "the representative parties will fairly and adequately protect the

8   interests of the class." Fed.R.Civ.P. 23(a)(4). This requires that "[p]laintiffs are represented by

9   qualified and competent counsel" and that "the proposed representative [p]laintiffs do not have

10  conflicts of interest with the proposed class." <u>Dukes v. Wal-Mart, Inc.</u>, 509 F.3d 1168, 1175 (9th

11  Cir. 2007), <u>on reh'g en banc sub nom.</u> <u>Dukes v. Wal-Mart Stores, Inc.</u>, 603 F.3d 571 (9th Cir.

12  2010), <u>rev'd on other grounds</u>, 564 U.S. 338 (2011). Conflicts between representative parties and

13  the proposed class undermine the indispensable "structural assurance of fair and adequate

14  representation for the diverse groups and individuals affected" by the class-action litigation or

15  settlement. <u>Amchem</u>, 521 U.S. at 627. This concern has constitutional underpinnings because "the

16  Due Process Clause ... requires that the named plaintiff at all times adequately represent the

17  interests of the absent class members." <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 812 (1985);

18  <u>see</u> <u>Hanlon</u>, 150 F.3d at 1020 ("As the Ninth Circuit has stated, serious conflicts of interest can

19  impair adequate representation by the named plaintiffs, yet leave absent class members bound to

20  the final judgment, thereby violating due process." (citing <u>Hansberry v. Lee</u>, 311 U.S. 32, 42-43

21  (1940)).

22          Plaintiffs contend the proposed class representatives will fairly and adequately represent

23  the interests of the proposed class, and that they do not have interests antagonistic to the interests

24  of the members of the proposed class because the proposed class representatives "want to compel

25  Fresno State to increase participation opportunities for female students until the school reaches

26

27  _____

    [6] The Court does not address the standing of named Plaintiffs other than the proposed class representatives since that

28  issue has not been fully briefed and is not necessary to deciding this motion.

1  equity under Title IX—even if lacrosse is not reinstated." Doc. No. 90 at 11:8-23. Defendants

2  argue that Plaintiffs' proffered class representatives cannot adequately represent the proposed

3  class because they are both "former members of the lacrosse team, seeking reinstatement of the

4  lacrosse team." Doc. No. 89 at 19:5-6. According to Defendants, this conflicts with the interests of

5  other class members who would benefit more if resources were directed to other sports and who

6  could be harmed by remedies favoring the lacrosse team. Id. at 19:8-12.

7          "In the arena of Title IX athletics litigation, courts have taken divergent views on the issue

8  of intra-class conflicts among collegiate sports teams." Cohen v. Brown Univ., 16 F.4th 935, 949

9  (1st Cir. 2021), cert. denied sub nom. Walsh v. Cohen, 142 S. Ct. 2667 (2022). In Robb v. Lock

10  Haven University of Pennsylvania, for example, the court proposed separating members of the

11  women's varsity field hockey team, members of the women's varsity swim team and members of

12  the women's club rugby team into separate subclasses to reflect their disparate interests with

13  respect to team status and the allocation of limited resources. 2019 WL 2005636, at *13 (M.D. Pa.

14  May 7, 2019). And in Bryant, similarly, the court found that interests of the women's club ice

15  hockey team "would be antagonistic to those of other interested and able athletes who might desire

16  elevation of their own sport" and that "[s]uch circumstances could render plaintiffs' representation

17  inadequate under Rule 23(a)." 1996 WL 328446, at *6 (N.D.N.Y. June 11, 1996); see also S.G. by

18  & through Gordon v. Jordan Sch. Dist., 2018 WL 4899098, at *2 (D. Utah Oct. 9, 2018) (splitting

19  females seeking a football team and females seeking more athletic opportunities into separate

20  subclasses to avoid conflicts); Miller v. Univ. of Cincinnati, 241 F.R.D. 285, 290 (S.D. Ohio

21  2006) (finding "inherent conflict" between members of women's rowing team and other female

22  student-athletes because Title IX compliance could be achieved by "bestowing" resources

23  allocated to women's rowing on "other women's varsity sports").

