# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR ANDERS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CALIFORNIA STATE UNIVERSITY, FRESNO, et al.<br><br>　　　　Defendants. | CASE: 1:21-cv-179-AWI-BAM<br><br>**ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND, IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION**<br><br>(Doc. No. 94) |

Plaintiffs bring a renewed motion for class certification and in the alternative, motion for reconsideration. Doc. No. 94-1. The motion has been fully briefed and deemed suitable for decision without oral argument pursuant to Local Rule 230(g). For the reasons set forth below, the motion will be denied.

## BACKGROUND

Plaintiffs bring this putative class action against California State University, Fresno ("Fresno State") for alleged violations of Title IX of the Education Amendments of 1972 in connection with women's athletics. See Doc. No. 59. The operative pleading is the Second Amended Complaint ("SAC"), which the Court has found to state an effective accommodation claim and an equal treatment claim.[1] Doc. No. 59. The contours of these claims—as wells as facts and allegations relevant to each claim—are addressed at length in other orders, as are relevant

---

[1] The financial aid claim set forth in the SAC was dismissed with prejudice on October 29, 2021. See Doc. No. 73.

aspects of Title IX law and law governing class certification.[2]

On February 25, 2022, Plaintiffs filed a motion proposing two former members of Fresno State's varsity women's lacrosse team—Taylor Anders and Courtney Walburger—as class representatives and seeking certification of the following class for both the effective accommodation claim and the equal treatment claim:

> All present and future women students and potential students at Fresno State who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics there.

Doc. No. 88-1 at 12:26-28.

On August 16, 2022, the Court issued an order finding that the proposed class was too broad, and positing, for purposes of analysis, a separate class for each claim, calibrated to reflect applicable law. For the equal treatment claim, the Court framed the class as:

> [C]urrent and future female Fresno State students who: (i) participate or have participated in women's varsity intercollegiate athletics at Fresno State; and / or (ii) are able and ready to participate in women's varsity intercollegiate athletics at Fresno State but have been deterred from doing so by the treatment received by female varsity intercollegiate student-athletes at Fresno State.

Doc. No. 93 at 10:9-23. And for the effective accommodation claim, the Court framed the class as:

> [C]urrent and future female Fresno State students who: (i) have lost membership on a women's varsity intercollegiate athletics team at Fresno State; (ii) have sought but not achieved membership on a women's varsity intercollegiate athletics team at Fresno State; and / or (iii) are able and ready to seek membership on a women's varsity intercollegiate athletics team at Fresno State but have not done so due to a perceived lack of opportunity.

Id. at 10:17-23.[3] Further, the Court denied class certification under Rule 23(a)(4) of the Federal Rules of Civil Procedure on a finding that there was a disqualifying conflict between the proposed class representatives, as former members of Fresno State's varsity women's lacrosse team, and putative class members who do not play (and are not "able and ready" to play) lacrosse. Id. at 20:4-11; 20:13-21 (stating that "there are evidently conflicts between the interests of the class

---

[2] See, e.g., Doc. Nos. 35, 57, 58, 73 & 93.

[3] Fresno State disagrees with aspects of the class formulations used by the Court in deciding Plaintiffs' initial motion for class certification. See Doc. No. 95 at 14:5. That issue is not addressed in this order but Fresno State may raise it again later in these proceedings to the extent doing so is warranted by circumstances and otherwise permissible.

2

representatives, as former members of the women's varsity lacrosse team, and current and future female students at Fresno State who were not members of the women's varsity lacrosse team and who are not able and ready to play lacrosse").

On August 30, 2022, Plaintiffs filed the instant motion, styled as a renewed motion for class certification and in the alternative, a motion for reconsideration of the Court's August 16, 2022 order denying class certification. Doc. No. 94; Doc. No. 94-1 at 8:12-14.

## PLAINTIFFS' MOTION

*Plaintiffs' Opening Memorandum*

Plaintiffs adopt the class definitions fashioned and used by the Court in deciding Plaintiffs' first class-certification motion, but purport, in this motion, "to supplement and correct the record, show that there are no conflicts between the proposed class representatives and the class members, and demonstrate that the proposed class representatives fully satisfy the requirements of Rule 23(a)(4)." Doc. No. 94-1 at 6:15-19. Plaintiffs argue that "both proposed class representatives have now submitted supplemental declarations" stating that "the principal purpose of this case" is to ensure Title IX compliance at Fresno State ("not to protect or restore women's varsity lacrosse") and that both Anders and Walburger testified in deposition that "they agreed to (and did) make an offer to settle this case by having Fresno State add a women's varsity team *other than women's lacrosse*." Id. at 7:3-6 (emphasis original). Further, Plaintiffs argue that "under established Ninth Circuit law … any conflicts between the proposed class representatives and the class members [in this case] should properly be viewed as speculative" and that "the conflict argument" underlying the Court's August 16, 2022 order "has been found to be particularly unpersuasive when the named plaintiffs affirm their commitment to representing the class as a whole, as the proposed class representatives have done here." Id. at 7:17-8:7. Finally, Plaintiffs request class certification solely for the purpose of determining liability in the event the Court finds (despite the newly supplemented, corrected and clarified record) that there would be a non-speculative conflict in the remedy phase of this litigation between the proposed class representatives and non-lacrosse class members. Id. at 8 n.1.

