Scott R. Eldridge (Michigan Bar No. P66452)
Brian M. Schwartz (Michigan Bar No. P69018)
Erika L. Giroux (Michigan Bar No. P81998)
Ashley N. Higginson (Michigan Bar No. P83992)
MILLER, CANFIELD, PADDOCK, AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
eldridge@millercanfield.com
schwartzb@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com
*Attorneys for Defendants*

ROB BONTA
Attorney General of California
JODI L. CLEESATTLE
Supervising Deputy Attorney General
JENNIFER L. SANTA MARIA, SBN 225875
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone:  (619) 738-9099
Fax:  (619) 645-2012
E-mail:  Jennifer.SantaMaria@doj.ca.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| TAYLOR ANDERS, HENNESSEY EVANS, ABBIGAYLE ROBERTS, MEGAN WALAITIS, TARA WEIR, and COURTNEY WALBURGER, individually and on behalf of all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA STATE UNIVERSITY, FRESNO, and BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY, <br><br> Defendants, | Case No. 1:21-cv-00179-KJM-BAM <br><br> **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CERTIFICATION [ECF NO. 165]** <br><br> Hon. Kimberly J. Mueller, U.S.D.J. <br><br> Hearing Date: January 23, 2025 <br> Hearing Time: 10:00 a.m. <br> Courtroom: 3 |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ ii

I.   INTRODUCTION ......................................................................... 1

II.   STATEMENT OF RELEVANT FACTS .......................................... 2

  A.   Procedural History of the Pleadings.......................................... 2

  B.   Background on Fresno State's Athletic Participation Opportunities (Count I) ............................................................................................... 2

  C.   Background on Fresno State's Athletic Treatment and Benefits (Count III).......... 4

  D.   Procedural Background on Plaintiffs' Requests for Class Certification................ 6

  E.   Ninth Circuit Court of Appeals' Opinion and Remand .......................... 6

  F.   Fresno State's Motion to Dismiss and Plaintiffs' Fourth Certification Motion ............................................................................. 7

III.   ARGUMENT ............................................................................. 7

  A.   Standard of Review Under Fed. R. Civ. P. 23 ................................ 7

  B.   Plaintiffs' Proposed Class Definitions Remain Overbroad and Unworkable. ........ 8

  C.   Plaintiffs' Proposed Class Definitions Fail to Satisfy Numerosity ................ 12

  D.   Plaintiffs Do Not Establish Commonality .................................... 13

  E.   Plaintiffs' Claims Are Not Typical of the Proposed Class .................... 15

  F.   Plaintiffs Still Have Not Identified an Adequate Class Representative ............ 15

  G.   Plaintiffs Do Not Identify Adequate Class Counsel ......................... 16

IV.   CONCLUSION ......................................................................... 20

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Allergan PLC Sec. Litig.*,
  2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) .......................................................... 20

*Anders v. California State Univ., Fresno*,
  2021 WL 3115867 (E.D. Cal. July 22, 2021) ............................................................ 2

*Andrews Farms v. Calcot, Ltd.*,
  268 F.R.D. 380 (E.D. Cal. 2010) ...................................................................... 15, 16

*Balow v. Mich. State Univ.*,
  No. 1:21-CV-44, 2021 WL 650712 (W.D. Mich. Feb. 19, 2021), *vacated and
  remanded on other grounds*, 24 F.4th 1051 (6th Cir. 2022) .................................. 3, 18

*Biediger v. Quinnipiac University*,
  2010 WL 2017773 (D. Conn. May 20, 2010) .......................................................... 10

*Bolden v. Walsh Constr. Co.*,
  688 F.3d 893 (7th Cir. 2012) ................................................................................ 14

*Boucher v. Syracuse Univ.*,
  164 F.3d 113 (2nd Cir. 1999) ................................................................................. 9

*Brooks v. Darling Int'l, Inc.*,
  2017 WL 1198542 (E.D. Cal. Mar. 31, 2017) .......................................................... 9

*Brooks v. Pressed Juicery, Inc.*,
  336 F.R.D. 484 (E.D. Cal. 2020) ........................................................................... 12

*Brust v. Regents of the Univ. of Cal.*,
  2008 WL 11512299 (E.D. Cal. Oct. 24, 2008) ........................................................ 13

*Bryant v. Colgate Univ.*,
  1996 WL 328446 (N.D.N.Y. June 11, 1996) ...................................................... 8, 9, 10

*Campbell v. PricewaterhouseCoopers, LLP*,

   253 F.R.D. 586 (E.D. Cal. 2008) ........................................................... 8

*In re Cendant Corp. Litig.*,

   264 F.3d 201 (3rd Cir. 2001) ................................................................ 17

*In re Countrywide Fin. Corp. Mortg. Lending Pracs. Litig.*,

   708 F.3d 704 (6th Cir. 2013).................................................................. 14

*Cummings v. Premier Rehab Keller, P.L.L.C.*,

   142 S. Ct. 1562 (2022) ......................................................................... 17

*Ebarle v. Lifelock, Inc.*,

   2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ......................................... 9

*Ellis v. Costco Wholesale Corp.*,

   657 F.3d 970 (9th Cir. 2011)................................................................. 15

*Eng. v. Apple Inc.*,

   2016 WL 1188200 (N.D. Cal. Jan. 5, 2016) ....................................... 17

*Gen. Tel. Co. of Sw. v. Falcon*,

   457 U.S. 147 (1982) ............................................................................. 8

*Gen. Telephone Co. v. EEOC*,

   446 U.S. 318 (1980) ............................................................................. 12

*Gonzales v. Comcast Corp.*,

   2012 WL 10621 (E.D. Cal. Jan. 3, 2012), *report and recommendation adopted*,

   2012 WL 217708 (E.D. Cal. Jan.23, 2012)........................................... 9

*Halliburton Co. v. Erica P. John Fund, Inc.*,

   573 U.S. 258 (2014) ............................................................................. 8

*Harris v. Gen. Dev. Corp.*,

   127 F.R.D. 655 (N.D. Ill. 1989) ........................................................... 11

*Jerue v. Drummond Co., Inc.*,

   2023 WL 6610603 (M.D. Fla. Aug. 25, 2023) ..................................... 9

*Kandel v. Brother Int'l Corp.*,

    264 F.R.D. 630 (C.D. Cal. 2010) ........................................................................ 19

*Kaur v. Things Remembered, Inc.*,

    2016 WL 11811049 (N.D. Cal, April 20, 2016) ................................................... 19

*Lerwill v. Inflight Motion Pictures, Inc.*,

    582 F.2d 507 (9th Cir. 1978) .............................................................................. 8

*Lundquist v. Security Pacific Automotive Financial Services Corp.*,

    993 F.2d 11 (2nd Cir. 1993) ............................................................................... 8

*Maywalt v. Parker & Parsley Petroleum Co.*,

    67 F.3d 1072 (2nd Cir. 1995) ............................................................................ 17

*In re Michaelson*,

    882 F.2d 882 (9th Cir. 1975) .............................................................................. 19

*Millan v. Cascade Water Servs., Inc.*,

    310 F.R.D. 593 (E.D. Cal. 2015) ........................................................................ 12

*Moore v. Margiotta*,

    581 F. Supp. 649 (E.D.N.Y. 1984) .................................................................... 17

*Niblock et. al v. University of Kentucky*,

    Findings of Fact and Conclusions of Law, Case No. 5:19-cv-00394, (E.D. Ky.

