Michael A. Caddell (SBN 249469)
Cynthia B. Chapman (SBN 164471)
Amy E. Tabor (SBN 297660)
CADDELL & CHAPMAN
P.O. Box 1311
Monterey, CA 93942
Tel.: (713) 751-0400
Fax: (713) 751-0906
E-mail: mac@caddellchapman.com

Arthur H. Bryant (SBN 208365)
BAILEY & GLASSER, LLP
1999 Harrison Street, Suite 660
Oakland, CA 94612
Tel.: (510) 272-8000
Fax: (510) 436-0291
E-mail: abryant@baileyglasser.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### FRESNO DIVISION

| | |
|---|---|
| TAYLOR ANDERS, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>CALIFORNIA STATE UNIVERSITY, FRESNO, et al.<br><br>*Defendants*. | Case No. 1:21-cv-00179-AWI-BAM |

## DECLARATION OF ARTHUR H. BRYANT

I, Arthur H. Bryant, hereby declare as follows:

1. I am a partner at the law firm of Bailey & Glasser LLP, and one of the attorneys representing the Plaintiffs and the putative class in this action.

2. I am the lead counsel for the Plaintiffs in this case. Plaintiffs' Motion for Certification of Lacrosse Only Classes and, In the Alternative Subclasses ("Plaintiffs' Motion") seeks to have me and my co-counsel appointed as class counsel. ECF No. 117. As Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion explains in detail, we have previously served as class counsel in a wide range of sex discrimination, Title IX, civil rights, and other class actions throughout the nation. ECF No. 117-1, at 23-25. I have personally represented more women athletes and potential athletes successfully in Title IX litigation against schools and universities than any lawyer in America. ECF No. 117-1, at 24.

3. Defendants' Response in Opposition to Plaintiffs' Motion ("Defendant's Opposition") asserts that I and my co-counsel cannot adequately represent the proposed lacrosse only classes because of "the conflicts [we] have created in actively seeking to certify two conflicting classes and in placing [our] own financial interest ahead of the needs of the proposed class." ECF No. 120, at 19. This assertion is false and unjustified. I and my co-counsel are not seeking to certify two (or any) conflicting classes. And we are not placing our own financial interest ahead of the needs of the proposed classes in any way.

**Defendants' Assertion That We Are Seeking to Certify Two Conflicting Classes**

4. Plaintiffs' Motion for Class Certification, filed on February 25, 2022, sought to certify a class of "All present and future women students and potential students at Fresno State who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics there." ECF No. 88, at 2. The proposed class definition was based on the class definition

in *Cohen v. Brown v. Univ.*, 991 F.2d 888, 893 (1st Cir. 1993), a case I filed with co-counsel in 1992 and the U.S. Court of Appeals for the First Circuit, approving an amendment to the settlement originally reached in 1998, recently referred to as a "landmark Title IX case." *Cohen v. Brown Univ.*, 16 F.4th 935, 941 (1st Cir. 2021).

5.  In this case, however, the Court did not approve the class definition Plaintiffs proposed. On August 16, 2022, it entered an Order Denying Plaintiffs' Motion for Class Certification. ECF No. 93. It found that two separate classes needed to be defined, one for Plaintiffs' equal treatment claim and one for the Plaintiffs' effective accommodation claim. ECF No. 93, at 10. So the Court defined the two classes itself. It stated:

> As to the equal treatment claim, the Court will define the class as current and future female Fresno State students who: (i) participate or have participated in women's varsity intercollegiate athletics at Fresno State; and / or (ii) are able and ready to participate in women's varsity intercollegiate athletics at Fresno State but have been deterred from doing so by the treatment received by female varsity intercollegiate student-athletes at Fresno State. And as to the effective accommodation claim, the Court will define the class as current and future female Fresno State students who: (i) have lost membership on a women's varsity intercollegiate athletics team at Fresno State; (ii) have sought but not achieved membership on a women's varsity intercollegiate athletics team at Fresno State; and / or (iii) are able and ready to seek membership on a women's varsity intercollegiate athletics team at Fresno State but have not done so due to a perceived lack of opportunity.

ECF No. 93, at 10.

6.  The Court found that, as to these two classes, Plaintiffs had met all the requirements for certification, except that, based on the then-current record, the proposed class representatives did not satisfy the Federal Rule of Civil Procedure 23(a)(4) adequate representation requirement. ECF No. 93, at 17. It said, "there are evidently conflicts between the interests of the class representatives, as former members of the women's varsity lacrosse team, and current and future female students at Fresno State" and that the record "indicates that the principal purpose [of] this action is to protect (or restore) women's varsity lacrosse and other considerations are secondary to

that." ECF No. 93, at 20. It denied Plaintiffs' Motion for Class Certification "without prejudice to another motion for certification consistent with the findings in this order." ECF No. 93, at 21.

