Michael A. Caddell (SBN 249469)
Cynthia B. Chapman (SBN 164471)
Amy E. Tabor (SBN 297660)
**CADDELL & CHAPMAN**
P.O. Box 1311
Monterey, CA 93942
Tel.: (713) 751-0400
Fax: (713) 751-0906
*mac@caddellchapman.com*
*cbc@caddellchapman.com*
*aet@caddellchapman.com*

Arthur H. Bryant (SBN 208365)
**ARTHUR BRYANT LAW, P.C.**
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Tel.: (510) 391-5454
*arthur@arthurbryantlaw.com*

*Class Counsel*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAYLOR ANDERS, HENNESSEY EVANS, ABBIGAYLE ROBERTS, MEGAN WALAITIS, TARA WEIR, and COURTNEY WALBURGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA STATE UNIVERSITY, FRESNO and BOARD OF TRUSTEES OF CALIFORNIA STATE UNIVERSITY,<br><br>Defendants. | Case No. 1:21-cv-00179-KJM-BAM<br><br>**[PROPOSED] CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Date: September 19, 2025<br>Time: 9:00 a.m. PST<br>Location: Robert E. Coyle United States Courthouse, courtroom 8 (virtual)<br>Judge: Hon. Barbara A. McAulifffe |

# [PROPOSED] CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement") is entered into, subject to the Court's approval, between Class Representatives Taylor Anders and Courtney Walburger, individually and on behalf of the classes they represent (defined below); other named Plaintiffs, Hennessey Evans, Abbigayle Roberts, Megan Walaitis, and Tara Weir, individually and as class members (collectively the Class Representatives and the other named Plaintiffs are referred to as "Plaintiffs"); and Defendant Board of Trustees of California State University ("Fresno State").[1] Plaintiffs and Fresno State are collectively referred to in this Agreement as the "Parties." This Agreement resolves all claims asserted in any Complaint filed in E.D. Ca. Case No. 1:21-cv-00179-KJM-BAM, including but not limited to those asserted in the Second Amended Complaint filed on August 12, 2021, that remained after the Court's dismissal of Count II of the Second Amended Complaint on October 29, 2021. (Dkt. Nos. 59 and 73).

## Background

On February 12, 2021, five of the Plaintiffs[2] filed the instant lawsuit against Fresno State alleging discrimination against female students at Fresno State on the basis of their sex in violation of Title IX of the Education Amendments of 1972 ("Title IX"). On August 12, 2021, Plaintiffs filed a Second Amended Complaint. (Dkt. No. 59). On October 29, 2021, the Court dismissed Plaintiffs' claim that Fresno State was violating Title IX by providing unequal athletic financial aid and denied Defendants' motion to dismiss Plaintiffs' other claims. (Dkt. No. 73).

Specifically at the time of this settlement, Plaintiffs allege that Fresno State is depriving female students at Fresno State of varsity athletic participation opportunities and treatment and benefits equal to those provided to male varsity student-athletes. (Dkt. No. 59). Fresno State denies these allegations.

---

[1] Plaintiffs also sued "California State University, Fresno," which the parties agree was an incorrectly named party. This Settlement Agreement resolves all claims against all defendants.

[2] Courtney Walburger joined the suit as a Plaintiff with the filing of the Amended Complaint on May 4, 2021. (Dkt. No. 36).

On March 10, 2025, the Court certified two classes pursuant to Federal Rule of Civil Procedure 23(b)(2). (Dkt. No. 184 at 9-10, 19). For Plaintiffs' claim for equal participation opportunities, the Court defined the class as:

> Current and future female Fresno State students who: (i) have lost membership on a women's varsity intercollegiate athletics team at Fresno State; (ii) have sought but not achieved membership on a women's varsity intercollegiate athletics team at Fresno State; and/or (iii) are able and ready to seek membership on a women's varsity intercollegiate athletics team at Fresno State but have not done so due to a perceived lack of opportunity.

