1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   TAYLOR ANDERS, et al.,                 Case No.  1:21-cv-00179-KJM-BAM

11              Plaintiffs,
                                            **FINDINGS AND RECOMMENDATIONS**
12        v.                                **GRANTING PLAINTIFFS' MOTION (1)**
                                            **PRELIMINARILY APPROVING THE**
13   CALIFORNIA STATE UNIVERSITY,           **CLASS ACTION SETTLEMENT; (2)**
     FRESNO and BOARD OF TRUSTEES OF        **APPROVING THE NOTICE; AND (3)**
14   CALIFORNIA STATE UNIVERSITY,           **SETTING A HEARING FOR FINAL**
     Defendants.                            **APPROVAL OF THE CLASS ACTION**
15                                          **SETTLEMENT**

16                                          (Doc. 208)

17                                          **Final Fairness Hearing:**

18                                          **November 17, 2025 at 10:00 a.m.**
                                            **Courtroom 3 (KJM)**
19                                          **Robert T. Matsui United States Courthouse,**
                                            **501 I Street, Sacramento, CA, 95814**
20

21

22

23        Presently pending before the Court is the Joint Motion for Preliminary Approval of Class

24   Action Settlement under Federal Rule of Civil Procedure 23filed by Plaintiffs Taylor Anders and

25   Courtney Walburger, as named representatives of the Classes, Hennessey Evans, Abbigayle

26   Roberts, Megan Walaitis, and Tara Weir, as Class members (collectively "Plaintiffs"), and

27   Defendant Board of Trustees of California State University ("Fresno State").[1]  The motion was

28   _____
     [1] The parties represent that "Fresno State" refers to Defendant Board of Trustees of California

                                            1

referred to United States Magistrate Judge Barbara A. McAuliffe for preparation of Findings and Recommendations. 28 U.S.C. § 636(b)(1)(B); Doc. 210.[2]  A hearing on the motion was held via Zoom video conference on September 19, 2025, before the Honorable Barbara A. McAuliffe. Counsel Lori Bullock, Arthur Bryant, and Michael Caddell appeared by video on behalf of Plaintiffs.  Counsel Brian Schwartz appeared by video on behalf of Defendant Fresno State.

At the hearing on September 19, 2025, the Court requested changes to: (1) the Notice to Class Members, and (2) clarification of email notice to the Class Members in the Settlement Agreement.  Plaintiffs filed supplemental briefing on September 23, 2025.  (Doc. 213.)  The supplemental briefing includes the Settlement Agreement (Doc. 213) and the Notice (213-1) to class members.  Each incorporate the Court's changes.

For the following reasons, the Court RECOMMENDS the motion for preliminary approval of the Settlement Agreement be granted; the Clarkson Law Firm and Caddell & Chapman, to the extent necessary, be reappointed as Class Counsel; Plaintiffs Anders and Walburger, to the extent necessary, be reappointed as Class Representatives, and dissemination of the Notice to the Class be ordered pursuant to the proposed notice plan.

## **BACKGROUND**

**A.    Background**

Fresno State eliminated its women's lacrosse team, along with its men's tennis and wrestling teams, from its varsity intercollegiate athletics program at the end of the 2020-2021 academic year.  Plaintiffs Taylor Anders, Hennessey Evans, Abbigayle Roberts, Megan Walaitis, Tara Weir, and Courtney Walburger were then female students and varsity athletes at Fresno State.  (Doc. 208-1 at 2.)  On February 12, 2021, five Plaintiffs filed the instant lawsuit against Fresno State alleging discrimination against female students at Fresno State on the basis of their sex in violation of Title IX of the Education Amendments of 1972 ("Title IX").  *Id.*  Plaintiffs

---

State University, which is the State of California acting in its higher education capacity (mistakenly also sued as "California State University, Fresno").  (Doc. 208-1 at 1 n. 1.)

[2] On July 22, 2025, Plaintiffs and Fresno State waived disqualification of the settlement conference judge, Barbara A. McAuliffe, to decide by Finding and Recommendation any post-settlement conference motions.  (Doc. 206.)

alleged that Fresno State violated Title IX by failing to provide female students with equal opportunities to participate in varsity athletics, equal athletic financial aid, and treatment and benefits equal to those provided to male athletes. (Doc. 1.) Plaintiffs moved for a preliminary injunction, asking the district court to stay the elimination of the women's lacrosse team and treat the women's lacrosse team equally with other teams for the academic year 2020-2021. (Doc. 2.) The Court denied Plaintiffs' request to reinstate the women's lacrosse team, but granted their motion in part with respect to equal treatment and benefits. (Doc. 35.) Specifically, the Court imposed a preliminary injunction requiring Fresno State to treat the women's lacrosse team equally for the remainder of the 2020–2021 academic year, but did not block Fresno State from eliminating the women's lacrosse team. Further law and motion occurred after the Court's ruling and on August 12, 2021, Plaintiffs filed the operative Second Amended Complaint. (Doc. 59.) On October 29, 2021, the Court dismissed Plaintiffs' claim that Fresno State was violating Title IX by providing unequal athletic financial aid and denied Defendants' motion to dismiss Plaintiffs' effective accommodation and equal treatment claims. (Doc. 73.) The claims which remained were denial of equal participation opportunities and denial of equal athletic treatment and benefits. On December 17, 2021, the case was then scheduled for discovery, and the parties undertook discovery related to class certification. (Doc. 83, Preliminary Scheduling Order.)