24          In Portz, on the other hand, the court rejected defendant SCSU's contention that the named

25  plaintiffs—members of SCSU's varsity women's tennis and Nordic skiing teams—were

26  "antagonistic toward the class members who participate on different women's sports teams" on

27  findings that such conflict was "merely speculative" and the named plaintiffs had expressly

28  affirmed their intention to provide representation to all female athletes. Portz, 297 F. Supp. 3d at

947. And in *Foltz v. Delaware State University*, similarly, the court found that members of the women's equestrian team were adequate to represent a class encompassing multiple sports because the conflicts identified by the defendant were "merely … speculative, potential conflicts" and several named plaintiffs had "testified expressly that they [were] motivated to obtain equal opportunities for all female students at [Delaware State University], not just to preserve the equestrian team." 269 F.R.D. 419, 424-25 (D. Del. 2010).

Here, the proposed class representatives—Anders and Walburger—filed declarations in support of the class certification motion stating, in pertinent part, that they are bringing this action not just for the lacrosse team but to secure injunctive relief on behalf of all female athletes at Fresno State. Doc. No. 88-3 ¶¶ 6-8; Doc. No. 88-4 ¶¶ 6-8. Further, the Court notes that the SAC seeks an injunction barring Fresno State from eliminating any women's varsity intercollegiate athletic opportunities until it achieves Title IX compliance. Doc. No. 59 at 34:25-35:6. While the SAC contains numerous allegations, however, as to wrongs allegedly inflicted on the lacrosse team, see Doc. No. 59 ¶¶ 1-3, 7-9, 15-25, 206-210, there are no comparable allegations in the SAC as to other women's teams. Similarly, the five declarations filed by named Plaintiffs in support of their preliminary injunction motion—which is framed as a motion to bar Fresno State from eliminating the women's lacrosse team or "any other women's sport during the pendency of this case"—speak almost exclusively (with only the most minute exceptions) to the named Plaintiffs' interests as members of the women's lacrosse team, with no reference of consequence to the implications of alleged Title IX violations for other female students at Fresno State. See Doc. Nos. 2-3 through 2-7. And finally, the expert report filed in support of the preliminary injunction motion expressly takes aim at other women's teams at Fresno State, asserting, for example, that the equestrian team, the cross country team and the track team have inflated rosters with " 'ghost' participants" who are "not really [] legitimate members" of the teams. Doc. No. 2-9 at 36-38, 42, 43.

Title IX actions seeking injunctive relief are unique in that "institutions are only obligated to accommodate athletic interests and abilities until the 'goal of gender parity between its athletic program and its student body' is attained." Boucher v. Syracuse Univ., 1996 WL 328441, at *4

1  (N.D.N.Y. June 12, 1996), vacated in different part, 164 F.3d 113 (2d Cir. 1999) ("Boucher II");

2  see also Pederson, 912 F. Supp. at 905. "[R]esources available for intercollegiate athletic programs

3  are finite," Bryant, 1996 WL 328446 at *6, and "hence [Title IX] compliance might well be

4  achieved by the elevation of one sport and not the other." Boucher I, 164 F.3d at 116. The Court

5  does not doubt that the proposed class representatives have the intentions they claim in bringing

6  this action, but as plead and developed to date, this case is fundamentally about women's lacrosse

7  and there are discernable conflicts—reflected in filings—between the interests of the proposed

8  class representatives as former members of the women's varsity lacrosse team and other members

9  of Fresno State's female student population who are not represented in this action as currently

10  configured. The Court therefore finds that the proposed class representatives do not satisfy Rule

11  23(a)(4) as to either the effective accommodation claim or the equal treatment claim.[7]

12  ## CONCLUSION

13  As set forth above, the Court finds that the numerosity, typicality and commonality

14  requirements of Rule 23(a) are satisfied as to the classes defined by the Court in this order. The

15  Court further finds, however, that the proposed class representatives do not satisfy the Rule

16  23(a)(4) adequacy requirement because there are evidently conflicts between the interests of the

17  class representatives, as former members of the women's varsity lacrosse team, and current and

18  future female students at Fresno State who were not members of the women's varsity lacrosse

19  team and who are not able and ready to play lacrosse. Similarly, the record plainly indicates that

20  the principal purpose this action is to protect (or restore) women's varsity lacrosse and that other

21  considerations are secondary to that.

22  The Court will therefore deny the motion for class certification without prejudice to

23  another motion for certification consistent with the findings in this order.

24  //

25  //

26

27

28  [7] In light of this finding, the Court will not address at this time whether Baily & Glasser, LLP can provide adequate representation as class counsel. See Fed.R.Civ.P. 23(g).

## **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' motion for class certification (Doc. No. 88) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   August 16, 2022

_____

SENIOR  DISTRICT  JUDGE