//

3

*Defendant's Opposition*

Fresno State argues that the motion at bar is properly construed as a motion for reconsideration (not as a "renewed motion" for class certification) because it makes the same arguments as Plaintiffs' first motion for class certification and that Plaintiffs have failed to show that reconsideration is warranted under Rule 60(b).[4] Doc. No. 95 at 5:2-5; 11:24-12:26. Further, Fresno State argues that the class definitions posited by the Court (in deciding the first motion) and adopted by Plaintiffs (for purposes of this motion) are "overly broad," id. at 5:9; that the supplemental declarations submitted by the proposed class representatives are "self-serving," id. at 5:8-12, 8:13-15; and that neither Anders nor Walburger can serve as an adequate class representative because they have both "testified to their clear preference and goal of supporting lacrosse above other women's sports and have admitted during their deposition s that they have no knowledge of how any other women's team (or most men's teams) were treated in terms of athletic benefits at Fresno State." Id. at 5:14-18. Finally, Fresno State argues that certification should not be granted solely as to liability because certification of a so-called "issues class" requires satisfaction of all Rule 23(a) factors and the Court cannot properly ignore a disqualifying conflict "found to exist at the class certification stage." Id. at 22:11-26.

*Plaintiffs' Reply*

In addition to reiterating various arguments with respect to conflict and such, Plaintiffs argue on reply that this motion should not be construed as a motion for reconsideration because their first motion for class certification was denied without prejudice. Doc. No. 97 at 20:10-21:2. Further, Plaintiffs argue that this motion should be granted based on the "clarified and supplemented record" regardless of how it is classified because Rule 60(b)(6) allows reconsideration for any reason justifying relief. Id. at 21:3-8.

## DISCUSSION

The Court will first address the parties' arguments with respect to the proper classification of this motion and the merits of the motion under standards governing reconsideration in the Ninth

---

[4] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

Circuit. The Court will then address the merits of the motion assuming, for the sake of analysis, that it was properly filed pursuant to leave of Court in the August 16, 2022 order on Plaintiffs' initial motion for class certification.

### A.     Motion for Reconsideration

As set forth above, the Court denied Plaintiffs' motion for class certification "without prejudice to another motion for certification consistent with the findings in [the Court's August 16, 2022] order." Doc. No. 93 at 20:13-23. The August 16, 2022 order states that "the proposed class representatives do not satisfy the Rule 23(a)(4) adequacy requirement because there are evidently conflicts between the interests of the class representatives, as former members of the women's varsity lacrosse team, and current and future female students at Fresno State who were not members of the women's varsity lacrosse team and who are not able and ready to play lacrosse." Id. The August 16, 2022 order also states that "as plead[ed] and developed to date, this case is fundamentally about women's lacrosse" and that "the record plainly indicates that the principal purpose this action is to protect (or restore) women's varsity lacrosse." Id. at 20:4-21.

Plaintiffs' current motion, for its part, is dedicated almost entirely to demonstrating that there is no conflict between the proposed class representatives and other prospective class members because the proposed class representatives have sworn that reinstating lacrosse is not the "principal purpose of this case" and in essence, that they will not favor women's lacrosse over other women's sports in fighting for Title IX compliance.

Plaintiffs' arguments are self-evidently contrary to—and in no way "consistent with"—the August 16, 2022 order.[5] Thus, the instant motion is not authorized by Court order and must be

---

[5] The introduction to the opening memorandum in support of this motion comprises seven paragraphs. The second of these seven paragraphs reads in its entirety as follows:

> Consistent with the Court's findings, Plaintiffs bring this motion to supplement and correct the record, show that there are no conflicts between the proposed class representatives and the class members, and demonstrate that the proposed class representatives fully satisfy the requirements of Rule 23(a)(4). After briefly reviewing the relevant facts and class claims, Plaintiffs first discuss the adequate representation issue below and then turn to Rule 23's other provisions.

Doc. No. 94-1 at 6:14-20. The first sentence in the third paragraph states: "On the adequate representation point, to make the record clear, both proposed class representatives have now submitted supplemental declarations addressing the relevant issues and the Court's concerns." Id. at 6:20-23. Paragraph five, for its

entertained, if at all, as a motion for reconsideration under Rule 60(b).[6] See Doc. No. 94-1 at 8 n.2.