    October 28, 2024)........................................................................................ 12, 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

    31 F.4th 651 (9th Cir. 2022)............................................................................ 7, 8

*Ollier v. Sweetwater Union High Sch. Dist.*,

    768 F.3d 843 (9th Cir. 2014)............................................................................. 2

*Orantes-Hernandez v. Smith*,

    541 F. Supp. 351 (C.D. Cal. 1982) ................................................................... 12

*Paton v. New Mexico Highlands Univ.*,

    1999 WL 35808359 (D.N.M. Oct. 18, 1999)..................................................... 10

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

*Pederson v. Louisiana State Univ.*,
   213 F.3d 858 (5th Cir. 2000)........................................................................ 9

*Physicians Healthsource, Inc. v. Masimo Corp., et al.*,
   2019 WL 8755114 (C.D. Cal. July 30, 2019) .......................................... 19

*Portz v. St. Cloud State Univ.*,
   297 F. Supp. 3d 929 (D. Minn. 2018) ........................................... 8, 9, 10

*Radcliffe v. Experian Info. Sols. Inc.*,
   715 F.3d 1157 (9th Cir.2013)..................................................................... 17

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)........................................................................ 8

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)..................................................................... 19

*S.G. by & through Gordon v. Jordan Sch. Dist.*,
   2018 WL 4899098 (D. Utah Oct. 9, 2018) ............................................. 13

*Varela v. Indus. Pro. & Tech. Workers*,
   2009 WL 10670788 (C.D. Cal. Oct. 28, 2009) ...................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................ 7, 8, 13

*Wrighten v. Metropolitan Hospitals, Inc.*,
   726 F.2d 1346 (9th Cir. 1984).................................................................. 16

*Zuehlsdorf v. FCA US LLC*,
   2020 WL 8575138 (C.D. Cal. Dec. 15, 2020) ...................................... 19

**Federal Statutes**

20 U.S.C. §§ 1681-1688................................................................*passim*

**Rules**

Cal. RPC 1.5.1(a)(2) ......................................................................... 18

Fed. R. Civ. P. 23 .................................................................... 6, 7, 8

Fed. R. Civ. P. 23(a) ........................................................................................ 7, 8

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 12

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 15

Fed. R. Civ. P. 23(a)(4) .............................................................................. 6, 15, 16

Fed. R. Civ. P. 23(b) ............................................................................................ 8

Fed. R. Civ. P. 23(b)(2) ....................................................................................... 13

Fed. R. Civ. P. 23(c)(1)(a) .................................................................................... 19

Fed. R. Civ. P. 23(g) ............................................................................................ 16

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

## I.   INTRODUCTION

Plaintiff's *fourth* motion for class certification suffers from material flaws that necessitate denial.[1]  Initially, Plaintiffs' proposed classes—which include "current" and "future" Fresno State students who have been "deterred" from participating in varsity athletics or are "able and ready to seek membership on a varsity women's lacrosse team . . . but have not done so" due to their "perceived lack of opportunity"—are too vague and subjective to be workable.  Indeed, Anders and Walburger concede that they do not know how to go about identifying proposed class members, that none may exist at all, and that they have not suffered the same alleged injury as the class members they seek to represent.  The remainder of Plaintiffs' proposed class definitions suffers the opposite problem, creating a numerosity deficiency: they are defined with such specificity that only a handful of individuals could ever meet the criteria, particularly considering Fresno State's compliance with Title IX as it relates to participation opportunities since discontinuing its lacrosse program.  Plaintiffs have not shown that joinder of these few individuals would be unworkable.  Ultimately, Plaintiffs have not established, as is their burden, that their proposed class is ascertainable and that the class is sufficiently numerous, or that commonality and typicality exist.

Further, Plaintiffs again offer Anders and Walburger as proposed class representatives, who remain inadequate.  While the Ninth Circuit ruled class representatives from one athletic team can, in theory, represent an all-sport class in this case, *these* proffered representatives have created a conflict by repeatedly changing their minds about the importance of lacrosse vis-à-vis all other sports throughout this lawsuit and due to their utter lack of knowledge or interest in other women's sports.  Additionally, Plaintiffs' proposed class counsel have shown they cannot adequately represent the proposed classes due to the conflicts they have created, their self-interest related to obtaining their attorney fees, and their delay in prosecuting this litigation to date, which has led to moot claims, inadequate class representatives, and a lawsuit ripe for dismissal.

---

[1] As used in this brief, "Fresno State" refers to Defendant Board of Trustees of California State University, which is the State of California acting in its higher education capacity (erroneously also sued as "California State University, Fresno").

1    In sum, despite years of guidance from this Court and the Ninth Circuit, Plaintiffs do not

2    demonstrate that class certification is appropriate, and the Court should deny their fourth motion

3    for certification in full.

4    ## II.    STATEMENT OF RELEVANT FACTS

5    **A.    Procedural History of the Pleadings.**

6    On October 16, 2020, Fresno State announced that, starting in 2021-2022, it would no

7    longer sponsor men's tennis, men's wrestling, and women's lacrosse.  (ECF No. 59, p. 2, SAC ¶

8    2).  On February 12, 2021, Plaintiffs filed a class action complaint and a motion for preliminary

9    injunction, seeking, among other relief, reinstatement of the lacrosse team.  (ECF No. 1, 2).  On

10   April 21, 2021, the Court entered an order denying Plaintiffs' Motion for Preliminary Injunction

11   concerning the reinstatement of lacrosse.  (ECF No. 35).  After Plaintiffs filed a Second Amended

12   Complaint with leave of Court, (ECF No. 57, 59), the Court again dismissed Plaintiffs' claim for

13   unequal allocation of athletic financial assistance (Count II), leaving two remaining claims under

14   Title IX: unequal allocation of participation opportunities (Count I), and unequal allocation of

15   athletic treatment and benefits (Count III).  (ECF No. 73).

16   **B.    Background on Fresno State's Athletic Participation Opportunities (Count I).**

17   According to Plaintiffs, Fresno State has historically failed "to provide equal opportunities

18   to participate to its female student-athletes" and the elimination of lacrosse "exacerbated Fresno

19   State's failure to satisfy" Title IX's requirements.  (ECF No. 59, p. 3, SAC ¶¶ 6-7).

20   Title IX compliance requires "participation opportunities for males and females in numbers

21   substantially proportionate to their respective undergraduate enrollments."  (ECF No. 57, p. 9).

22   Substantial proportionality is achieved when "the number of opportunities . . . required for exact

23   proportionality would not be sufficient to sustain a viable team." *Ollier v. Sweetwater Union High*

24   *Sch. Dist.,* 768 F.3d 843, 856 (9th Cir. 2014)(other citation omitted); *Anders v. California State*

25   *Univ., Fresno,* 2021 WL 3115867, at *13 (E.D. Cal. July 22, 2021) (average size of teams at an

26   institution "can be used as a point of reference in making substantial proportionality

27   determinations.")