7. On October 20, 2022, Plaintiffs filed their Renewed Motion for Class Certification and, In the Alternative, Motion for Reconsideration, proposing to use the class definitions the Court had written. ECF No. 94. On November 11, 2022, however, the Court denied that motion. ECF No. 107. It held that the proposed class representatives (members of the women's lacrosse team) could not adequately represent a class of all female student athletes, even for liability only, because class members have "due process rights to vigorous sport-specific representation ... at all stages of . . . litigation." ECF No. 107, at 18. The Court noted, however, "that it is not uncommon for courts to certify a class—or subclass—specific to a single sport." ECF No. 107, at 18. It therefore said, "The Court will therefore grant Plaintiffs leave to bring a motion for class certification specific to women's lacrosse." ECF No. 107, at 19. And it warned, "To the extent Plaintiffs bring a motion that exceeds the scope of this leave in any material respect, the motion will be decided under a reconsideration standard or stricken." ECF No. 107, at 19.

8. Based on the Court's order, Plaintiffs filed their Motion for Certification of Lacrosse Only Classes and, in the Alternative Subclasses on January 27, 2023. ECF No. 117. They proposed certification of two classes, specific to women's lacrosse, using the definitions written by the Court. ECF No. 117, at 2. In the meantime, because Plaintiffs believe the Court's decisions denying certification of the classes of all women athletes and potential athletes they had previously proposed were erroneous, they filed a Petition for Review of those decisions with the U.S. Court of Appeals for the Ninth Circuit under Federal Rule of Civil Procedure 23(f). ECF No. 109. On February 27, 2022, that Petition was granted. ECF No. 118.

DECLARATION OF ARTHUR BRYANT Case No.1:21-cv-00179-AWI-BAM Page 3 of 7

9.     As a result, Plaintiffs are currently asking the Ninth Circuit to reverse the Court's previous orders denying certification of the classes of all women athletes defined by the Court and, per the Court's order of November 11, 2022, asking this Court to certify two classes specific to women's lacrosse, also using the definitions written by the Court.

10.    Defendants' assertion that Plaintiffs' counsel have somehow "created" "conflicts" by following this course of conduct or are "seeking to certify two conflicting classes" is not true. Plaintiffs' counsel sought certification of the class they originally thought appropriate based on longstanding law and then sought certification of the classes defined and described by the Court. Plaintiffs' counsel have created no conflicts here and are not seeking to certify any conflicting classes.

**Defendants' Assertion That We Are Placing Our Financial Interest Ahead of the Class**

11.    Defendants' assertion that Plaintiffs' counsel "are placing their own financial interest ahead of the needs of the proposed class" is also false. The very documents Defendants cite to support it shows it is not true.

12.    First, Defendants cite two letters discussing potential settlement of this litigation: a letter sent by Defendants' counsel Brian Schwartz to Plaintiffs' counsel Nicole Ballante on March 29, 2022, and Ms. Ballante's reply of April 1, 2022. (These letters are attached to Defendants' Opposition as Exhibit 3, but Defendants' Opposition incorrectly says, at 16, that they are attached as Exhibit 2 and were sent on March 18 and April 1. ECF No. 120, at 21.) Defendant's opposition says, "Proposed counsel refused to negotiate fees, unfurling any attempt at resolution." ECF No. 120, at 21.

13.    Ms. Ballante's letter, however, shows that is not so. It responds directly to the substantive statements in Mr. Schwartz's letter and then says, "Finally, we are unwilling to

DECLARATION OF ARTHUR BRYANT Case No.1:21-cv-00179-AWI-BAM Page 4 of 7

negotiate on fees before we have reached agreement on the substantive terms of any settlement." ECF No. 120-4, at 4. That is the position I have taken in every Title IX and other class action settlement negotiation in which I have been involved, for a simple reason: it is the approach ethics experts advise and prevents defense counsel from trying to get plaintiffs' counsel to trade relief for their clients for their fees (or vice versa). *See* The Impact Fund, *Class Action Settlement Ethics – Talk Class Relief First, Fees Later* (Sept. 22, 2015) available at https://www.impactfund.org/legal-practitioner-blog/class-action-settlement-ethics-talk-class-relief-first-fees-later. In this case, Defendants' Counsel unfurled any attempt at settlement when we took that position. So we never came close to an agreement on the substantive terms or negotiated fees.

14. Next, Defendants' Opposition cites Plaintiffs' Representation Agreement, saying, "The agreement states that any number of third parties (including parents, alumni, and team supporters) may be providing class counsel *with fees* – creating the potential for conflict at any moment." ECF No. 120, at 22. (emphasis added). But, again, the very document Defendants cite show that is not true. Paragraph 3 of the Representation Agreement, attached to Defendants' Opposition as part of Exhibit 4, says, "*The costs and expenses of this case* may be paid or advanced, in part, by third parties (for example, parents, alumni, and team supporters), but those third parties will not have any control of the case and my attorneys' ethical duties of representation will run to me, not to them." ECF No. 120-5, at 6. (emphasis added). This provision does not refer to fees. Moreover, in this case, this provision is irrelevant. No costs or expenses of this case were paid or advanced by third parties.