*Id*. For Plaintiffs' claim for equal athletic treatment and benefits, the Court defined the class as:

> Current and future female Fresno State students who: (i) participate or have participated in women's varsity intercollegiate athletics at Fresno State; and/or (ii) are able and ready to participate in women's varsity intercollegiate athletics at Fresno State but have been deterred from doing so by the treatment received by female varsity intercollegiate student-athletes at Fresno State.

*Id.*

Following the Court's grant of class certification, the Parties engaged in discussions facilitated by a neutral third party, United States Magistrate Judge Barbara A. McAuliffe, in an attempt to reach a mutually agreeable resolution of the litigation. As a result of those discussions, in lieu of continuing the present litigation, the Parties have agreed to settle all claims pursuant to the terms set forth in this Agreement. The Parties make the promises and representations contained herein for good and valuable consideration, the adequacy of which they hereby acknowledge.

## TERMS

1. Fresno State acknowledges its obligation under the law to comply with Title IX in the operations of Fresno State's intercollegiate athletic program. Plaintiffs agree that the obligations assumed by Fresno State in this Agreement satisfy all of Plaintiffs' claims and that Plaintiffs will not seek further relief against Fresno State based on allegations that Fresno State allegedly deprived female students of athletic participation opportunities and athletic treatment and benefits in violation of Title IX.

### A. Title IX Gender Equity Review

2. Fresno State agrees to hire a mutually agreeable, neutral, third-party ("Title IX Reviewer"), no later than 14 days after the Court's final approval of this Agreement, to conduct a Title IX gender

equity review to address Fresno State's varsity athletic participation opportunities and to compare the athletic benefits and treatment afforded members of Fresno State's male and female varsity sports programs (the "Gender Equity Review"). The Gender Equity Review will not address Fresno State's athletic financial aid; issues related to Name, Image, and Likeness ("NIL"); or any actions taken by Fresno State as a result of the class action settlement in *In re College Athlete NIL Litig.* ("*House v. NCAA*"), No. 4:20-CV-03919 (N.D. Cal.).

3. Regarding athletic participation, Fresno State agrees that during the term of this Agreement, due to the elimination of the women's varsity lacrosse team, it needs to be in compliance with Prong 1 of the Three-Part Test as set forth in the 1979 *A Policy Interpretation: Title IX and Intercollegiate Athletics* and the 1996 *Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test*. The Parties agree they will view Fresno State as providing substantially proportionate participation opportunities if it meets the participation gap thresholds outlined in paragraph 20.

4. The Gender Equity Review will be limited to determining whether Fresno State has counted "participants" consistent with Title IX, and the Title IX Reviewer will also be responsible for verifying the participation gap each year during the pendency of the Agreement.

5. The Title IX Reviewer will conduct the review in accordance with the process and procedures adopted by the Office for Civil Rights of the U.S. Department of Education in the Title IX Athletics Investigator's Manual adopted in 1990 and available at https://files.eric.ed.gov/fulltext/ED400763.pdf.

6. The Title IX Reviewer selected by the Parties shall not have a relationship to the Parties, attorneys, action, or court that would create the appearance of bias or impropriety or require disqualification of a judge under 28 U.S.C. § 455.

7. The Parties have agreed that Gabe Feldman of Tulane University meets these requirements and will serve as the Title IX Reviewer. Mr. Feldman has agreed to prepare the Gender Equity Review for a flat fee of $25,000, plus reasonable expenses consistent with Fresno State's policies. Additionally, Mr. Feldman has communicated to the Parties that he is willing to perform ongoing additional work at actual cost, not to exceed $10,000 annually.

8. The Title IX Reviewer will complete the Gender Equity Review no later than June 30, 2026, and issue a written report of their findings.

9. A summary document drafted by the Title IX Reviewer disclosing the findings of the Gender Equity Review will be provided to class counsel and made public by posting it on Fresno State's varsity athletics website.

### B. Title IX Gender Equity Plan

10. Within 60 days after the Gender Equity Review is completed, absent extenuating circumstances, Fresno State will use the Gender Equity Review and work with the Title IX Reviewer to develop a Gender Equity Plan that will address the findings of the Title IX Gender Equity Review.