On February 22, 2022, Plaintiffs filed their motion for class certification. Fresno State opposed the motion. (Doc. 88, 89.) In deciding the motion, the Court held that Plaintiffs had met the numerosity, commonality, and typicality requirements of Rule 23(a), but denied class certification without prejudice ruling Plaintiffs had not established the proposed named representatives were "adequate." (Doc. 93.) Plaintiffs filed a Rule 23(f) petition with the Ninth Circuit Court of Appeals, challenging the denial of class certification, and while the appeal was pending, this Court stayed the case pending the outcome of the appeal. (Doc. 109, 136.) Ultimately, the Ninth Circuit vacated the denial of class certification on Plaintiffs' effective accommodation claim and their equal treatment claim. (Doc. 139, 140.)

Upon remand, Plaintiffs filed a renewed motion for class certification, and Fresno State again moved to dismiss on the grounds the action was moot because all named Plaintiffs had

1   graduated from Fresno State.  On March 7, 2025, the Court denied Fresno State's motion to

2   dismiss and granted Plaintiffs' motion for class certification as to two Rule 23(b)(2) classes: the

3   equal participation opportunities class and the equal treatment and benefits class.  (Doc. 184.)

4   The Court also appointed Class Counsel – the Clarkson Law Firm and Caddell & Chapman - who

5   are the counsel seeking Preliminary and Final Approval of the settlement.  *Id.* The Court also

6   appointed class representatives. (Doc. 184 at 14 ("The court finds that Anders and Walburger are

7   adequate named representatives for both the effective accommodation class and the equal

8   treatment class.")).

9   **B.      Events Leading to the Settlement**

10  Following the class certification of the two classes, the parties agreed to engage in

11  settlement discussions facilitated by United States Magistrate Judge Barbara A. McAuliffe. (Doc

12  191.)  On June 5, 2025, the parties engaged in a full day of mediation with Judge McAuliffe and

13  continued negotiations after formal mediation sessions.  (Doc. 200, 202, 205, 207.)  On August 6,

14  2025, the parties returned for a second day of mediation with Judge McAuliffe.  (Doc. 207.)

15  After productive discussions and negotiations that took place over the course of two months, the

16  parties reached an agreement to settle the litigation.  After over four years of hard-fought

17  litigation, the parties agreed to settle the case according to the terms of the Settlement

18  Agreement.[3] (Doc. 208-3, "Settlement Agreement.")

19  **C.      Summary of the Proposed Settlement**

20  **1.   The Classes**

21  The Court previously certified two classes under Fed. R. Civ. P. 23(b)(2), which are the

22  same classes that are being settled.  (Doc. 184.)  For Plaintiffs' claim for equal participation

23  opportunities, the Court defined the class as:

24  Current and future female Fresno State students who: (i) have lost membership on a
25  women's varsity intercollegiate athletics team at Fresno State; (ii) have sought but

26  ───────────────
27  [3] At the hearing on preliminary approval, the Court noted that the Settlement Agreement
    presented in the motion for preliminary approval was not executed.  The parties agreed that the
    Settlement Agreement was in fact their agreement and that a fully executed Settlement
28  Agreement would be presented in the motion for the Final Fairness Hearing.

not achieved membership on a women's varsity intercollegiate athletics team at Fresno State; and/or (iii) are able and ready to seek membership on a women's varsity intercollegiate athletics team at Fresno State but have not done so due to a perceived lack of opportunity.

For Plaintiffs' second claim for equal athletic treatment and benefits, the Court defined the class as:

Current and future female Fresno State students who: (i) participate or have participated in women's varsity intercollegiate athletics at Fresno State; and/or (ii) are able and ready to participate in women's varsity intercollegiate athletics at Fresno State but have been deterred from doing so by the treatment received by female varsity intercollegiate student-athletes at Fresno State.

### 2. Terms of the Settlement

The terms of the settlement provide for equitable relief as set forth below.  The second amended complaint did not request monetary relief and no such relief, aside from attorneys' fees and costs, are provided for in the Settlement Agreement.  The Settlement agreement provides for:

(1) appointing a mutually agreed-upon third-party to conduct a Title IX Gender Equity Review under an agreed protocol.  Fresno State agrees to hire a neutral third-party to conduct a Gender Equity Review of its athletic department using the process consistent with the U.S. Department of Education's Office for Civil Rights' 1990 Title IX Investigator's Manual. (Settlement Agreement ¶¶ 2–8.)

(2) developing a Gender Equity Plan to ensure compliance with Title IX requirements for varsity athletic participation opportunities and athletic treatment and benefits to male and female student-athletes.  (Settlement Agreement ¶¶ 10–17.)  Fresno State will begin implementing the Gender Equity Plan starting September 1, 2026, and will complete implementation of the Gender Equity Plan by the end of the 2027-28 academic year, absent extenuating circumstances.  *Id.* at ¶ 13.