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (quoted source and internal quotation marks omitted). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.' " Id. (quoting Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). Similarly, Local Rule 230(j) of the District Court for the Eastern District of California requires that a party seeking reconsideration set forth "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion" or "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j). As a general matter, a motion for reconsideration "should not be used to ask the court to

---

part, begins as follows: "The new declarations submitted by Plaintiffs and the additional evidence discussed in this brief demonstrate that the cases that concerned the Court do not apply to the facts in this case." Id. at 7:16-17. And in paragraph seven, Plaintiffs write: "After explaining that the class representatives satisfy Rule 23(a)(4), Plaintiffs adopt the class definitions in the Court's order of August 16, 2022; accept the Court's findings on Rule 23 (a)(1)-(3); and show that both the Rule 23(a)(4) class counsel adequate representation requirement and the Rule 23(b)(2) class certification requirement are met in this case." Id.

In other words, Plaintiffs purport to address "the Court's concerns" on "the adequate representation point" and "explain[]" to the Court that there are "no conflicts between the proposed class representatives and the class members," by making the "record clear" and showing that cases upon which the Court relied "do not apply to the facts in this case." Plaintiffs' assertion that the motion is "[c]onsistent with the Court's findings" in the August 16, 2022 order is sheer cheek.

[6] Plaintiffs have not taken the position that the Court can entertain this motion under Rule 23(c)(1)(C), which provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). In any event, courts have held that Rule 23(c)(1)(C) does not provide a "separate mechanism" for challenging certification orders, see, e.g., Daniel F. v. Blue Shield of California, 2015 WL 3866212, at *3 (N.D. Cal. June 22, 2015), and that motions contesting denial of class certification are properly treated as motions for reconsideration unless otherwise provided by court order. See, e.g., Stemmelin v. Matterport, Inc., 2022 WL 4843089, at *1 (N.D. Cal. Oct. 3, 2022) ("Our court of appeals has not yet ruled on a specific standard for review of serial motions for class certification, but some judges in our district have used the reconsideration standard." (collecting cases)); Williams v. Warner Music Grp. Corp., 2021 WL 7448496, at *4–5 (C.D. Cal. Dec. 14, 2021) ("In line with the majority of courts to have considered the issue, the Court applies a motion for reconsideration standard to the instant Motion."); Garcia v. Shasta Beverages, Inc., 2021 WL 1502917, at *1–2 (C.D. Cal. Feb. 25, 2021) ("a renewed motion for class certification is properly analyzed [] as one for reconsideration") Eng. v. Apple Inc, 2016 WL 1108929, at *5 (N.D. Cal. Mar. 22, 2016) ("[C]ourts in this circuit faced with motions to reconsider orders denying class certification have routinely applied the ordinary standards for reconsideration." (collecting cases)).

rethink what the court ha[s] already thought through— rightly or wrongly." U.S. v. Rezzonico, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998) (internal quotation marks and citation omitted).

Plaintiffs make no argument specific to reconsideration in their opening memorandum[7] and devote just three sentences to reconsideration in their reply memorandum, asserting in boilerplate fashion that the Court should grant reconsideration "on the basis of the current, supplemented record" because "[t]he Federal Rules broadly permit courts to grant motions for reconsideration for 'any reason … justifying relief' " under Rule 60(b)(6). Doc. No. 97 at 21:3-6 (citing Fed.R.Civ.P. 60(b)(6)).

Reconsideration is properly denied in this case for the mere reason that reconsideration is not substantively addressed in the opening memorandum. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (a court "need not consider arguments raised for the first time in a reply brief"). Further, Plaintiffs fail to show anything approximating the "highly unusual[]  circumstances" required for relief under Rule 60(b)(6), Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993) (explaining that Rule 60(b)(6) relief is used "sparingly" and requires "extraordinary circumstances"); and make no attempt at all to show that any of the more common grounds for reconsideration apply. Similarly, Plaintiffs fail to explain why the deposition testimony, settlement proposal and new declarations offered to correct, clarify and supplement the record on this motion were not offered in support of the initial class certification motion, which was not fully briefed until May 9, 2022 and which had a May 16, 2022 hearing date. See E.D. Cal. L.R. 230(j); Doc. Nos. 90 & 92. And finally, Plaintiffs do not account for the fact that the Court assumed in deciding the first motion that the proposed class representatives intend to be neutral, which is the crux of what their new evidence is apparently supposed to show. See Doc. No. 93 ("The Court does not doubt that the proposed class representatives have the intentions they claim in bringing this action ….").

In sum, Plaintiffs' motion is wholly lacking as far as reconsideration is concerned, and

---

[7] The opening motion does not even address the standard for reconsideration. See Doc. No. 94.

reconsideration will therefore be denied. The Court will now address the merits of the motion, assuming that it was somehow authorized by the Court's August 16, 2022 order.