28

2

Fresno State's careful tracking of student-athlete participation numbers places it squarely within Title IX's safe harbor.[2]  Specifically, in 2021-22, following the elimination of men's tennis, men's wrestling, and women's lacrosse, Fresno State anticipated having a participation gap of, at most, 17 female student-athletes; less than the average squad size of 25 among Fresno State's women's teams.  (ECF No. 19-2, Coll Decl., Exhibit F; ECF No. 19-7, O'Brien Report, pp. 8-9, 38-41).  Fresno State's Title IX compliance plan was thoroughly evaluated by its expert, Tim O'Brien, who confirmed Fresno State would be able "to demonstrate compliance when the plan is fully implemented and the team eliminations become effective."  (ECF No. 19-7, p. 8).  Further, O'Brien confirmed Fresno State properly "adjusted and finalized the listing of participation opportunities in a manner consistent with Title IX counting methodologies."  (*Id.* pp. 19-23).

Fresno's State's expectations regarding its Title IX compliance have been confirmed.  (Ex. 1, p. 5: Declaration of Carrie Coll, ¶17). The following chart shows the gender breakdown of undergraduates and student-athletes for 2021-22, 2022-23 and 2023-24 (*Id.* p. 4, ¶¶12-14):

| | Undergraduate Students | | Student-Athletes | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Male % | Female % | Male | Female | Male % | Female % | Differential | Participation Gap |
| **2021-22** | 39.00% | 61.00% | 195 | 291 | 40.12% | 59.88% | -1.12% | 14 (Female) |
| **2022-23** | 40.00% | 60.00% | 197 | 288 | 40.62% | 59.38% | -.62% | 8 (Female) |
| **2023-2024** | 40.90% | 58.90% | 204 | 317 | 39.16% | 60.84% | -1.94% | 17 (Male) |

In 2021-22, the participation gap was ultimately 14 female student-athletes, far below the average squad size of 25. In 2022-23, the gap was 8 female student-athletes, and in 2023-2024, there was a participation gap of 17 *males*, still placing Fresno State within the substantial proportionality threshold. (*Id.*).  Currently, for 2024-25, Fresno State anticipates a gap of 11 female student-athletes.  (*Id.* p. 4, ¶15).[3]

---

[2] "[T]he number of participation opportunities necessary to achieve exact proportionality is known as the 'participation gap.'" *Balow v. Mich. State Univ.*, 2021 WL 650712, at *3 (W.D. Mich. Feb. 19, 2021), *vacated and remanded on other grounds*, 24 F.4th 1051 (6th Cir. 2022).)

[3] Plaintiffs' allegation that Fresno State is improperly counting women "who opted out of being walk-ons as Title IX Participants" is false. ECF No 165-1, p. 7, fn 1. The document they cite clearly shows Fresno State prepared its calculations *after subtracting* any individuals who opted out. (See ECF No. 165-3 at 2 and 3). For the avoidance of doubt, Coll has certified that this is her practice. (Ex. 1, p. 4, Coll Dec. ¶10).

**C.      Background on Fresno State's Athletic Treatment and Benefits (Count III).**

As an initial matter, fully briefed in Fresno State's pending Motion to Dismiss, Plaintiffs' treatment and benefits claim is moot and should be dismissed.  (ECF No. 151).  Further still, Plaintiffs do not identify any program-wide disparities or offer any allegations to show that an actionable disparity exists on a class-wide basis, as opposed to a lacrosse versus all-other-sports (male and female) basis.  Rather, Plaintiffs merely list the factors that the U.S. Department of Education's Office of Civil Rights considers when assessing equality of benefits (ECF No. 59, p. 33, SAC ¶ 205, 274) and then state—without any facts to support such an allegation—that Defendants "do not provide female student-athletes at Fresno State with an equal allocation of these benefits." (*Id.* ¶ 276).

Notably, this Court has held that: (1) Plaintiffs' allegations "do not appear to fall neatly into either category of 'equal treatment' violations recognized by the 1979 Policy Interpretation[4] or applicable case law, in that they do not posit a program-level imbalance between the treatment afforded to men's teams and the treatment afforded to women's teams or directly compare the treatment received by women's lacrosse to treatment received by a comparable men's team in the same 'segment' of Fresno State's athletic program." (ECF No. 57, p. 25); and (2) Plaintiffs' complaint "speak[s] almost exclusively (with only the most minute exceptions) to the named Plaintiffs' interests as members of the women's lacrosse team, with no reference of consequence to the implications of alleged Title IX violations for other female students." (ECF No. 93, p. 19).

Plaintiffs' instant motion does not remedy these deficiencies, likely because Plaintiffs have no evidence of a Title IX violation.  Anders and Walburger testified repeatedly that they were speculating that women's lacrosse was treated poorly compared to other teams and admitted to no true knowledge of how *any* other women's or men's teams—other than football and basketball— were treated:

- **Equipment:** *Anders*: no information on equipment issued to any men's team other than lacrosse, football, and basketball.  *Walburger*: lacrosse was the "only" team with gear

---

[4] Ex. 6, Dec. 11, 1979, A Policy Interpretation: Title IX and Intercollegiate Athletics, *available at* https://www2.ed.gov/about/offices/list/ocr/docs/t9interp.html).

issues, but she received any equipment she requested; lacks knowledge as to any women's sport other than soccer.

- **Food:** *Anders* and *Walburger*: knowledge of men's basketball and football only.
- **Practice Facilities:** *Anders*: all teams—not just men's teams—were treated better than lacrosse. *Walburger*: identified only football as being treated better.
- **Locker Room Facilities:** *Anders* and *Walburger*: no knowledge of other teams' facilities.
- **Travel:** *Anders*: no knowledge about other teams, aside from men's basketball and football, which is based on hearsay information from other athletes. *Walburger*: compared lacrosse to men's basketball and golf; no personal knowledge for other women's teams.
- **Per Diem:** *Anders* and *Walburger*: no knowledge of policy.
- **Return-to-Play Dates:** *Anders* and *Walburger*: no specific knowledge of any other team.
- **Competition Scheduling:** *Anders*: no knowledge of how other teams were treated. *Walburger*: all teams treated the same with respect to pandemic cancellations and, with the exception of football (the only sport that competed in fall 2020), fall 2020 scheduling.
- **Coaching Contracts:** *Anders* and *Walburger*: no knowledge.
- **Tutoring:** *Anders* and *Walburger*: no knowledge of the any teams except lacrosse, football, and men's basketball, based on hearsay conversations with other student-athletes.
- **Social Media:** *Anders* and *Walburger*: compared lacrosse only to football and men's basketball and admitted that some women's teams receive acceptable coverage.

(Ex. 2, Anders Dep. at 70-74, 78, 81, 83, 86, 92-97, 100, 111, 164, 166-169, 172, 183-85, 192, 195, 198; Ex. 3, Walburger Dep., 88, 92-94, 97-100, 112-119, 124-126, 133, 179, 181-83, 185-186, 195, 206-218, 222, 227, 230, 245, 259).

In short, Plaintiffs have only speculation and guesswork of a Title IX violation, let alone a violation that persists *across* the classes they seek to represent. Instead, their allegations in support of class certification are based on a comparison of lacrosse to all other sports. Anders also admitted she has no knowledge about how any athletic team at Fresno State was treated after April 8, 2022 and instead speculates treatment must be ongoing because, in her mind, nothing has changed. (Ex. 2, Anders Dep. Vol. 2, p. 38, 283:25; 285:4-13).

5

1    **D.    Procedural Background on Plaintiffs' Requests for Class Certification.**

2          After filing this lawsuit, Plaintiffs waited *over a year* to file a motion for class certification

3    on February 25, 2022.  Plaintiffs asked the Court to certify a broad all-sports class for all current

4    and future female students, and potential students, with Anders and Walburger as representatives.