15. After that, Defendants' Opposition says Plaintiffs' Representation Agreement "prohibits Ms. Anders from settling *the matter* without the consent of counsel and not *until* 'my

attorneys …receive payment in accordance with this agreement." ECF No. 120, at 22. (emphasis in original). But, again, the document itself proves otherwise. Paragraph 3 of the Representation Agreement says, "I will not agree to any settlement that waives or settles *my attorneys' ability to recover their costs, expenses, or fees* without their consent." ECF No. 120-5, at 7. It does not address *settlement of the case*, i.e., "the matter." Similarly, Paragraph 11 says, "I agree not to make any settlement of any claim unless my attorneys … will receive payment in accordance with this agreement." ECF No. 120-5, at 8. Nothing in the Agreement "prohibits Ms. Anders from settling *the matter* without the consent of counsel" or "*until* 'my attorneys …receive payment in accordance with this agreement." 120-5, at 8. (emphasis added).

16. Finally, Defendants' Opposition charges obliquely that the sentences in Paragraphs 3 and 11 of the Representation Agreement referred to above somehow "run afoul of 42 U.S.C. § 1988(b), which provides a 'prevailing party'—not *counsel*—the right to recover attorneys' fees under Title IX." ECF No. 120, at 22. (emphasis in original). But this is also false. Nothing in the Representation Agreement says or suggests that at all.

17. To me, it is both shocking and offensive that, based on the misrepresentations and falsehoods reviewed above, Defendants are asserting that I and my co-counsel cannot adequately represent the class. Defendants' allegation that I and my co-counsel are somehow "placing their own financial interest ahead of the needs of the proposed class" is particularly offensive. I have spent almost my entire career as a public interest lawyer, fighting to advance the public good, without regard to my own financial interest.

18. For that reason, I and my co-counsel have concluded that an extraordinary step is required to show that Defendants' disgraceful attack on us is wrong. So, we and Ms. Anders are striking from our Representation Agreement the key portions about payment of our fees that

Defendants have referred to: (1) the sentence in Par. 3 that says, "I will not agree to any settlement that waives or settles my attorneys' ability to recover their costs, expenses, or fees without their consent," and (2) the sentence in Par. 11, which says, "Settlement. I agree not to make any settlement of any claim unless my attorneys, or their representatives, are present and will receive payment in accordance with this agreement."

19. We think striking those sentences demonstrates, clearly, that our interest in this case is what it always has been and will be: helping the female student-athletes at Fresno State hold the Defendants accountable for violating Title IX. A copy of the letter agreement striking those two sentences from our Representation Agreement with Ms. Anders is attached to this declaration. We anticipate striking those two sentences from our Representation Agreement with the other Plaintiffs in this case, too.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 13, 2023.

_____
Arthur H. Bryant (SBN 208365)

**BAILEY GLASSER** LLP

1999 Harrison Street
Suite 660
Oakland, CA 94612
Tel: 510.272.8000

Arthur H. Bryant
abryant@baileyglasser.com

March 9, 2023

**SENT VIA U.S. MAIL AND ELECTRONIC MAIL**
Taylor I. Anders
7575 SW 80th Place
Portland, OR 97223

RE: *Anders v. California State University, Fresno* - Striking Two Sentences from Your Representation Agreement in Response to Defendants' Latest Attack

Dear Taylor:

As you know, the Defendants are now trying to prevent this case from going forward as a class action by arguing that you and we cannot adequately represent the proposed class. Among other things, they say that certain provisions in your Representation Agreement create a conflict between you and us and show we have "an interest in pursuing [our] fees to the detriment of the class."

We think those arguments are meritless and will explain why in our reply brief. We believe the best way to show that Defendants' attack on us is wrong, however, is to strike from your Representation Agreement the key portions they refer to: (1) the sentence in Par. 3 that says, "I will not agree to any settlement that waives or settles my attorneys' ability to recover their costs, expenses, or fees without their consent." and (2) the sentence in Par. 11, which says, "Settlement. I agree not to make any settlement of any claim unless my attorneys, or their representatives, are present and will receive payment in accordance with this agreement." We think striking those sentences will demonstrate, clearly, that our interest is what it always has been and will be: helping you and the other female student-athletes at Fresno State hold the Defendants accountable for violating Title IX.

If you agree to strike these two sentences from your Representation Agreement, please sign and date this letter in the spaces below, scan it, and send it back to me. I do want to advise you to seek the advice of an independent lawyer of your choice on this and we will, of course, give you a reasonable opportunity to do so.

Sincerely,

Arthur H. Bryant

SO AGREED:

_____     3/12/23
Taylor Anders                                    Date