11. The Parties agree that Fresno State will have discretion to determine how to address items and issues identified in the Gender Equity Review, including whether to increase or decrease any athletic budget or expenditure. The Parties also agree that, in creating and implementing the Gender Equity Plan, nothing will require Fresno State to increase its overall athletics budget to address any items or issues identified in the Gender Equity Review.

12. Fresno State will develop the Gender Equity Plan in consultation with the Title IX Reviewer. Prior to Fresno State formally adopting the Gender Equity Plan, the Title IX Reviewer must approve of the Gender Equity Plan and be satisfied that, once Fresno State has implemented it, Fresno State's intercollegiate varsity athletic program will be in full compliance with Title IX for participation and treatment and benefits by the end of the 2027-28 academic year and will remain in compliance for future years. Such approval of the Gender Equity Plan will not be unreasonably withheld.

13. Fresno State will begin implementing the Gender Equity Plan starting September 1, 2026, and will complete implementation of the Gender Equity Plan by the end of the 2027-28 academic year, absent extenuating circumstances leading to the need to request reasonably necessary extensions, as determined by the Title IX Reviewer. Fresno State will notify class counsel of all extenuating circumstances and requested extensions when or soon after they are requested, and the Title IX Reviewer will communicate their determination to the Parties' counsel.

14. Once it is implemented, the Gender Equity Plan will confirm Fresno State is in compliance with Title IX's requirements to provide equal varsity athletic participation opportunities and equal athletic treatment and benefits to male and female student-athletes.

15. The Gender Equity Plan will be provided to class counsel and made public by posting it on the Fresno State varsity athletics website.

16. To ensure the Title IX Reviewer is able to monitor ongoing compliance with this Agreement and Fresno State's obligations pursuant to the Gender Equity Plan, Fresno State agrees that, at the end of each academic year (2025-26, 2026-27, 2027-28, 2028-29), it will provide the Title IX Reviewer with the following documents:

   a. Fresno State's full-time undergraduate enrollment numbers for males and females;
   b. Final squad lists for all varsity sports;
   c. Seasons of competition data for all varsity sports;
   d. CARA Data—if requested;
   e. All athletic financial budgets and expenditures divided by team for all varsity sports—if requested; and,
   f. Any other documents requested by the Title IX Reviewer.

17. Pursuant to the terms of this Agreement, and only as specified subsequently herein, during the term of this Agreement, the Parties agree to exchange information and confer regarding progress toward completing and implementing the Gender Equity Plan and confirming Fresno State's Title IX compliance.

18. To ensure that class counsel and all class members are able to monitor progress towards and compliance with this Agreement, Fresno State will make an annual summary update on the Gender Equity Plan publicly available on Fresno State's athletic department website by July 31 following each academic year from 2025-2026 through 2028-2029.

19. While Fresno State will continue to comply with Title IX in its intercollegiate athletic program after July 31, 2029, Fresno State will have no further obligations under this Agreement after July 31, 2029.

### C. Fresno State Participation Gap

20. Starting with the 2025-2026 academic year, if the women's participation gap at Fresno State is 40 or larger in any two consecutive academic years, or 30 or larger in any three consecutive academic years, Fresno State will add a women's varsity team, if, after consultation with the Title IX Reviewer, there are no alternative approaches available to shrink the gap.

21. Nothing in this agreement requires Fresno State to eliminate any varsity teams.

### D. Reasonable Costs and Reasonable Attorneys' Fees

22. Fresno State agrees to pay a negotiated sum of $900,000 for the reasonable attorneys' fees and costs Plaintiffs incurred pursuing this litigation. Plaintiffs agree that this payment resolves all claims for attorneys' fees, costs, and expenses incurred in this litigation, up to and including all work spent monitoring.

23. Fresno State shall issue payment for those reasonable attorneys' costs and fees 30 days after the Court's final approval of this Agreement via ACH, provided that Plaintiffs complete all required forms.

24. Any attorneys' fees and/or costs liens from former Plaintiffs' firms will be responsibility of class counsel, Arthur Bryant.