(3) publication of annual summary reports to confirm implementation of the Gender Equity Plan on Fresno State's athletic department website by July 31 following each academic year from 2025-2026 through 2028-2029.  (Settlement Agreement ¶18.)

(4) agreeing that, if the women's participation gap at Fresno State is 40 participants or

larger in any two consecutive academic years, or 30 participants or larger in any three consecutive academic years, Fresno State will add a women's varsity team if there are no available alternative means to shrink the participation gap.  (Settlement Agreement ¶ 20.)

(5) providing notice of the Gender Equity Review by posting a summary document on the athletic program's websites.  (Settlement Agreement ¶ 20.)

### 3.    Scope of Release

The parties agree that all claims asserting violations of Title IX regarding athletic participation opportunities and athletic treatment and benefits that were asserted or that could have been asserted in this case are forever and irrevocably released by Plaintiffs individually and on behalf of the class members.  (Settlement Agreement ¶ 30.)  However, Plaintiffs retain any potential claims "under Title IX for any claims that may accrue after June 6, 2025 related to Name, Image, and Likeness ("NIL") or any actions taken by Fresno State as a result of the class action settlement in *In re College Athlete NIL Litig.* ("*House v. NCAA*"), No. 4:20-CV-03919 (N.D. Cal.)."  (Settlement Agreement ¶ 31.)  Other potential claims are also reserved to Plaintiffs. (Settlement Agreement ¶¶ 32-33.)

### 4.    Notice

The parties have provided a proposed Notice that they intend to send to class members. (Doc. 208-4, Exhibit B and as revised Doc. 213-1, "Notice."[4])  The Notice to class members explains the nature of the controversy, the details of the Settlement Agreement, the right of class members to object to it, and if they submit a timely objection to the Court, to appear and be heard at the "Fairness Hearing."  *Id.*

The Settlement Agreement states that upon approval of the Notice, Fresno State shall timely send an email to the known Fresno State email address accounts assigned to all female undergraduate students from August 23, 2018 to the present, including all female students committed to enroll at Fresno State beginning Fall 2025, which will include a link to the notice

---

[4] At the hearing on preliminary approval, the Court requested for revisions to the Notice, which the parties made and provided in the Doc. 213-1.

that is posted on the University's athletics website.  (Settlement Agreement ¶ 26.)  In addition, Fresno State shall also disseminate the notice by any other reasonable means the Court may direct to effectuate notice to all class members.  *Id.*  Fresno State will also provide notice of the preliminary approval of the class settlement and will provide notice to all personnel in Fresno State's athletic department and others who will participate in the implementation of the Settlement Agreement.  (Settlement Agreement at ¶ 28.)

At the hearing on preliminary approval, the Court asked that Fresno State provide a mechanism for resending emails if "bounce backs" occur.  The revised Settlement Agreement submitted in response to the Court's concern provides that the parties will confer and adopt any additional steps appropriate to address the question of "bounceback emails" and will detail the number of "bounceback emails" and the parties efforts to provide notice to those individuals in their Motion for Final Approval.  (Doc. 213 at ¶ 26.)

### 5.      Rule 23(b)(2) class and no Opt-Outs (Exclusions) and Objections

As Rule 23(b)(2) classes, class members do not have the right to opt out of the class.  Fed. R. Civ. P. 23(b)(2); *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994) (a class action for injunctive relief certified under Fed. R. Civ. P. 23(b)(2) does not require notice or permit members to opt out, although a court in its discretion may provide for an opt-out or notice).  In a Rule 23(b)(2) class action for equitable relief, the due process rights of absent class members generally are satisfied by adequate representation alone. *See Besinga v. United States*, 923 F.2d 133, 137 n. 7 (9th Cir. 1991).

Class Members who wish to object to the class action settlement must mail objections to the Court indicating the reasons for the objection.  (Doc. 208-4, Notice at 8 and revised Notice 213-1 at 8.)  The Notice includes specific instructions to Class Members for submitting Objections.  A Class Member who wishes to object but who fails to comply with the instructions set forth in the Class Notice shall be deemed not to have objected. (Doc. 208-4, Notice at 8 and revised Notice 213-1 at 8.)  The deadline for class members to submit a comment or objection is fifteen (15) days after Fresno State's posting of the Notice.  (Revised Notice Doc. 213-1 at 8.)

Class Counsel and Counsel for Defendants shall file any responses to Objections no later than November 3, 2025.