**B.       Alternative Analysis of Plaintiffs' Motion**

As set forth above, Plaintiffs argue that class certification should be granted (using the class definitions furnished by the Court in the August 16, 2022 order) because: (i) the conflict between the proposed class representatives and putative class members who do not play lacrosse is merely "speculative"; and (ii) the fact that the proposed class representatives have effectively sworn not to favor lacrosse over other sports obviates any conflict that might otherwise exist. Further, Plaintiffs argue that, even if the Court again finds that there is a conflict between the proposed class representatives and other putative class members, class certification should at least be granted as to liability since the supposed conflict only affects remedies. The Court addresses each of these arguments in turn.[8]

   1.       Conflict Among Different Women's Sports

Plaintiffs argue that "under established Ninth Circuit law, on the current record, any conflicts between the proposed class representatives and the class members should properly be viewed as speculative" and thus do not bar class certification. Doc. No. 94-1 at 7:16-8:7.

Plaintiffs cite two decisions from within the Ninth Circuit on the question of "speculative" conflict: *A.B. by C.B. v. Hawaii State Department of Education*, 334 F.R.D. 600 (D. Haw. 2019), *rev'd and remanded sub nom. A. B. v. Hawaii State Department of Education*, 30 F.4th 828 (9th Cir. 2022) and *Cummings v. Connell*, 316 F.3d 886 (9th Cir. 2003). Doc. No. 94-1 at 7:16-27.

*A.B. by C.B.* states that conflict between "groups that play different sports within [a] class" is "speculative" in a Title IX context but provides no explanation for that finding. See A.B. by C.B., 334 F.R.D. at 611. The decision therefore sheds little, if any, light on the merits of Plaintiffs' argument.

*Cummings*, for its part, involved nonunion members who brought a class action against a labor union claiming that the union provided insufficient notice of so-called "fair share" fees—an

---

[8] For discussion of the law governing class certification as applied by the Court to this case, see Doc. No. 93 at 10-20.

8

assessment nonunion members had to pay the union for collective bargaining even though they were not themselves union members. 316 F.3d at 889. The district court certified a class comprising all "fee payers" who were not members of the union and granted summary judgment in favor of the class, ordering the union to return a certain portion of the "fair share" fees paid by members of the certified class, including those who did not object to notice. Id. at 890. The union appealed class certification, arguing, in essence, that the class representatives sought to weaken the union for ideological reasons and thus, had a conflict with nonunion fee payers who wanted a strong union (despite their lack of union membership) and thus did not favor "full restitution" of "fair share" fees, as sought by the class representatives. Id. at 895-96.

The Ninth Circuit affirmed class certification for two reasons. First, it found that there was no "potential conflict … truly present in th[e] case" because Ninth Circuit case law precluded the " 'punitive' remedy of full restitution." Cummings, 316 F.3d at 896. Second, the Ninth Circuit found that the conflict was "speculative" (and, thus, disfavored as a basis for denying class certification under Ninth Circuit law) because the union "produced no evidence that class members actually possess[ed] opposing views regarding the pursuit of the punitive [full restitution] remedy." Id.

The Court has also reviewed two other Ninth Circuit decisions addressing "speculative" conflict: *Social Services Union, Local 535, Service Employees' International Union, AFL-CIO v. Santa Clara County.*, 609 F.2d 944 (9th Cir. 1979) and *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).

In *Social Services*, the Ninth Circuit found that the district court had erred in denying class representative status to union plaintiffs based on a supposed "conflict between the economic interests of [] male and female members" because the district court could not assume, based merely on "the general budgetary constraints" of local government, that "male union members would suffer pecuniary injury if the pay of female employees [was] raised." 609 F.2d at 948. There was "no evidence that the economic interests of male union members would in fact suffer … because of relief that might be obtained in th[e] action" and thus, the Ninth Circuit concluded that "any potential economic conflict between male and female employees [was] too amorphous

9

and speculative to disqualify the unions from representing the class." Id.

In *Blackie*, similarly, defendants argued on appeal that the district court should not have granted class certification in a securities fraud case because there was a conflict between early investors, who would get greater out-of-pocket damages by maximizing the deflationary effect of corrective disclosures on stock prices, and later investors, who would get greater out-of-pocket damages by downplaying the effect of corrective disclosures and maximizing price inflation at the time of their purchases. Blackie, 524 F.2d at 908. The Ninth Circuit found that the conflict was "speculative"—and thus did not bar class certification—because the district court had the "discretion" to apply a rescissory measure of recovery rather than an out-of-pocket measure of recovery, and that applying a rescissory measure of recovery would eliminate the conflict completely. Id. at 909. In other words, the Ninth Circuit found that a conflict arising solely from a measure of damages that had not yet been applied—and might never be applied—"d[id] not render the class inappropriate" at the time of class certification. Id.