5    (ECF No. 88, pp. 1-2).  At the time Plaintiffs filed their initial class certification motion, none had

6    been an enrolled student-athlete for approximately nine months.  (ECF No. 151-1, Coll Decl. ¶ 6,

7    Ex. 1).  The Court narrowed Plaintiffs' proposed class definition and denied class certification on

8    August 16, 2022, finding that the proposed class representatives had discernible conflicts of

9    interest, even with the narrowed class definition.  (ECF No. 93, pp. 5-10, 19-20).

10          On August 30, 2022, Plaintiffs filed a "renewed" motion for class certification.  (ECF No.

11   94-1, p. 8).  Plaintiffs modified their proposed class definitions to those proposed by the Court,

12   which are the same definitions they seek to certify now.  (*See* ECF No. 94, p. 2).  On November

13   22, 2022, the Court again denied the class certification request, finding the same conflicts between

14   the proposed class representatives and the classes that had not been remedied.  (ECF No. 107, pp.

15   8-18).  The Court granted Plaintiffs leave to file a motion for certification of a lacrosse-only class.

16   (*Id.*, p. 19).  Plaintiffs filed such a motion on January 27, 2023 (ECF No. 117), and simultaneously

17   appealed the Court's prior class certification rulings to the Ninth Circuit.

18   **E.    Ninth Circuit Court of Appeals' Opinion and Remand.**

19          On January 17, 2024, the Ninth Circuit issued an opinion vacating and remanding.  (ECF

20   No. 139).  The Ninth Circuit concluded that the Court: (1) erred in finding that the remedy sought

21   under Plaintiffs' effective accommodation claim required Fresno State to reinstate a women's team

22   and thus the named Plaintiffs' conflict as former lacrosse players with other women's teams was

23   too speculative, (*id.* p. 4); and (2) "did not independently analyze the equal treatment claim," (*id.*

24   p. 5).  The Ninth Circuit also ruled the District Court had not yet determined whether Plaintiffs'

25   class counsel satisfied Rule 23(a)(4), that it needed to assess whether a class representative conflict

26   exists under the equal treatment claim, also opining that resolution of the justiciability of any equal

27   treatment claim was required.  (*Id.* p. 6).  The Ninth Circuit did not address any other Rule 23 factor.

28

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

**F.      Fresno State's Motion to Dismiss and Plaintiffs' Fourth Certification Motion.**

Upon remand, the parties set a briefing schedule for both Fresno State's motion to dismiss and Plaintiffs' *fourth* motion for class certification.  (ECF No. 149).  The dates for Plaintiffs' class certification motion were later extended four months due to one of Plaintiffs' attorneys transitioning to a new law firm.  (ECF No. 152, 158).  On June 21, 2024, Fresno State filed its motion to dismiss on mootness grounds (ECF No. 151) and on October 22, 2024, Plaintiffs filed the instant motion again seeking certification of the following two classes:

> 1. **"Accommodation Class"**: Current and future female Fresno State students who: (i) have lost membership on a women's varsity intercollegiate athletics team at Fresno State; (ii) have sought but not achieved membership on a women's varsity intercollegiate athletics team at Fresno State; and/or (iii) are able and ready to seek membership on a women's varsity intercollegiate athletics team at Fresno State but have not done so due to a perceived lack of opportunity.

> 2. **"Equal Treatment Class"**: Current and future female Fresno State students who: (i) participate or have participated in women's varsity intercollegiate athletics at Fresno State; and/or (ii) are able and ready to participate in women's varsity intercollegiate athletics at Fresno State but have been deterred from doing so by the treatment received by female varsity intercollegiate student-athletes at Fresno State.

Plaintiffs also again seek to appoint Anders and Walburger as class representatives and request Clarkson Law Firm, P.C. and Caddell & Chapman be appointed class counsel.

### III.      ARGUMENT

**A.      Standard of Review Under Fed. R. Civ. P. 23.**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, (2011).  "To take advantage of Rule 23's procedure for aggregating claims, plaintiffs must make two showings."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022).  "First, the plaintiffs must establish 'there are questions of law or fact common to the class,' as well as demonstrate numerosity, typicality and adequacy of representation."  *Id.*; Fed. R. Civ. P. 23(a).  A common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central

1   to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "Second, the

2   plaintiffs must show that the class fits into one of three categories," namely, that separate actions

3   would risk inconsistent results, that the opposing party has acted or refused to act on grounds that

4   apply generally to the class, or that common questions of law or fact predominate over individual

5   questions. *Olean Wholesale*, 2022 WL 1053459, at *5; Fed. R. Civ. P. 23(b).

6        Before it can certify a class, a district court must be "'satisfied, after a rigorous analysis,

7   that the prerequisites'" of Rule 23(a) have been satisfied by a preponderance of the

8   evidence. *Dukes*, 564 U.S. at 350–51; *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982);

9   *Olean Wholesale*, 2022 WL 1053459, at *5. "[P]laintiffs wishing to proceed through a class action

10  must actually *prove*—not simply plead—that their proposed class satisfies each requirement of

11  Rule 23," and must carry their burden of proof "before class certification." *Halliburton Co. v. Erica*

12  *P. John Fund, Inc.*, 573 U.S. 258, 275-76 (2014) (emphasis in original); *Dukes*, 564 U.S. at 350.

13  **B.     Plaintiffs' Proposed Class Definitions Remain Overbroad and Unworkable.[5]**

14       Prior to considering the Rule 23 factors, "The Court must first decide whether Plaintiffs'

15  proposed class definition is acceptable." *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 942

16  (D. Minn. 2018)); *see also, Bryant v. Colgate Univ.*, 1996 WL 328446, at *6 (N.D.N.Y. June 11,

17  1996) (assessing proper scope of class in light of allegations in the complaint prior to conducting

18  point-by-point Rule 23 analysis); *Lundquist v. Security Pacific Automotive Financial Services*

19  *Corp.*, 993 F.2d 11, 14 (2nd Cir. 1993) (courts are "not bound by the class definition proposed in

20  the complaint" (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2nd Cir. 1993)).

21       An adequate class definition specifies "a distinct group of plaintiffs whose members [can]

22  be identified with particularity." *Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 593

23  (E.D. Cal. 2008) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

24  Courts recognize "three concerns in determining whether ascertainability is satisfied":

25       (1) whether the class action can be ascertained by reference to objective criteria;
         (2) whether the class includes members who are not entitled to recovery; and
26

27  ---

[5] This Court has yet to rule on Fresno State's arguments concerning the ascertainability of the proposed classes. (*See* ECF No. 107, p. 19 ("In light of the foregoing, it is not necessary for the Court to address the various collateral issues raised . . . including, for example, the propriety of the class definitions set forth by the Court in its August 16, 2022 order. Such issues can be raised as necessary in future briefing".))

28

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

1   (3) whether the putative named plaintiff can show that [s]he will be able to locate
2   absent class members once a class is certified.

3   *Brooks v. Darling Int'l, Inc.*, 2017 WL 1198542, at *6 (E.D. Cal. Mar. 31, 2017) (quoting *Ebarle*
4   *v. Lifelock, Inc.*, 2016 WL 234364, at *5 (N.D. Cal. Jan. 20, 2016)).  Plaintiffs' proposed classes
5   fail to satisfy each of these concerns.