### E. Class Notice

25. Pursuant to Federal Rule of Civil Procedure 23(e), the Parties agree that notice of this proposed Agreement should be provided to the members of the classes in a form approved by the Court. The Parties propose that the Court approve the form of notice set forth in **Exhibit A**.

26. Upon the Court's approval of the form of notice, Fresno State shall timely send an email to the last known Fresno State email address assigned to all female undergraduate students from August 23, 2018 to the present, including all female students committed to enroll at Fresno State beginning Fall 2025, which will include a link to the notice that is posted on the University's athletics website. The Parties will make reasonable efforts to provide notice to any Class members whose emails "bounceback" as not received. The Parties will confer and adopt any additional steps appropriate to address the question of "bouncebacks emails" and will detail the number of "bounceback emails" and the Parties efforts to provide notice to those individuals in their Motion

6

for Final Approval. Fresno State shall also disseminate the notice by any other reasonable means the Court may direct to effectuate notice to all class members.

27. Fresno State shall be responsible for all costs of providing the notice.

28. Upon the Court's final approval of this Agreement, Fresno State shall provide notice of such approval and of the availability of copies of this Agreement by the same means used to distribute the class notice. In addition, Fresno State shall provide such notice to all personnel in Fresno State's athletic department, and all other individuals Fresno State expects to participate in the implementation of this Agreement.

### F. General Provisions

29. This Agreement shall remain in effect through July 31, 2029.

30. Except as stated in Paragraphs 31 and 32, the parties agree that all claims asserting violations of Title IX regarding athletic participation opportunities and athletic treatment and benefits that were asserted or that could have been asserted in this case are forever and irrevocably released by Plaintiffs individually and on behalf of the class members. Additionally, Plaintiffs agree that their individual claims asserting violations of Title IX regarding athletic financial aid that were asserted or that could have been asserted in this case are forever and irrevocably released.

31. Nothing in this Agreement is intended or shall be construed to release any potential claims or limit Plaintiffs' or the class members' rights to assert claims under Title IX for any claims that may accrue after June 6, 2025 related to Name, Image, and Likeness ("NIL") or any actions taken by Fresno State as a result of the class action settlement in *In re College Athlete NIL Litig. ("House v. NCAA")*, No. 4:20-CV-03919 (N.D. Cal.).

32. Nothing in this Agreement is intended or shall be construed to release any potential claims or limit Plaintiffs' rights to assert claims under Title IX for alleged unequal athletic financial aid for any claims that may accrue after the final approval of this Agreement.

33. Nothing in this Agreement is intended or shall be construed to release any potential claims or limit Plaintiffs' or the class members' rights to challenge Fresno State's compliance with Title IX for alleged unequal athletic participation opportunities and/or unequal athletic treatment and benefits that accrue after the termination of this Agreement.

34. Fresno State makes no admission of liability in regard to Plaintiffs' claims, and nothing in this Agreement shall be construed as an admission of such liability.

35. The Class Representatives, on behalf of the class, and Plaintiffs agree that, during the term of this Agreement, they will not challenge, file a lawsuit regarding, or otherwise pursue claims against Fresno State with respect to Fresno State's compliance with Title IX in regard to the allocation of varsity athletic participation opportunities to female and male student-athletes or the relative treatment and benefits provided to female and male student-athletes, except as necessary to enforce this Agreement or as specifically permitted by this Agreement.

36. Plaintiffs agree to dismiss their claims with prejudice following the Court's final approval of this Agreement. However, the parties will provide the Court with the signed Agreement and request that the Court attach the signed Agreement to the Court's Order approving this Agreement. The Court will retain jurisdiction over this action for the purpose of enforcing the terms of this Agreement.

37. The terms of this Agreement have been negotiated by the Parties, with the assistance of their respective legal counsel, through a neutral third-party United States Magistrate Judge serving as a mediator. By their signature hereof, the Parties expressly warrant that they have read this Agreement, understand its terms, have had the opportunity to confer with legal counsel regarding its contents, and are signing this Agreement of their own free will.