### 6. Attorney's Fees and Costs

Plaintiffs' counsel[5] seek preliminary approval of their request for attorneys' fees in the amount of $900,000 and request reimbursement of litigation costs and expenses. The Settlement Agreement provides that, subject to approval by the Court, Fresno State will pay $900,000 to Plaintiffs' counsel for Plaintiffs' reasonable costs and attorneys' fees. (*Id.* ¶ 22). Fresno State does not oppose a $900,000 payment, and it will not seek to have this amount reduced. (*Id.* ¶ 22). Plaintiffs' counsel agrees not to seek more than that amount. This amount will be paid by Fresno State, not by the classes. (*Id.* ¶ 22). Plaintiffs' counsel indicates that the amount requested is a significant reduction from the lodestar calculated by Plaintiffs' counsel (hours expended multiplied by their usual hourly rates), which Plaintiffs agreed to accept in the interest of reaching the proposed settlement. (Doc. 208-5, Caddell. Decl. ¶ 6.)

### 7. Other Notable Terms of Settlement

The parties have agreed to the independent Title IX Reviewer and the cost of the reviews. (Settlement Agreement ¶ 6.) Fresno State has agreed to pay for the cost of the reviews.

## LEGAL STANDARDS

Court approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval. *See Tijero v. Aaron Bros., Inc.*, No. C 10–01089 SBA, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) ("[A]pproval of a class action settlement takes place in two stages."). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the

---

[5] At the time the Court certified the two classes on March 10, 2025, the Court appointed class counsel. (Doc. 184 at 15 ("The court finds Clarkson Law Firm and Caddell & Chapman meet the adequacy standard of Rule 23(a)(4) and appoints Clarkson as class counsel and Caddell & Chapman as co-counsel under Rule 23(g).")). To the extent necessary, these Findings and Recommendations recommend re-appointment of Plaintiffs' counsel.

settlement terms." Fed. R. Civ. P. 23(e).  However, the "settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original); *Gruber v. Grifols Shared Services North America, Inc*., No. 2:22-CV-02621-SPG-AS, 2023 WL 8610504, at *3 (C.D. Cal. Nov. 2, 2023).

A.      **Certification of the Class**

To certify a class, a party must demonstrate that all of the prerequisites of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b) has been met. *Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 542 (9th Cir. 2013); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Under Rule 23(a), the four requirements that must be met for class certification are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(1)–(4).  These factors are known as "numerosity," "commonality," "typicality," and "adequacy," respectively.  Assessing these requirements involves "rigorous analysis" of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Rule 23(b) requires a plaintiff to establish one of the following: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)– (3). Rule 23(b)(3) "requires only that the district court determine after rigorous analysis whether the common question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc). Rule 23(c)(1) permits a court to make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.  *Dukes v. Wal-Mart Stores, Inc*., No. C 01-02252 CRB, 2012 WL 4329009, at *4 (N.D. Cal. Sept. 21, 2012).

1   Here, the two classes for settlement have been formally certified.  (Doc. 184.)  Thus, the

2   classes have already passed the stringent standard for certification under Federal Rule of Civil

3   Procedure 23(a) and (b).  The Court, therefore, does not re-evaluate whether the Rule 23

4   requirements have been met.

5   **B.      Court Approval of Class Settlement Agreements**

6   Rule 23(e)(2) mandates that any settlement in a class action may only be approved by the

7   court after finding that the settlement is "fair, reasonable, and adequate" upon consideration of

8   whether:

9   (A) the class representatives and class counsel have adequately represented the class;

10  (B) the proposal was negotiated at arm's length;

11  (C) the relief provided for the class is adequate, taking into account:

12  (i) the costs, risks, and delay of trial and appeal;

13  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

14  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

15  (iv) any agreement required to be identified under Rule 23(e)(3); and

16  (D) the proposal treats class members equitably relative to each other.

17  Fed. R. Civ. P. 23(e)(2)(A)–(D). The role of the district court in evaluating the fairness of the

18  settlement is not to assess the individual components, but to consider the settlement as a whole.

19  *Lane v. Facebook, Inc.,* 696 F.3d 811, 818–19 (9th Cir. 2012).  In reviewing a proposed

20  settlement, the court represents those class members who were not parties to the settlement

21  negotiations and agreement. *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit*

22  *Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 448 (C.D. Cal. 2014).  The Ninth Circuit has

23  recognized a strong judicial policy favoring settlement, particularly of complex class actions.

24  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

25  **<u>DISCUSSION-PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT</u>**

26  The Court considers whether the proposed settlement is fair, adequate, and reasonable.

27  Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset Prods. Liab. Litigation.*, 654 F.3d 935, 946 (9th

28

10

Cir. 2011). The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to consider the settlement as a whole. *Lane*, 696 F.3d at 818-19. Preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n. 12 (E.D. Pa. 2001)).

In making this inquiry, the Court should weigh: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d at 946. Some of these eight factors cannot be fully assessed until the court conducts its final fairness hearing. *Zwicky v. Diamond Resorts Mgmt. Inc.,* 343 F.R.D. 101, 119 (D. Ariz. 2022). Thus, at the preliminary approval stage, courts need only evaluate "whether the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious-deficiency, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of possible approval." *Zwicky*, 343 F.R.D. at 119; *accord Collins v. Cargill Meat Sols. Corp*., 274 F.R.D. 294, 301-303 (E.D. Cal. 2011) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079). Because collusion may not be evident on a settlement's face, courts must be vigilant for subtle signs "class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d at 947.