Thus, to summarize, *Blackie* held that the conflict was "speculative" at the time of class certification because the conflict would not materialize at all if the court exercised its discretion to apply a rescissory measure of damages. In *Social Services*, the conflict was deemed "speculative" because defendants failed to adduce evidence that the government could not afford to increase female wages without inflicting economic injury on males. And in *Cummings*, both these issues were at play: the Ninth Circuit found that the conflict was "speculative" because defendants did not provide evidence showing that class members had different viewpoints as to the union and because applicable law did not allow the "full restitution" remedy that supposedly gave rise to the conflict.

Here, however, the record shows that Fresno State's athletic department has an average annual operating deficit of approximately $2.2 million, and that it cut teams in 2020 in part because that operating deficit was projected to triple to $6.6 million in the 2020-21 academic year. Doc. No. 19 at 12:22-26. Further, the record shows that the cuts necessitated by rising deficits did not affect all sports (or student-athletes) equally, in that Fresno State eliminated more than 70 subscribed participation opportunities in men's wrestling, men's tennis and women's lacrosse,

10

1  while sparing sports such as baseball, basketball and football on the men's side and basketball,
2  softball and volleyball on the women's side. Doc. No. 35 at 25:16-20. Finally, Title IX bars
3  universities that receive federal funds from favoring one sex over the other in athletics, so once
4  Title IX parity has been established, a university generally cannot add a significant number of
5  participation opportunities (or otherwise make expenditures of consequence) for one sex if it does
6  not have the wherewithal to do the same for the other sex—further reducing flexibility in the
7  funding of athletics as to a given sex. See id., Analysis, Part I.A.

8  Thus, the conflicting interests of different sports in Fresno State's limited athletic
9  resources—as well as the constraints (both financial and legal) that make it impossible for Fresno
10 State to fully accommodate all female students who are "able and ready" to participate in varsity
11 sports, see Pederson v. Louisiana State Univ., 213 F.3d 858, 871 (5th Cir. 2000)—are clearly
12 evidenced in this case. Similarly, there is no dispute that Fresno State can achieve full Title IX
13 compliance—and, realistically, can only achieve full Title IX compliance—through a lopsided
14 allocation of resources that benefits some women's sports more than others, while leaving many
15 women's sports completely unserved. In other words, there is no evidentiary deficit as to the
16 conflict in this case, and there is no remedy the Court could apply to prevent that conflict from
17 materializing (or to make it go away). Thus, the Court finds that the conflict here is not
18 "speculative" as that concept is applied in Ninth Circuit case law pertaining to class certification.

19 Moreover, several courts—including the Court of Appeals for the Second Circuit—have
20 found that circumstances such as those present here create a conflict that precludes certification of
21 multi-sport classes represented solely by student-athletes from a single sport.

22 In *Boucher v. Syracuse University*, for example, the district court found a conflict between
23 club lacrosse players and club softball players that precluded aggregate class certification because
24 defendant Syracuse University "could possibly comply with Title IX by elevating only one of the
25 teams to the varsity level" and "budget constraints" might preclude elevating both teams. 1996
26 WL 328441, at *4 (N.D.N.Y. June 12, 1996), vacated in different part, 164 F.3d 113 (2d Cir.
27 1999). On appeal, the Second Circuit affirmed in that respect, stating that "[d]istrict judges have
28 broad discretion over class definition" and finding that "the district court correctly found potential

11

conflicts between members of a class that included both women interested in playing varsity lacrosse and women who wished to play varsity softball." Boucher v. Syracuse Univ., 164 F.3d 113, 119 (2d Cir. 1999).

In *Bryant v. Colgate University*, the court found that a proposed class encompassing all female sports was not appropriate for certification in an action brought by members of the women's club ice hockey team because "plaintiffs interests would be antagonistic to those of other interested and able athletes" due to "finite" resources and limits on "the number of programs available." 1996 WL 328446, at *6 (N.D.N.Y. June 11, 1996).

In *Robb v. Lock Haven University of Pennsylvania*, the district court denied certification of a multi-sport class on findings that "Title IX, to some extent, does not care *who* receives [] benefits, as long as they go to the underrepresented sex" and that the named plaintiff—a member of the women's rugby team—"would likely advocate" for women's rugby at the expense of other women's sports. 2019 WL 2005636, at *12 (M.D. Pa. May 7, 2019).

And in *Miller v. University of Cincinnati*, the court found that there was an "an inherent conflict" between members of the women's rowing team and the proposed class (comprising "[a]ll present, prospective and future participants in the women's athletics program at the University of Cincinnati") because "compliance could conceivably be achieved, in part, by taking away the allegedly paltry resources allocated to women's rowing, and bestowing them along with new resources on other women's varsity sports." 241 F.R.D. 285, 290 (S.D. Ohio 2006); see also S.G. by & through Gordon v. Jordan Sch. Dist., 2018 WL 4899098, at *2 (D. Utah Oct. 9, 2018) (finding that "the remedies the class and subclass seek could conflict with each other in a way that would render [named plaintiffs'] representation inadequate").