6       Most critically, the class includes members who are not entitled to recovery.  "A class must
7   be defined in such a way that anyone within it would have standing."  *Gonzales v. Comcast Corp.,*
8   2012 WL 10621, at *7 (E.D. Cal. Jan. 3, 2012), *report and recommendation adopted,* 2012 WL
9   217708 (E.D. Cal. Jan.23, 2012) (collecting cases); *Portz v. St. Cloud State Univ.,* 297 F. Supp. 3d
10  929 (D. Minn. 2018) (same); and *Bryant v. Colgate Univ.,* 1996 WL 328446 (N.D.N.Y. June 11,
11  1996) (same).

12      All of the Plaintiffs have graduated or are no longer enrolled and therefore they lack
13  standing to challenge Fresno State's alleged unequal allocation of athletic opportunities or benefits
14  and/or their claims are moot and do not entitle them to any recovery.  *See, e.g., Pederson v.*
15  *Louisiana State Univ.,* 213 F.3d 858, 872 (5th Cir. 2000) (plaintiffs "lack standing to challenge the
16  alleged unequal treatment of varsity athletes at LSU" because "[a]t the time of trial, no named
17  plaintiff was a member of a varsity team"); *Boucher v. Syracuse Univ.,* 164 F.3d 113, 116 (2nd Cir.
18  1999) (affirming holding that, "since none of the named plaintiffs were varsity athletes, they did
19  not have standing to assert the equal treatment claims.").  Indeed, *none* of the Plaintiffs are even a
20  member of the classes they have proposed—which identify only "current" and "future" Fresno
21  State students. *Jerue v. Drummond Co., Inc.*, 2023 WL 6610603, at *17 (M.D. Fla. Aug. 25, 2023)
22  (Use of term "current" is "fraught with difficulty because what is considered 'current' may change
23  throughout the lifetime of the case" making it unclear who "would be included in the class.")

24      Further, a school's obligation under Title IX is to provide equitable participation
25  opportunities.  Where, as here, a school provides substantially proportionate participation
26  opportunities and satisfies the safe harbor, then an individual's "perceived lack of opportunity"
27  cannot form the basis of a viable claim entitled to recovery.  Fresno State has provided substantially
28  proportional athletic opportunities to male and female student-athletes since the lacrosse team was

9

discontinued.  (Ex. 1, p. 4, Coll Dec., ¶¶12-15).  Indeed, in 2023-2024, females were provided proportionality *more* participation opportunities than males.  (*Id.* ¶14).  Because the proposed Accommodation Class includes individuals not entitled to recovery, the class definition is improper.  This same logic applies to its Equal Treatment Class, which seeks to include any individual who may be "deterred" from participating due to their subjective opinions, even where equal treatment is provided.

Next, there is no objective criteria used to ascertain proposed class members.  Determining whether an individual—particularly a "future" student— is "able and ready" to seek membership on an athletic team, "perceived" there was a lack or opportunity, or was "deterred" from doing so is the very definition of subjective and unworkable.  *Biediger v. Quinnipiac University*, 2010 WL 2017773, at *2 (D. Conn. May 20, 2010), recognized a similar problem with a proposed class that included "females who are deterred from enrolling at Quinnipiac because of the sex discrimination in its athletic program[.]"  In *Biediger*, the court explained that "[plaintiffs' proposed class] would then have to be narrowed by determining the members' motivations for their decision not to enroll in the University."  *Id.* at *4.[6]  Recognizing the practical problems of such a class, the court explained that "plaintiffs do not offer any solution for how the class could be ascertained in an administratively feasible fashion, and I cannot imagine how the class's membership could be identified objectively and without inordinate time and expense."  *Id.*  The Court also held that "it seems questionable that a person who has been merely deterred from enrolling in a school has suffered an injury Title IX can redress."  *Id.*  This same analysis applies here.

Relatedly, "plaintiffs do not offer any solution for how the class could be ascertained in an administratively feasible fashion."  *Biediger*, 2010 WL 2017773, at *4; *see also Paton v. New*

---

[6] Courts addressing Title IX claims routinely narrowed similarly overbroad class definitions.  *See Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 942–43 (D. Minn. 2018) (rejecting plaintiffs' proposed class definition of "[a]ll present and future St. Cloud State University female students who participate, seek to participate, or have been deterred from participating in intercollegiate athletics at St. Cloud State University" because it included student-athletes "who are not harmed by SCSU's noncompliance with Title IX"); *Bryant v. Colgate Univ.*, 1996 WL 328446, at *6 (N.D.N.Y. June 11, 1996) (rejecting proposed class of "all present and future Colgate University women students and potential students who participate, seek to participate, and/or are deterred from participating in Colgate's intercollegiate athletics program" because "the class is so broad that it includes student athletes who are effectively accommodated, e.g., women students who participated in Colgate's intercollegiate athletics program whose interests and abilities are satisfied by Colgate's current slate of women's varsity teams").

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

1   *Mexico Highlands Univ.*, 1999 WL 35808359, at *1 (D.N.M. Oct. 18, 1999) (concluding that

2   "[d]etermining class members who 'seek to participate, or are deterred from participating in

3   intercollegiate athletics'" improperly "depends on ascertaining the member's state of mind,"

4   excluding that group from class definition).  *Cf. Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659

5   (N.D. Ill. 1989) (denying certification of class that was "discouraged from applying at GDC" as

6   "too imprecise and speculative," as "[a]n attempt to identify those persons who were subjectively

7   deterred would be a daunting and seemingly fruitless task, requiring an individual adjudication with

8   respect to each potential class member").

9          Proposed class representative Anders was unable to shed any light on these issues,

10   speculating Fresno State might be able to identify class members through "surveys" or "collecting

11   data," with no explanation how this was feasible.  (Ex. 2, Anders Dep. Vol. 2 pp. 33-34, 262:11-

12   15; 265:10-11; 270:6-7; 271:25; 274:21-22).   Indeed, Anders acknowledged that the data she

13   envisioned may be inherently "unreliable" due to inexplicable "variables."   (*Id.* at 274:12-14).

14   Anders was unable to identify *even a single person* other than her former teammates (all of whose

15   eligibility is expired) and a single then-current Fresno State student who could potentially be a

16   member of either of the proposed classes, and was unsure *any* other potential class member even

17   existed.  (*Id.* 235:16; 236:3-4; 261:16 (admitting uncertainty that any future students seeking to

18   participate but lacking opportunity exist); *id.* at 266:14 (same as to future students who participate

19   or have participated in women's lacrosse); *id.* at 268:23 (stating she is "not sure" if any class

20   members exist who are current Fresno State students who are able and ready to participate, but

21   deterred due to the treatment received by others).  She also could not explain what it meant for

22   someone to have been "deterred," testifying "[h]aving the thought" of joining the team might be

23   enough (*Id.* at 269:19-24), and admitting deterrence was "all dependent on the person," and such

24   an individual could not be identified unless "they personally attested to" their own experience.  (*Id.*

25   275:11-15; 276:3-5).

26          Similarly, Walburger, when asked to describe the class she understands she is representing,

27   testified: "The other plaintiffs that are on – that are on the documents that were on my team." (Ex.

28   3, Walburger Dep., p. 16, 152:11-16).  Further, she admitted she was not initially part of this lawsuit

11

1   because "personally, like, everything that happened didn't directly happen to me. So I had only

2   heard about it. The other stuff happened to my teammates." (*Id.* p. 17, 156:6-9).  Walburger testified

3   she only joined this lawsuit because she was concerned about her scholarship, which she received,

4   and which does not relate to a Title IX participation or equal treatment claim. (*Id.* at 157:7-11).