38. If the Court declines to approve this Agreement, then the Parties will return to their positions with respect to this litigation as if they had never signed this Agreement. They agree, however, to negotiate in good faith to address any concerns the Court may have had with approving this Agreement.

39. This Agreement may be signed in counterparts by original, facsimile, or electronic signature. The Agreement will be deemed fully executed when all Parties and their counsel have returned their executed signature pages to Plaintiffs' counsel.

40. In the event that this Agreement or any provision hereof is construed or determined to be ambiguous by any court of competent jurisdiction, the Parties agree that each Party, through its attorneys, has contributed to the preparation of this Agreement and that the Parties have jointly

written or composed the clauses contained herein, and that no Party shall be given any advantage over the other Party under the laws of construction of instruments based upon the authorship of this Agreement.

41. It is further understood and agreed that, if any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, that provision shall be severed, and the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

42. This Agreement embodies the entire agreement between the Parties and supersedes any and all prior agreements, arrangements, or understandings between the Parties relating to this subject matter. This Agreement may not be modified except by order of the Court or in a writing signed by all Parties and approved by the Court.

43. The Parties agree to cooperate fully to execute any and all supplementary documents and take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

| | | |
|---|---|---|
| 1 | Dated: September 19, 2025 | Respectfully Submitted, |
| 2 | | */s/ Lori Bullock* |
| 3 | | Lori Bullock (*pro hac vice*) |
| | | **BULLOCK LAW PLLC** |
| 4 | | 309 E. 5th Street, Suite 202B |
| | | Des Moines, Iowa 50309 |
| 5 | | Tel.: (515) 423-0551 |
| | | *lbullock@bullocklawpllc.com* |
| 6 | | |
| 7 | | Arthur H. Bryant (SBN 208365) |
| | | **ARTHUR BRYANT LAW, P.C.** |
| 8 | | 1999 Harrison Street, 18th Floor |
| | | Oakland, CA 94612 |
| 9 | | Tel.: (510) 391-5454 |
| | | *arthur@arthurbryantlaw.com* |
| 10 | | |
| 11 | | Michael A. Caddell (SBN 249469) |
| | | Cynthia B. Chapman (SBN 164471) |
| 12 | | Amy E. Tabor (SBN 297660) |
| | | **CADDELL & CHAPMAN** |
| 13 | | P.O. Box 1311 |
| | | Monterey, CA 93942 |
| 14 | | Tel.: (713) 751-0400 |
| | | Fax: (713) 751-0906 |
| 15 | | *mac@caddellchapman.com* |
| 16 | | *cbc@caddellchapman.com* |
| | | *aet@caddellchapman.com* |
| 17 | | |
| 18 | | *Class Counsel* |

Dated: September 19, 2025          Respectfully Submitted,

*/s/ Brian M. Schwartz*
Scott R. Eldridge (Mich. Bar P66452)
Brian M. Schwartz (Mich. Bar P69018)
Erika L. Giroux (Mich. Bar P81998)
Ashley N. Higginson (Mich. Bar P83992)
**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Tel: (313) 963-6420
eldridge@millercanfield.com
schwartzb@millercanfield.com
giroux@millercanfield.com
higginson@millercanfield.com

Rob Bonta (SBN 202668)
Jodi L. Cleesattle (SBN 230537)
Jennifer L. Santa Maria (SBN 225875)
**ATTORNEY GENERAL OF CALIFORNIA**
600 West Broadway, Suite 1800
San Diego, CA 92101
Tel: (619) 738-9099
Fax: (619) 645-2012
Jennifer.SantaMaria@doj.ca.gov

*Attorneys for Defendants*

**Plaintiffs**

_____                    Date:_____
Taylor Anders


_____                    Date:_____
Courtney Walburger


_____                    Date:_____
Hennessey Evans


_____                    Date:_____
Abbigayle Roberts


_____                    Date:_____
Megan Walaitis


_____                    Date:_____
Tara Weir


**Defendants**


_____                    Date:_____
Signature

Saúl Jiménez-Sandoval, President
California State University, Fresno
On Behalf of Board of Trustees of California State University[LB1]