At this juncture, the Court will review the parties' proposed Settlement Agreement according to the four *Zwicky* considerations listed above and conduct a cursory review of its terms in deciding whether to order the parties to send the proposed Notice to class members and

1  conduct the Final Fairness Hearing.

2  **A.      The Proposed Settlement Appears to be the Product of Serious, Informed, Non-**

3  **Collusive Negotiations**

4          The Ninth Circuit observed that "the very essence of a settlement is compromise, 'a

5  yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv.*

6  *Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, when

7  analyzing the amount offered in settlement, the Court should examine "the complete package

8  taken as a whole," and the amount is "not to be judged against a hypothetical or speculative

9  measure of what might have been achieved by the negotiators." *Id.* at 625, 628.  The Court must

10  look at the means and negotiations by which the parties settled the action in addition to reviewing

11  the Proposed Settlement Agreement for obvious deficiencies.  *Zwicky*, 343 F.R.D. at 120.

12          Here, the parties reached a settlement after participating in a mediation and subsequent

13  settlement negotiations.  The parties agreed to re-engage in settlement discussions facilitated by

14  United States Magistrate Judge Barbara A. McAuliffe.  (Doc. 191.)  During the mediation, the

15  parties exchanged information and discussed all aspects of the case including the risks and delays

16  of further litigation, the risks to both parties, and the evidence produced and analyzed.  At all

17  times, the parties' negotiations reportedly were adversarial and non-collusive.  Both parties felt

18  strongly about their case and arriving at a settlement that was acceptable to both parties was

19  difficult. All parties considered the risks in continued litigation.

20          The parties' Joint Motion indicates that the Settlement Agreement is the product of arm's-

21  length negotiations between the parties and their experienced counsel at a point when both the

22  Plaintiffs and Fresno State possessed more than sufficient evidence and knowledge to allow them

23  to make informed decisions about the strengths and difficulties of their respective cases.  (Doc.

24  208-1 at 16.)  In terms of discovery, the two classes had been certified for class action treatment.

25  Thus, sufficient discovery and litigation had been conducted to evaluate the strength of the

26  claims.  Prior to reaching the proposed settlement, Plaintiffs' counsel conducted a thorough

27  investigation, including interviewing witnesses, consulting with experts, and reviewing years of

28  data produced in discovery.  (Doc. 208-5, Caddell Decl. ¶ 3.)  Given the protracted history of this

case that ultimately was resolved through mediation with the oversight of the federal magistrate judge, the Court finds that the negotiations were well-informed, conducted properly, and negotiated at arm's length.

**B.      No Obvious Deficiencies**

Obvious deficiencies in a settlement agreement include "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) (quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019)). The Ninth Circuit has identified three such "subtle signs," which it refers to as the *Bluetooth* factors: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re Bluetooth*, 654 F.3d at 947 (internal quotation and citation omitted).

*1.   Disproportionate Distribution of the Settlement to Counsel*

Here, Plaintiffs' counsel seeks $900,000, which counsel indicate is "a significant reduction from the loadstar calculate by Class Counsel … which Plaintiffs agreed to accept in the interest of reaching the proposed settlement."  (Doc. 208-5, Caddell Decl. ¶ 6.) This is not a disproportionate distribution.  Plaintiffs' counsel litigated the case for four years by defending three motions to dismiss, preparing written discovery, analyzing over 6,000 pages of data received in discovery, defending multiple depositions of the Class Representatives, submitting two expert reports, advancing multiple motions for class certification (ultimately granted), attending numerous hearings and pursuing a successful appeal at the Ninth Circuit.  (Doc. 208-5, Caddell Decl. ¶ 3.)

*2.   Clear-sailing Arrangement for Attorneys' Fees*

Here, there does not appear to be the presence of a clear-sailing agreement in the Settlement Agreement even though the Defendant does not oppose paying Plaintiff's $900,000. (Settlement Agreement ¶ 22; Doc. 208-1 at 11.)  A court is always concerned with "the potential

13

1    that [Defendants] agreed to pay class counsel excessive fees in exchange for counsel accepting a

2    lower amount for the class members." *McKinney-Drobnis*, 16 F.4th at 610 (quoting *Henderson*,

3    998 F.3d at 1027).  However, given the longevity of the case, the hard-fought nature of the

4    litigation, including substantial motion practice and a successful appeal to the Ninth Circuit, any

5    clear sailing agreement is not a substantial concern.  The Court does not believe that Plaintiffs'

6    counsel is getting a windfall by unreasonably high fees nor acting to the disadvantage of the class.

7    Accordingly, the Court does not find that a clear sailing provision weighs against preliminary

8    approval.  *See Paredes Garcia v. Harborstone Credit Union*, No. 3:21-CV-05148-LK, 2023 WL

9    4315117, at *7 (W.D. Wash. July 3, 2023) (fee award was appropriate where the award equated

10   to a "slight haircut" of actual fees).

11                    *3.   Reversion of Unawarded Fees to the Defendant*

12          Here, there will be no reversion of unpaid settlement funds to Defendant because no

13   settlement funds are paid the Plaintiffs.