The Court agrees with the reasoning in these cases[9] and finds—consistent with the

---

[9] Plaintiffs point to several Title IX cases from outside the Ninth Circuit in which district courts found that conflict among sports was merely "speculative." In *Portz v. St. Cloud State University*, 297 F. Supp. 3d 929 (D. Minn. 2018), for example, the court found that a supposed conflict between the proposed class representatives and class members who participated in different sports was "merely speculative" because the proposed class members "filed declarations stating that their primary goal [was] 'to force SCSU to provide sex-based equality in athletics overall" and "expressed a desire to end the alleged sex discrimination for all women's sports." Id. at 948. In *Foltz v. Delaware State University*, 269 F.R.D. 419 (D. Del. 2010), similarly, defendant argued that the class, if certified at all, should be limited to the equestrian team because there was a conflict between the named plaintiffs—whose primary goal was to

principles set forth by the Ninth Circuit in *Cummings*, *Social Services* and *Blackie*—that the conflict evidenced by undisputed aspects of the record in this case is not speculative and properly bars class certification for lack of adequate representation under Rule 23(a)(4).[10] Cf. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., 895 F.3d 597, 607 (9th Cir. 2018) (stating that "[t]he initial inquiry in assessing adequacy of representation … is whether 'the named plaintiffs and their counsel have any conflicts of interest with other class members' " and recognizing "evident structural conflicts" contravening Rule 23(a)(4) where subgroups "have differing, even adversarial, interests in the allocation of limited settlement funds" (quoted sources omitted)).

2. Neutrality of Proposed Class Representatives

Plaintiffs next argue that whatever conflict might otherwise exist among different women's sports has been obviated in this case because Anders and Walburger have sworn in supplemental declarations that:

> the principal purpose of this case was not and is not to protect or restore women's varsity lacrosse. It was and is to require Fresno State to comply with Title IX, stop discriminating against female student-athletes and potential student-athletes, and provide equal opportunities to participate and equal treatment of women in its varsity intercollegiate athletic program.

Doc. No. 94-1 at 13:8-15. Similarly, Plaintiffs state that "[b]oth class representatives testified under oath that they would agree to a settlement wherein Fresno State comes into compliance with Title IX by adding women's participation opportunities without reinstating the lacrosse team," id. at 16:1-5, and set forth evidence showing a proposed settlement in which Fresno State would "reinstate the women's lacrosse team or add another women's team or teams to reach substantial

---

preserve the women's equestrian team—and "the broader interests of the proposed class." Id. at 424. The court rejected that argument, finding that the conflict was "speculative" because "several of the named plaintiffs ha[d] testified expressly that they were motivated to obtain equal opportunities for all female students." Id. The court respectfully disagrees with the reasoning and conclusions in those cases for the reasons set forth in this order.

[10] Like the parties' briefing, the Court's analysis focuses primarily on participation opportunities and Plaintiffs' equal accommodation claim. The rationale and findings, however, apply equally to class certification in connection with Plaintiffs' equal treatment claim. See Robb, 2019 WL 2005636, at *12 (stating that the conflict analysis applicable to equal accommodation claims "applies to equal treatment claims, since Title IX often does not care how a university chooses to remedy unequal overall treatment").

proportionality." Id. at 16:1-9; Doc. No. 94-6 at 3. Fresno State argues that the supplemental declarations, deposition testimony and settlement proposal should not be given weight because they are contradicted by the SAC and various evidence indicating that this action is first and foremost about women's lacrosse. Doc. No. 95 at 8:8-18; 16:14-19:2.

The Court is inclined to credit the proposed class representatives' sworn statements as to their intentions with respect to neutrality but nonetheless finds Plaintiffs' line of argument unpersuasive for two reasons.

First, the Court is not convinced that Plaintiffs' good intentions (however earnest) are sufficient to offset the fact that this action has primarily been about the reinstatement of women's lacrosse, as pleaded and prosecuted to date. The SAC, for example, contains 128 references to "lacrosse," compared to three or fewer references to each of the other women's varsity sports at Fresno State. See, generally, Doc. No. 59. Anders testified in deposition that reinstatement of women's lacrosse was "of course" a "a goal" of the lawsuit; that it would be a "bonus" to have women's lacrosse reinstated; and that she would be "disappointed … if the Fresno State women's lacrosse team was not reinstated." Doc. No. 94-4 at 6:11-18; 7:8-25. Walburger testified that it would be "sad" if women's lacrosse were not reinstated because there were "certain opportunities taken away" from members of the women's lacrosse team, such as the opportunity to "play in an alumni game." Doc. No. 94-5 at 11:2-9. On March 4, 2021, an attorney for Plaintiffs, Arthur Bryant, sent a settlement proposal to an attorney for Fresno State, Scott Eldridge, expressly calling for reinstatement of women's lacrosse—with no reference to the addition or reinstatement of any other women's sport. Doc. No. 95-5. Specifically, Mr. Bryant wrote to Mr. Eldridge as follows:

> To be clear, *we would be wil[l]ing – and are offering – to settle this case, as we did with [East Carolina University] and the other schools that recently eliminated women's teams, if Fresno State agrees to (1) reinstate, continue, and treat the women's lacrosse team as a varsity team,* (2) develop and implement a gender equity plan to get all aspects of its intercollegiate athletic department into compliance with Title IX in the next year or two, and (3) pay our clients' costs and attorneys' fees.
>
> I can develop and give you more detail (the ECU settlement agreement has most of it), but there is no sense in wasting your or my time. (Fresno State will be paying for both.)