5          Plaintiffs have failed to demonstrate that an ascertainable class—beyond the members of

6   their former lacrosse team—exists.  Accordingly, the proposed classes are improper.

7   **C.     Plaintiffs' Proposed Class Definitions Fail to Satisfy Numerosity.**

8          Before a class can be certified, the Court must determine that the class is "so numerous that

9   joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  While there is no set numerical

10  cutoff used to determine whether a class is sufficiently numerous, "general knowledge and common

11  sense indicate that it is large." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal.

12  1982); *Gen. Telephone Co. v. EEOC*, 446 U.S. 318, 329-30 (1980); *Millan v. Cascade Water

13  Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015) ("[G]enerally, forty or more members will satisfy

14  the numerosity requirement."); *Brooks v. Pressed Juicery, Inc.*, 336 F.R.D. 484, 490 (E.D. Cal.

15  2020) ("While no fixed number satisfies the numerosity requirement, as a general matter, a class

16  greater than forty often satisfies the requirement, while one less than twenty-one does not.")

17  (cleaned up).

18         Here, Plaintiffs' proposed class representatives were only able to identify their lacrosse

19  teammates and a single other member of the plaintiff class by name: Anders' former teammate,

20  Hannah Etheridge.  (Ex. 2, Anders Dep. Vol. 2 pp. 32, 34, 250:7-15, 265:12-266:1; Ex. 3,

21  Walburger Dep p. 16, 152:11-16).  These individuals' claims are moot, and they are neither

22  "current" nor "future" students.  Plaintiffs cannot explain why joinder of Ms. Etheridge, or the

23  lacrosse team (whom are all known), as plaintiffs, would be impracticable or otherwise unworkable.

24         Perhaps seeking to avoid this fatal flaw, Plaintiffs' proposed class assumes, but does not

25  establish, there is sufficient interest among female Fresno State students *and* there are a sufficient

26  number of students who could actually compete at a varsity athletic level presently and into the

27  future.  When the lacrosse team was discontinued, "providing that sufficient interest and ability

28  exist on campus to field a team is likely not difficult to prove." *Niblock et. al v. University of*

12

1  *Kentucky*, Findings of Fact and Conclusions of Law, Case No. 5:19-cv-00394, ECF No. 70 at *27,

2  (E.D. Ky. October 28, 2024) (holding plaintiffs had failed to prove UK was not accommodating

3  interests and abilities of UK female students).  Proving interest and ability is "more complicated,"

4  (now that all former lacrosse players have graduated), however, where a group of student athletes

5  seek "to create a completely new varsity team." *Id.*

6       Plaintiffs cannot assume; they need to prove "that there are female students actually able to

7  compete at a varsity level in a sport." *Id.* at 30.  Here, Plaintiffs fail to offer any other evidence of

8  numerosity along the lines that have been found acceptable in other cases, for example, statistics

9  and surveys regarding athletic interest, and data regarding athletic participation. *See, e.g.*, *S.G. by*

10  *& through Gordon v. Jordan Sch. Dist.*, 2018 WL 4899098, at *3 (D. Utah Oct. 9, 2018)

11  (concluding plaintiffs did not meet numerosity requirement where plaintiffs "have not produced

12  any competent evidence or reasonable estimate of how many girls 'seek to participate and/or are or

13  were deterred from participating in athletics'" and noting specifically plaintiffs did not provide data

14  from athletic interest surveys); *Brust v. Regents of the Univ. of Cal.*, 2008 WL 11512299, at *4

15  (E.D. Cal. Oct. 24, 2008) (discussing evidence of participation numbers in club sports, varsity

16  sports, and high school athletic teams, along with data from athletic interest surveys).  Plaintiffs

17  have failed to meet their burden to show numerosity by a preponderance of the evidence.

18  **D.       Plaintiffs Do Not Establish Commonality.**

19       "Commonality requires the plaintiff to demonstrate that the class members 'have suffered

20  the same injury.'" *Dukes,* 564 U.S. at 349–50.  More specifically, "[w]hat matters to class

21  certification is not the raising of common 'questions'—even in droves—but rather, the capacity of

22  a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

23  Dissimilarities within the proposed class are what have the potential to impede the generation of

24  common answers." *Id.* at 350 (internal quotation marks omitted).

25       Plaintiffs stress Fresno State's required compliance with Title IX as the common question,

26  but their broad and sweeping class does not have common answers.[7]  For example, the proposed

---

[7] For the same reasons that Plaintiffs' proposed class representatives cannot establish commonality, they cannot meet
their burden under Rule 23(b)(2). Fresno State's participation opportunities or provision of treatment and benefits in

(continued…)

1   Accommodation Class includes individuals who were once on a team, but are no longer on a team

2   as well as those who have never been on a team.  An individual who never was a varsity student-

3   athlete is in completely different position from someone who has demonstrated the skill to compete

4   as an NCAA Division I student-athlete.   Moreover, Fresno State's current, demonstrated

5   compliance with Title IX by providing substantially proportionate participate opportunities

6   confirms that any ***current*** female students seeking to become varsity student-athletes have no right

7   to such an opportunity.  Contrastingly, ***past*** putative class members who were enrolled when Fresno

8   State was allegedly non-compliant will need to prove that Fresno State is now required to add

9   additional participation opportunities.  The Equal Accommodations Class fares no better, since it

10   includes those who will need to present facts regarding their experience as student-athletes, which

11   changes at least annually, while those who were never student-athletes will need to prove an entirely

12   different set of facts – that they were somehow "deterred" from accomplishing something because

13   a third-party was allegedly subjected to subpar treatment.  Simply put, a multi-year class of student-

14   athletes creates a commonality problem with which Plaintiffs' fail to grapple.

15   Further, both the all-sport Accommodation Class and the Equal Treatment Class do not

16   account for the sport-specific decisions about roster sizes, allocation of resources, and coaching

17   preferences that are not capable of being resolved on an athletic department-wide basis.  *See, In re*

18   *Countrywide Fin. Corp. Mortg. Lending Pracs. Litig.,* 708 F.3d 704, 708 (6th Cir. 2013) (affirming

19   denial of class certification because lender "grant[ed] broad discretion to local agents" in varying

20   loan prices and thus no discriminatory company-wide policy identified); *Bolden v. Walsh Constr.*

21   *Co.,* 688 F.3d 893, 898 (7th Cir. 2012) (concluding that putative race discrimination class lacked

22   commonality because company policy delegated significant discretion to local superintendents).

23   Plaintiffs also admit that they are unable to provide any evidence that there is commonality

24   between them and the Equal Treatment Class they seek to represent, as they have absolutely no

25

26   _____

27   any given year cannot apply generally to a sweeping class of "current" and "future" students without an ending point.
Plaintiffs fail to prove that there is injunctive relief that could be fashioned that would be appropriate for such a class

28   as a whole, given the constantly fluctuating participation numbers (which are tied to enrollment), interests on campus,
and benefits provided.

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

1   knowledge how other women's athletics teams were treated at Fresno State (or even most men's

2   teams) when they were students, let alone currently and in the future. (See Section II.C., *supra*).

3   **E.      Plaintiffs' Claims Are Not Typical of the Proposed Class.**

4        "To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of

5   the class." *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011); Fed. R. Civ. P.