14   **C.      Does not Grant Preferential Treatment**

15          The proposed settlement appears to treat class members equally. Plaintiffs do not receive

16   any additional relief and do not receive an enhancement award.  The classes obtained future

17   equitable relief that Fresno State is in compliance with Title IX by providing a Title IX Gender

18   Equity Review and a Gender Equity Plan and by providing remedies should the women/men

19   participation gap vary beyond agreed limits.  (Settlement Agreement ¶¶ 2-9, ¶¶ 10-19, ¶ 20.)

20   **D.      The Settlement Falls Within the Range of Possible Approval**

21          "To determine whether a settlement 'falls within the range of possible approval' a court

22   must focus on 'substantive fairness and adequacy,' and 'consider plaintiffs' expected recovery

23   balanced against the value of the settlement offer.' " *Collins*, 274 F.R.D. at 302 (quoting *In re*

24   *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080). The Court should examine "the complete

25   package taken as a whole," and the amount is "not to be judged against a hypothetical or

26   speculative measure of what might have been achieved by the negotiators." *Officers for Justice*,

27   688 F.2d at 625, 628.

28          The parties' Joint Motion reports that the complexity, uncertainty, expense, and likely

                                                        14

duration of further litigation and appeals support approval of the proposed Settlement Agreement. (Doc. 208-1 at 18.)  According to the parties, and as shown in other Title IX athletics litigation, there is a strong likelihood that, without settlement, the parties would face years of protracted litigation in this Court and the appellate courts.  Further, given that, each year, class members graduate from the university, immediate resolution permits more class members to benefit from the steps Fresno State will take, through the Gender Equity Review and Gender Equity Plan described in the Settlement Agreement.  In addition, it is important to note that, if Plaintiffs were successful at trial, the available remedies would be substantially similar to the relief obtained through the Settlement Agreement, as defendants in Title IX cases are afforded considerable discretion in deciding how to bring their programs into compliance with Title IX.  (Doc. 208-1 at 18); s*ee, e.g.*, *Kelley v. Bd. of Trustees*, 35 F.3d 265, 272 (7th Cir. 1994) (discussing the discretion of schools about how to equalize athletic benefits); *Cohen v. Brown Univ.*, 991 F.2d 888, 906–07 (1st Cir. 1993) (same).  Compelling to this Court's decision is that Plaintiffs' counsel represents that the remedies provided in the Settlement Agreement would be substantially the same if the case were to proceed through trial.  (Doc. 208-5, Caddell Decl. ¶ 5.)  Therefore, the value of the Settlement Agreement, which also provides Fresno State some discretion according to its terms, outweighs the benefits of possible future relief after lengthy and costly litigation.

**E.    Enhancement Awards to Plaintiffs**

No Incentive or enhancement awards are being sought for the individual Plaintiffs.

**F.    Attorneys' Fees**

Class Counsel seeks preliminary approval of an attorneys' fee award of $900,000.

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h). The full extend of the requested award will be assessed at the Final Fairness Hearing based upon evidence submitted in support of the request for attorneys' fees.  Nonetheless, the Court makes a preliminary determination based on the parties briefing.

This case is not a settlement fund case, but the factors typically used to assess the

percentage of the settlement fund awarded for attorney fees are instructive.  Those factors are:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by counsel; and (6) the awards made in similar cases. *Vizcaino v. Microsoft. Corp*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

### Results Achieved

Courts have recognized that the result achieved for the class is a major factor to be considered in making a fee award. *Hensley v. Eckerhart* 461 U.S. 424, 436 (1983); *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994).

Here, the result is a good result, in light of the history of the case.  Considering that the Fresno State has agreed to the procedures in the Settlement Agreement, which are what Plaintiffs could have achieved at trial, the result is good.

### Risks of Litigation

Risk is a relevant circumstance. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.1995) (holding fees justified "because of the complexity of the issues and the risks"); *Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent).  Although the parties were able to ultimately agree to a settlement, they still disagree on numerous factual and legal issues.  The risk is real that the trier of fact could find against Plaintiffs.

### Skill and Quality of the Work

The Court does not doubt Plaintiffs' counsel are experienced and skilled litigators.  This factor will be fleshed out in the motion for attorneys' fees for the Final Fairness Hearing.  The Court's own experience in dealing with Plaintiffs' counsel over the past four years has shown competent, prepared, zealous representation of class members.

### Contingent Nature of the Fee and Burdens Carried

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Thus, whether counsel have taken the case on a contingency fee basis must be

16

considered.  Confirmation that Plaintiffs' counsel took this case on a contingency basis will be fleshed out in the motion for attorneys' fees for the Final Fairness Hearing.

### Burdens Carried by Class Counsel

Plaintiffs' counsel have not yet provided information as to the costs in prosecuting this action.  Nevertheless, the four-year hard fought litigation including discovery, depositions, and an appeal to the Ninth Circuit, implies substantial costs incurred by Plaintiffs' Counsel in prosecuting the case.