Id. at 2 (emphasis added); see also id. at 6 (email from Plaintiffs' counsel to Fresno State attaching

14

a "settlement agreement [] recently entered into with East Carolina University" and stating that Plaintiffs "would be willing to agree to a settlement along these lines with Fresno State"). And even the March 18, 2022 settlement proposal Plaintiffs cite to show their new-found neutrality reflects a bias in favor of women's lacrosse in that lacrosse is discussed at length and the only women's sport mentioned by name. Doc. No. 94-6 at 2-3 (calling for a commitment that "Fresno State will reinstate the women's lacrosse team or add another women's team or teams to reach substantial proportionality"). At bottom, it appears Fresno State could achieve Title IX compliance—the proposed class representatives' stated goal—by reinstating or adding one or two women's sports if Plaintiffs prevail in this action. The Court cannot conclude, in light of facts such as those set forth above (and others like them elsewhere on the record), that other women's sports would be on fully equal footing with women's lacrosse if and when the time comes to select sports for addition or reinstatement. See Doc. 94-1 at 6:20-7:15.

Second, and more fundamentally, mere neutrality on the part of the proposed class representatives does not provide female student-athletes who are "ready and able" to participate in varsity sports other than women's lacrosse with the "structural assurance of fair and adequate representation" to which they are entitled in class actions as a matter of due process. Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 627 (1997).

In our adversarial system, litigants are supposed to act in their self-interest, see Jay Tidmarsh, Rethinking Adequacy of Representation, 87 Tex.L.Rev. 1137, 1142 (2009) ("The American version of adversarialism embodies another principle: In making basic decisions regarding the structure and prosecution of a case, a plaintiff is entitled to be guided by self-interest."), and anyone bound by this action has a constitutional right to representatives who "understand that their role is to represent solely the members of their respective subgroups," Amchem, 521 U.S. at 627 (quoted source and internal quotation marks omitted), and who will "exclusively advance[]" their "particular interests." In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 250 (2d Cir. 2011). In *Amchem Products Inc. v. Windsor*, for example, the Supreme Court affirmed a Third Circuit order rejecting a "global compromise" in an asbestos class action, finding that Rule 23(a)(4) had not been satisfied where the "named parties

… each served generally as representative for the whole, not for a separate constituency," with no showing that "the named plaintiffs operated under a proper understanding of their representational responsibilities." Amchem, 521 U.S. at 626-27; see also In re Literary Works, 654 F.3d at 250 (adopting the reasoning in *Amchem* to affirm a district court order denying class certification); c.f. Juris v. Inamed Corp., 685 F.3d 1294, 1324–25 (11th Cir. 2012) (finding that "the structural protections put in place were sufficient to meet the demands of due process" because the Eleventh Circuit was "confident that the class settlement, as well as the plan for distribution, was achieved only by the consent of those who understood that their role was to advocate on behalf of their respective subgroups").

Here, the putatively neutral proposed class representatives do not purport to offer sport-specific advocacy (to the contrary, they swear not to take sides) and thus cannot meet "the requirement of structural protection recognized in *Amchem*" and other Supreme Court cases. Ortiz v. Fibreboard Corp., 527 U.S. 815, 857 (1999). The Court therefore finds that Rule 23(a)(4) has not been satisfied, even considering the various materials Plaintiffs set forth to correct, clarify and supplement the record.

### 3. Class Certification for Liability Only

Plaintiffs argue that if "the Court finds that a conflict truly exists," it should "certify … as to liability," instead of denying class certification "outright."[11] Doc. No. 94-1 at 22:11-13. According to Plaintiffs, conflict among different women's sports could arise only if Plaintiffs prevail on liability and could be addressed, to the extent necessary, through the creation of subclasses specific to different sports at the remedy stage. Id. at 22:10-23:7.

As Fresno State points out, however, due process requires that class representatives adequately represent the interest of absent class members "at all times." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). The record in this case shows that Plaintiffs have already made two settlement proposals in this action, one calling solely for reinstatement lacrosse and the other

---

[11] Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed.R.Civ.P. 23(c)(4). Thus, for example, Rule 23(c)(4) may be used "to separate the issue of liability from damages." In re Nassau County Strip Search Cases, 461 F.3d 219, 226 (2d Cir. 2006).