6   23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether

7   the action is based on conduct which is not unique to the named plaintiffs, and whether other class

8   members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted).

9   Plaintiffs' motion makes little effort to substantively explain how their proposed class

10  representatives (or any of the named Plaintiffs) actually meet that standard.

11       All of the Plaintiffs are members of the discontinued lacrosse team, seeking reinstatement of

12  the team, which immediately differentiates them from the bulk of the putative classes, regardless

13  of any potential remedy they can or cannot ultimately seek to gain.  Indeed, Walburger admits she

14  only joined this lawsuit due to fear of losing her scholarship, (which only relate to the financial aid

15  claim that has been dismissed in this action) not due to any alleged injury related to participation

16  or treatment and benefits issues; she indisputably testified that "didn't directly happen to me [but]

17  to my teammates."  (Ex. 3 pp. 16-17, Walburger Dep. at 152, 156-157).  Overall, nothing about

18  Anders' and Walburger's respective claims are typical of those of those who have "sought but not

19  achieved membership" (for the Accommodation Class) or who were "deterred" from participating

20  (for the Equal Treatment Class).  Plaintiffs' request for class certification should accordingly be

21  denied.

22  **F.      Plaintiffs Still Have Not Identified an Adequate Class Representative.**

23       Notwithstanding the Ninth Circuit's holding, Fresno State respectfully asserts that Anders

24  and Walburger are not adequate class representatives for each of their proposed classes.   "The

25  person representing the class must be able to 'fairly and adequately protect the interests" of all

26  members in the class.'" *Andrews Farms v. Calcot, Ltd.,* 268 F.R.D. 380, 388 (E.D. Cal. 2010);

27  Fed. R. Civ. P. 23(a)(4).  "This factor requires: (1) that the proposed representative Plaintiffs do

28  not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by

15

1    qualified and competent counsel." *Andrews*, 268 F.R.D. at 388.  "A representative is not adequate

2    if that party is antagonistic or has conflicts with other potential class members." *Id.*

3         Adequacy is not measured in generalities; it requires a review of the specific class

4    representatives being proffered in this litigation to determine whether they can adequately protect

5    the interests of the members of the class.  Anders and Walburger repeatedly testified they have no

6    knowledge whatsoever concerning the treatment and benefits of any other women's athletic team,

7    and they have both flip-flopped on their positions about the primacy of lacrosse with each

8    successive certification motion. *See,* Section  II.C. *supra.*

9         Plaintiffs incorrectly argue the Ninth Circuit's reasoning concerning Anders and

10   Walburger's adequacy to represent the Accommodation Class should immediately apply, without

11   review, to the Equal Treatment Class.  The Ninth Circuit tellingly and specifically held that it

12   assumed Plaintiffs may want to try to amend their complaint (they did not) and that a renewal of a

13   motion concerning the justiciability of the equal treatment claim would likely require review prior

14   to any certification determination.  (ECF No. 139, p. 6).  Plaintiffs ignore these parts of the Ninth

15   Circuit's ruling.  They cannot adequately advocate for class members on teams of which they have

16   absolutely no knowledge and where their operative complaint blatantly references a desire for equal

17   treatment of the lacrosse team at the expense of all others.  (*See e.g.,* SAC ¶¶ 1, 17-19, 23, 25, 212,

18   213).[8]  The proposed representatives' actions to date make their conflict apparent.

19   **G.    Plaintiffs Do Not Identify Adequate Class Counsel.**

20        Plaintiffs proffered class counsel is also inadequate due to their prosecution of *this litigation*

21   to date, the conflicts they have created, and in placing their financial interest ahead of the needs of

22   the proposed class.  Adequacy of counsel is another valid and relevant basis for denying a motion

23   for class certification. *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346, 1352 (9th Cir.

24   1984).  "Failure to show adequacy of counsel under Rule 23(g) is effectively a failure to meet the

25   adequate representation requirement of Rule 23(a)(4) for class certification." *Varela v. Indus. Pro.*

26   *& Tech. Workers,* 2009 WL 10670788, at *3 (C.D. Cal. Oct. 28, 2009).

27

28   [8] Anders and Walburger additionally are insufficient representatives for those current and future students who have
     been "deterred" from participation, as they *were not*.

Defendants' Response in Opposition to Renewed Motion for Certification of Classes (1:21-cv-00179-KJM-BAM)

Proposed class counsel has placed aside the goals of the different classes they have sought to represent at various times in this case to the detriment of those classes.  Simultaneously, class counsel represented to the Ninth Circuit that they could sufficiently represent a broad and sweeping class of all current and future female student athletes at Fresno State, but at the same time sought to certify a lacrosse only class.  The zealous advocacy *either* class deserves is lacking, considering counsel's simultaneous attempt to create a *different* class.  *See Moore v. Margiotta*, 581 F. Supp. 649, 653 (E.D.N.Y. 1984) (counsel representing two separate classes pursuing the same limited funds disqualified because "[t]he interests need not conflict directly, but the mere fact of adjusting or compromising legal tactics or arguments to accommodate both classes of plaintiffs obviously impairs counsel's use of independent professional judgment as to each class."); *Eng. v. Apple Inc.,* 2016 WL 1188200, at *13 (N.D. Cal. Jan. 5, 2016) citing *Radcliffe v. Experian Info. Sols. Inc.,* 715 F.3d 1157, 1167 (9th Cir.2013) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel").  Adequacy of counsel cannot be pled in the alternative.

Next, proposed counsel's "greater concern for receiving a fee than for pursuing the class claims" confirms an irreconcilable conflict. *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1078, (2nd Cir. 1995).  While "class counsel has an ethical duty of undivided loyalty to the interests of the class, reason for concern remains [because] . . . . a rational, self-interested lawyer looks to maximize his or her net fee, and thus wants the representation to end at the moment where the difference between his or her fees and costs—which include not only the money that the lawyer spends in advancing his or her client's cause but also the opportunities for other work that the lawyer gives up by pursuing it—is greatest." *In re Cendant Corp. Litig.,* 264 F.3d 201, 255 (3rd Cir. 2001).  Thus, there is "reason to fear that class counsel will be highly imperfect agents for the class." *Id.*

In this case, Plaintiffs have not asserted a claim for damages, nor would damages be available in a Title IX action like this one. *Cummings v. Premier Rehab Keller, P.L.L.C.,* 142 S. Ct. 1562 (2022) (emotional distress damages not available under Spending Clause statutes).  Further, it is well-recognized under Title IX courts do not serve as *ad hoc* athletic directors, thus,

17

even if a court were to ever find a Title IX violation, it would direct the institution to create a plan to come into compliance.  *See Balow v. Michigan State University,* 24 F.4th 1051, 1061 (6th Cir. 2022) (recognizing that "a school may be 'entitled to determine its own method for achieving statutory compliance'").

Given the realities and limitations of potential recovery here, Fresno State's concern that Plaintiffs' counsel is more focused with driving up costs than resolution is highlighted when reviewing the original and current engagements between Anders and Walburger and their counsel. The initial engagement letter with lead counsel Arthur Bryant and the Bailey Glasser Firm stated that any number of third parties (including parents, alumni, and team supporters) may be providing class counsel with fees–creating the potential for conflict at any moment.  (ECF No. 133-1).  The engagement also prohibited Anders from settling the matter without the consent of counsel and not until "my attorneys … receive payment in accordance with this agreement." (*Id.*, ¶11.)