### Awards Made in Similar Cases

At this preliminary approval stage, the Court does not have any information about other Title IX cases.  The Court also does not yet have hourly rates and hours expended to conduct a lodestar calculation. The "lodestar" approach calculates attorney fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  Nonetheless, Plaintiffs' counsel indicate that the "amount to be paid is a significant reduction from the lodestar calculated by Class Counsel (hours expended multiplied by their usual hourly rates), which Plaintiffs agreed to accept in the interest of reaching the proposed settlement."  (Doc. 208-5, Caddell Decl. at ¶ 6.)  For purposes of preliminary approval, this representation is sufficient.

## G.    Costs

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting the case. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970)).  The Ninth Circuit has held that an award to a prevailing party "can include reimbursement for out-of-pocket expenses including ... travel, courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010).  Other recoverable expenses include expenses related to discovery and expenses related to computerized research.  *See Harris*

17

1  *v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994) (noting that "expenses related to discovery" are

2  recoverable); *Trs. Of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460

3  F.3d 1253, 1258-59 (9th Cir. 2006) (holding that "reasonable charges for computerized research

4  may be recovered."); *Hartless v. Clorox Co.,* 273 F.R.D. 630, 646 (S.D. Cal. 2011) (holding that

5  consulting fees as costs were reasonable because the evidence was necessary to negotiate a

6  settlement), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012).

7        Plaintiffs' counsel's request for costs is included in the request for $900,000 in attorneys'

8  fees.  There is no separate request for costs, above the $900,000, for attorneys' fees.

9  **H.    Notice Requirements**

10        A class action for injunctive relief certified under Fed. R. Civ. P. 23(b)(2) does not require

11  notice or permit members to opt out, although a court in its discretion may provide for an opt-out

12  or notice.  *Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994).  Here, the parties propose

13  notice and the Court acknowledges that notice is warranted in this case.  Under Rule 23(c)(2)(B),

14  "the court must direct to class members the best notice that is practicable under the

15  circumstances, including individual notice to all members who can be identified through

16  reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The Rule direct that the notice must clearly and

17  concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition

18  of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter

19  an appearance through an attorney if the member so desires; (v) that the court will exclude from

20  the class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

21  and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  "Notice is

22  satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those

23  with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*

24  *v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and internal quotations omitted).

25        The proposed class Notice here complies with Rule 23(c)(2).  (Doc. 208-4 and as revised

26  in Doc. 213-1 (Notice).)  The Notice includes the nature of the action, the class definition, the

27  class claims, the terms of the settlement, information that the class member may be represented

28  by an attorney (Doc. 213-1 at 8.), the binding effect of the class judgment, and how to object to

18

1   the settlement.  The Notice also provides information regarding the Final Fairness Hearing.

2          In addition, the parties agree the "best form of notice practicable" is to send the settlement

3   notice via email to the last known Fresno State email address accounts which are assigned to all

4   female undergraduate students from August 23, 2018 to the present, "including all female

5   students committed to enroll at Fresno State beginning Fall 2025."  (Settlement Agreement ¶ 26.)

6   The email will include a link to the Notice that is posted on the University's athletics website.  *Id.*

7   The parties provide a mechanism for resending emails if "bounce backs" occurs.  (Doc. 213

8   (revised Settlement Agreement) at ¶ 26.)

9          The Court finds the Notice, including the method of delivery, is appropriate and appears

10  to be the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

11  The Court also finds it significant that there is no opt-in or opt-out procedure here, as the classes

12  are Rule 23(b)(2) classes.  Accordingly, based on all of the above, the Court finds the Notice,

13  including the method of delivery, is appropriate, appears to be the "best notice that is practicable

14  under the circumstances," and therefore meets the requirements of Federal Civil Procedure Rule

15  23(c)(2)(B).

16                         **<u>CONCLUSION AND ORDER</u>**

17         The Court will recommend that the Joint Motion for Preliminary Approval of the Class

18  Action Settlement be granted. Considering the risks Plaintiffs would face in taking the case to

19  trial, together with the relief achieved by the negotiated settlement is what could be achieved at

20  trial, and in light of the apparent strengths and weaknesses of the claims and defenses, the Court

21  preliminarily concludes that the proposed settlement, on the current record, is "fair, reasonable,

22  and adequate" within the meaning of Rule 23(e)(2).

23         Accordingly, IT IS HEREBY RECOMMENDED that:

24         1. The Motion for Preliminary Approval of the Class Action Settlement (Doc. 208) be

25  GRANTED for the reasons described above, and subject to the terms below;

26         2. A hearing on the Final Approval of the Settlement ("Final Approval Hearing") be held

27  before the Honorable Kimberly J. Meuller in Courtroom 3 of the United States District Court for

28  the Eastern District of California located Robert T. Matsui United States Courthouse, 501 I Street,

Sacramento, 95814 on November 17, 2025 at 10:00 a.m. to determine: whether the proposed

Settlement, on the terms and conditions provided for in the Settlement Agreement, is fair,

reasonable, and adequate and whether said Settlement should be finally approved by the Court.