16

calling for reinstatement of lacrosse while also allowing for the possible addition of some other unspecified women's sport (or sports) instead. Thus, liability and remedies cannot neatly be separated from one another in this case, and the Court has no interest in sanctioning an arrangement that could well lead to an unenforceable settlement that has to be undone due to a Rule 23(a)(4) violation that is fully evident now—at the class certification stage. See Amchem, 521 U.S. at 627 (different groups "cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups" (quoted source and internal quotation marks omitted)). Further, Plaintiffs have not shown that bifurcated certification would "materially advance the litigation," cf. In re Motor Fuel Temperature Sales Pracs. Litig., 279 F.R.D. 598, 610 (D. Kan. 2012) ("the Court must determine … whether certifying issue classes will materially advance the resolution of the litigation"), or provided creditable assurances, of any kind, that actions taken and decisions made in connection with litigating liability (for example, development of the factual record) would not influence remedies in a way that late-stage creation of sport-specific subclasses cannot fully rectify. The Court therefore declines to grant class certification as to liability only. See Cason v. Nissan Motor Acceptance Corp., 212 F.R.D. 518, 523 (M.D. Tenn. 2002) (finding that "certifying a class for purposes of liability only" would not be "fair," "practical" or "in the interest of judicial economy").

## **CONCLUSION**

To summarize, Plaintiffs' motion is properly construed as a motion for reconsideration because it exceeds the scope of leave granted by the Court for a second class-certification motion and Rule 60(b) is the only other basis Plaintiffs provide (or could provide) for bringing the motion. In the Court's view, reconsideration is not warranted because all substantive argument as to reconsideration is made for the first time on reply and regardless, Plaintiffs make no discernable attempt to show that any reconsideration standards have been satisfied.

Assuming the motion could somehow be construed as having been authorized by Court order, the Court finds that there is an unacceptable Rule 23(a)(4) conflict between the proposed

class representatives and the all-inclusive class of student-athletes they seek to represent because different sports necessarily compete for limited resources at Fresno State and given the nature of Title IX remedies, one or more women's sports will benefit more than others if Plaintiffs prevail on one or more of their claims. Further, the Court finds that the professed neutrality of the proposed class representatives does resolve the conflict in question or otherwise make class certification appropriate because it does not convincingly offset the disproportionate emphasis on lacrosse in this case to date. Also, neutrality on the part of the proposed class representatives would deprive student-athletes (including lacrosse players) of their due process right to vigorous and single-minded advocacy specific to their respective sport. Finally, the Court declines to grant class certification for liability only because due process rights to vigorous sport-specific representation apply at all stages of this litigation; Plaintiffs have failed to show how liability-only certification would materially advance resolution of this case; and particularly in light of the settlement efforts that have been made to date, the Court is not satisfied that liability and remedies can be bifurcated in this case.

Plaintiffs' motion will therefore be denied in its entirety.

The Court recognizes, however, the potential need to litigate this case as a class action, if only to preserve standing for a period that may exceed the remaining time that named Plaintiffs are enrolled at Fresno State. See Beasley v. Alabama State Univ., 3 F. Supp. 2d 1325, 1344 (M.D. Ala. 1998) ("where, as here, a plaintiff enjoys only inherently transient standing, she may preserve her claims for prospective relief by obtaining class certification, because under such circumstances 'the termination of a class representative's claim does not moot the claims of unnamed members of the class.' " (quoted source omitted)); Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993) (noting the possibility that a student's claim may not be rendered moot by graduation if he or she sued in a representational capacity). Further, the Court notes that it is not uncommon for courts to certify a class—or subclass—specific to a single sport. See, e.g., Boucher, 164 F.3d at 119 ("We conclude that although the district court correctly found potential conflicts between members of a class that included both women interested in playing varsity lacrosse and women who wished to play varsity softball, it should have certified two sub-classes—one for each sport ...."). The Court

18

will therefore grant Plaintiffs leave to bring a motion for class certification specific to women's lacrosse. To the extent Plaintiffs bring a motion that exceeds the scope of this leave in any material respect, the motion will be decided under a reconsideration standard or stricken.

In light of the foregoing, it is not necessary for the Court to address the various collateral issues raised by the parties in connection with this motion, including, for example, the propriety of the class definitions set forth by the Court in its August 16, 2022 order. Such issues can be raised as necessary in future briefing involving class certification to the extent they are not otherwise barred.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' renewed motion for class certification and in the alternative, motion for reconsideration (Doc. No. 94) is DENIED WITHOUT PREJUDICE to a motion for class certification specific to women's lacrosse;

2. To the extent Plaintiffs bring a motion that exceeds the scope of this leave in any material respect, the motion will either be stricken or decided exclusively under a reconsideration standard; and

3. This case is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:  November 22, 2022                              /s/ [signature]
                                                                                SENIOR  DISTRICT  JUDGE