Plaintiffs' new retainer with Mr. Bryant and his new firm, the Clarkson Law Firm, again requires the class representative to agree that if Defendants are "willing to give me some or all of the relief I am seeking (or something else) if I agree to waive my claim to recover some or all of my costs, expenses, or attorneys' fees," that they will not enter into such an agreement and if they do, they must "pay my attorneys' costs, expenses, and attorneys' fees (hours worked times hourly rates) myself." (Ex. 4, p. 3).  This language inherently ensures Plaintiffs—recent college graduates that could likely never afford to pay the exorbitant fees—can only enter into an agreement that is acceptable to their attorneys.  In other words, the terms of the retainer agreement provide decision-making authority in the hands of class counsel, rather than Plaintiffs.

The retainer also indicates Clarkson may "associate with other counsel as they see fit" and "divide attorneys' fees in this case," but does not state it will obtain the client's consent in writing and provide the terms of such an agreement, as required under Cal. RPC 1.5.1(a)(2).  Notably, Plaintiffs have repeatedly refused to provide Fresno State with *any* retainer or fee-sharing agreement between proposed class counsel Caddell & Chapman and Plaintiffs, despite multiple requests, and the fact this Court has already held that this information is relevant and Plaintiffs'

waiver of any argument that they are privileged. (ECF No. 131, 134).[9]  Class actions are not meant to be lawyer-driven pursuits; proposed class counsel's conduct in keeping control over any possibility of resolution of this matter due to their desire to garner a fee makes them inadequate.

Finally, "[i]n assessing whether class representatives and their counsel will vigorously prosecute a class action litigation, courts may consider the actual progress of the proceedings to that point." *Kandel v. Brother Int'l Corp.*, 264 F.R.D. 630, 634 (C.D. Cal. 2010).  This lawsuit was filed in February of 2021.  (ECF No. 1).  Despite Rule 23(c)(1)(a)'s guidance that class certification should be sought "at an early practicable time after a person sues," Plaintiffs first sought to certify a class in February of 2022.  (ECF No. 88). *Kandle* 264 F.R.D. at 634 ("Delays in seeking class certification," and unprofessional conduct during discovery "are factors that suggest that the class representative is inadequate.").  Since that time, Plaintiffs (who have been represented by the same leas counsel throughout, Arthur Bryant) have only continued to prolong this matter and their client's claims are now moot and ripe for dismissal; these errors in the prosecution of this case makes proposed class counsel inadequate. *See Kaur v. Things Remembered, Inc.,* 2016 WL 11811049 (N.D. Cal, April 20, 2016) (Clarkson Law Firm held to be inadequate class counsel due to significant delay in seeking class certification, delays in obtaining discovery, and lack of depositions prior to discovery cut off).

As an example, while Fresno State understands Mr. Bryant transitioned law firms this summer, eleven appearances have been entered in this matter on behalf of Plaintiffs from three different law firms.  Proposed class counsel Caddell & Chapman, and the vast majority of Plaintiffs' legal team, has been involved in this case since its inception.  But Plaintiffs nonetheless requested a four-month long delay before filing their fourth motion for class certification. That attorneys from

---

[9] *See* Ex. 5, discovery dispute correspondence with counsel. "The Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine." *Physicians Healthsource, Inc. v. Masimo Corp., et al.*, 2019 WL 8755114, at *2 (C.D. Cal. July 30, 2019) (citing cases); *In re Michaelson*, 882 F.2d 882 (9th Cir. 1975).  "[R]etainer agreements may be relevant to the issue of adequacy in class certification." *Physicians Healthsource*, 2019 WL 8755114, at *2 (citing *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 959 (9th Cir. 2009)); *Zuehlsdorf v. FCA US LLC*, 2020 WL 8575138, at *3 (C.D. Cal. Dec. 15, 2020) ("Plaintiff's retainer and fee agreement with counsel may, among other things, reveal potential conflicts of interest."). Fresno State intends to file a motion seeking a copy of any Caddell & Chapman engagement or any fee sharing agreements that it can submit for the Court's review, if the parties cannot otherwise resolve this discovery dispute. The parties' counsel held a meet and confer meeting on November 25, 2024 to discuss Plaintiffs' counsel's continued refusal to produce Caddell & Chapman's engagement and fee-sharing agreements; Caddell & Chapman was conspicuously absent from the meet and confer.

1   Caddell & Chapman could not provide any assistance in briefing or in moving this case forward
2   during this transition raises a sincere question of adequacy.  Indeed, since the initiation of this
3   litigation, the attorneys from Caddell & Chapman have not engaged in communications with Fresno
4   State or its counsel, have not filed anything other than their appearances, and have refused to
5   provide any engagement or fee-sharing arrangements.  Their presence as class counsel in this matter
6   appears merely to be driving up costs.  *See, e.g., In re Allergan PLC Sec. Litig.,* 2020 WL 5796763
7   at *7 (S.D.N.Y. Sept. 29, 2020) (class certification denied because representative held inadequate;
8   court held "multiple firms tends to inflate legal fees to the detriment of the other class members"
9   and disagreed that "two firms can litigate as cheaply as one.").

10        Proposed counsel has shown a superior interest in pursuing their fees, multiplying those
11   fees, and unnecessarily prolonging this litigation, to the detriment to the class.  Ultimately, this
12   makes them inadequate to represent their proposed classes here, regardless of their qualifications
13   or past successes.

14   **IV.   CONCLUSION**

15        For all of these reasons, and the reasons set forth in its Motion to Dismiss on Mootness
16   Grounds (ECF No. 151), Fresno State requests that the Court deny Plaintiffs' Renewed Motion for
17   Certification in its entirety.

18                   Respectfully submitted,

19                   MILLER, CANFIELD, PADDOCK, AND STONE, P.L.C.

20                   By: */s/ Scott R. Eldridge*
21                       Brian M. Schwartz (P69018)
                         Scott R. Eldridge (P66452)
22                       Ashley N. Higginson (P83992)
                         Erika L. Giroux (P81998)
23                       One Michigan Ave. Suite 900
                         Lansing, MI 48933
24                       eldridge@millercanfield.com
25                       schwartzb@millercanfield.com
                         higginson@millercanfield.com
26                       giroux@millercanfield.com
     Dated: November 26, 2024       *Attorneys for Defendants*
27
28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on November 26, 2024, I electronically filed the foregoing document

3

with the Clerk of the Court using the ECF system that will send notification of such filing upon all

4

ECF filing participants.

5

MILLER, CANFIELD, PADDOCK, AND STONE, P.L.C.

6

*/s/ Scott R. Eldridge*
Scott R. Eldridge (P66452)

7

Attorneys for Defendants
One Michigan Avenue, Suite 900

8

Lansing, MI 48933

9

(517) 483-4918
eldridge@millercanfield.com

10

11

12

13

**SETTLEMENT DISCUSSION STATEMENT**

14

In accordance with this Court's Civil Standing Order, Rule 4(A)(d), the parties are not

15

actively engaged in settlement discussions.

16

MILLER, CANFIELD, PADDOCK, AND STONE, P.L.C.

17

*/s/ Scott R. Eldridge*
Scott R. Eldridge (P66452)

18

Attorneys for Defendants
One Michigan Avenue, Suite 900

19

Lansing, MI 48933

20

(517) 483-4918
eldridge@millercanfield.com

21

22

23

24

25

26

27

28