The Court may adjourn or continue the Final Approval Hearing without further notice to the class

members;

3. The Court find that the two Classes are identical to the Classes which were previously

certified and therefore meet the requirements for certification under Rule 23 of the Federal Rules

of Civil Procedure.  The following persons are certified as class members for the purpose of

entering a settlement in this matter. For Plaintiffs' claim for equal participation opportunities, the

Class is:

> Current and future female California State University, Fresno ("Fresno State")
> students who: (i) have lost membership on a women's varsity intercollegiate athletics
> team at Fresno State; (ii) have sought but not achieved membership on a women's
> varsity intercollegiate athletics team at Fresno State; and/or (iii) are able and ready to
> seek membership on a women's varsity intercollegiate athletics team at Fresno State
> but have not done so due to a perceived lack of opportunity.

For Plaintiffs' claim for equal athletic treatment and benefits, the Class is:

> Current and future female Fresno State students who: (i) participate or have
> participated in women's varsity intercollegiate athletics at Fresno State; and/or (ii)
> are able and ready to participate in women's varsity intercollegiate athletics at
> Fresno State but have been deterred from doing so by the treatment received by
> female varsity intercollegiate student-athletes at Fresno State.

4. The Court find that, on a preliminary basis, the Settlement Agreement, entered into

among the parties and their counsel, is fair, adequate, and reasonable. It further appears to the

Court that the parties conducted extensive investigation and research, and that they were able to

reasonably evaluate their positions and the strengths and weaknesses of the claims. The parties

have provided the Court with enough information about the nature and magnitude of the claims

being settled, as well as the impediments to recovery, to make an independent assessment of the

reasonableness of the terms to which the parties have agreed.  Settlement now will avoid

additional and potentially substantial litigation costs, as well as delay and risks if the parties were

to continue to litigate the case. It further appears that the Settlement Agreement has been reached as the result of intensive, serious, and non-collusive arms-length negotiations, and was entered into in good faith, to mitigate the potential of further losses to Plaintiffs and the Class Members;

5. The Court preliminarily find that the Settlement Agreement, which provides for Title IX Gender Equity Review, a Title IX Gender Equity Plan, and closing Participation Gaps, appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Settlement Agreement includes Class Counsel's request for attorneys' fees and costs in the amount of $900,000.  The Court hereby recommends that the Settlement Agreement be preliminarily approved, including all the terms and conditions set forth therein and the allocation and payment of attorneys' fees and costs;

6.  The Court approve, as to form and content, the Notice found at Doc. 213-1 (revised "Notice"), which include revisions requested by the Court.  (*Id.*)  The rights of any potential objectors to the proposed Settlement are adequately protected in that they may object to the Settlement and appear before the Court at the Final Fairness Hearing. However, to do so, they must follow the procedures outlined in the Settlement Agreement which are set out in the Notice;

9. The Court find that emailing the Notice and posting the Notice on Fresno State's Athletics website substantially in the manner and form as set forth in the Settlement Agreement, including accounting for email bouncebacks, and the Notice meets the requirements of Federal Rules of Civil Procedure, Rule 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto;

10. The Court reaffirm appointment of Plaintiffs' Counsel - Clarkson Law Firm and Caddell & Chapman - as Class Counsel; Class Counsel are authorized to act on behalf of the Class Representatives and the Classes with respect to all acts or consents required by or which may be given pursuant to the Settlement and such other acts reasonably necessary to consummate the Settlement; the authority of Class Counsel includes entering into any necessary modifications or amendments to the Settlement on behalf of the Class Representatives and the Settlement Class which they deem appropriate;

11. The Court reaffirm appointment of Plaintiffs Anders and Walburger as Class

1    Representatives.

2        **THEREFORE**, IT IS FURTHER RECOMMENDED that:

3        No later than fourteen (14) days after the date of the adoption of these Findings and

4    Recommendations, Fresno State will send to all female students who attended the Fresno State

5    from the 2018-19 academic year through the present by sending them an email, at their last

6    known address, with a link to the Notice and Proposed Settlement Agreement documents and

7    maintaining a link that will be posted on Fresno State's varsity athletic website to provide notice

8    to all class members until the Fairness Hearing. If Fresno State receives more than a de minimis

9    number of "bounceback emails" due to undeliverable emails, the parties will undertake

10   reasonable steps to provide notice to those class members. The parties will inform the Court of

11   both the number of "bounceback email" responses received and the parties' efforts to address

12   "bounceback emails" in their Motion for Final Approval.

13       Any objections to the Settlement Agreement shall follow the procedures set forth in the

14   Notice and Settlement Agreement.

15       All briefs, memoranda, petitions, and affidavits to be filed in support of final approval of

16   the Settlement shall be filed **no later than November 3, 2025**, or within another time as may be

17   set by the Court.

18       These findings and recommendations will be submitted to the United States District Judge

19   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

20   **(14) days** after being served with these findings and recommendations, Plaintiff may file written

21   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

22   Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or**

23   **include exhibits.  Exhibits may be referenced by CM/ECF document and page number if**

24   **already in the record before the Court.  Any pages filed in excess of the 15-page limit may**

25   ///

26   ///

27   ///

28   ///

**not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 23, 2025**          /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE